This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

## Transguard Insurance Company of America, Inc. v. Lux Holdings LLC, Emmanuel Ramos

| Case Number | 11C01-2211-CT-000879 |
| --- | --- |
| Court | Clay Circuit Court |
| Type | CT - Civil Tort |
| Filed | 11/23/2022 |
| Status | 11/23/2022 , Pending  (active) |

## Parties to the Case

Defendant   Lux Holdings LLC

Address
55 Buck Road
Suite 19006
Huntington Valley, PA 19006

Defendant   Ramos, Emmanuel

Address
3542 N. Marshall Street
Philadelphia, PA 46204

Plaintiff      Transguard Insurance Company of America, Inc.

Address
4200 Six Forks Road
Suite 1400
Raleigh, NC 27609

Attorney
Linda H Clare
*#2753422, Retained*

8914 Stone Grain Way
Louisville, KY 40220
502-614-4086(W)

## Chronological Case Summary

| 11/23/2022 | **Case Opened as a New Filing** | |
| --- | --- | --- |

| 11/28/2022 | **Complaint/Equivalent Pleading Filed** | |
| --- | --- | --- |
| | Complaint | |
| | Filed By: | Transguard Insurance Company of America, Inc. |
| | File Stamp: | 11/23/2022 |

| 11/28/2022 | **Subpoena/Summons Issued** | |
| --- | --- | --- |
| | Summons - Lux Holding | |
| | Party: | Transguard Insurance Company of America, Inc. |
| | File Stamp: | 11/23/2022 |

| 11/28/2022 | **Subpoena/Summons Issued** | |
| | Summons - Ramos | |
| | Party: | Transguard Insurance Company of America, Inc. |
| | File Stamp: | 11/23/2022 |

| 12/15/2022 | **Service Returned Served** | |
| | for Defendant, Emmanuel Ramos | |
| | Party Served: | Ramos, Emmanuel |
| | Date Served: | 12/09/2022 |

| 12/15/2022 | **Service Returned Served** | |
| | for Lux Holdings, LLC | |
| | Party Served: | Lux Holdings LLC |
| | Date Served: | 12/08/2022 |

| 12/15/2022 | **Service Returned Served (E-Filing)** | |
| | Affidavit of Service - Lux Holdings LLC | |
| | Filed By: | Transguard Insurance Company of America, Inc. |
| | File Stamp: | 12/15/2022 |

| 12/15/2022 | **Certificate of Issuance of Summons** | |
| | Affidavit of Service - Emmanuel Ramos | |
| | Filed By: | Transguard Insurance Company of America, Inc. |
| | File Stamp: | 12/15/2022 |

| 12/21/2022 | **Appearance Filed** | |
| | Appearance | |
| | For Party: | Lux Holdings LLC |
| | For Party: | Ramos, Emmanuel |
| | File Stamp: | 12/21/2022 |

| 12/21/2022 | **Motion for Enlargement of Time Filed** | |
| | Motion for Enlargement of Time to Answer | |
| | Filed By: | Lux Holdings LLC |
| | Filed By: | Ramos, Emmanuel |
| | File Stamp: | 12/21/2022 |

| 12/21/2022 | **Order Granting Motion for Enlargement of Time** | |
| | Judicial Officer: | Trout, Joseph D |
| | Order Signed: | 12/21/2022 |

| 12/22/2022 | **Automated Paper Notice Issued to Parties** | |
| | Order Granting Motion for Enlargement of Time ---- 12/21/2022 : Lux Holdings LLC;Emmanuel Ramos | |

| 12/22/2022 | **Automated ENotice Issued to Parties** | |
| | Order Granting Motion for Enlargement of Time ---- 12/21/2022 : Linda H Clare | |

| 01/06/2023 | **Notice of Removal to Federal Court Filed** | |
| | Notice of Defendants' Removal of Cause to Federal Court | |
| | Filed By: | Lux Holdings LLC |
| | Filed By: | Ramos, Emmanuel |
| | File Stamp: | 01/06/2023 |

## Financial Information

**\*** Financial Balances reflected are current representations of transactions processed by the Clerk's Office. Please note that any
balance due does not reflect interest that has accrued – if applicable – since the last payment. For questions/concerns regarding
balances shown, please contact the Clerk's Office.

### Transguard Insurance Company of America, Inc.
Plaintiff

### Balance Due (as of 01/06/2023)
**0.00**

### Charge Summary

| Description | Amount | Credit | Payment |
|---|---|---|---|
| Court Costs and Filing Fees | 157.00 | 0.00 | 157.00 |

### Transaction Summary

| Date | Description | Amount |
|---|---|---|
| 11/28/2022 | Transaction Assessment | 157.00 |
| 11/28/2022 | Electronic Payment | (157.00) |

| |
|---|
| This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record. |

Clay Circuit Court

Filed: 11/23/2022 5:10 PM
Clerk
Clay County, Indiana

STATE OF INDIANA        )      IN THE CLAY CIRCUIT/SUPERIOR COURT

)SS

COUNTY OF CLAY        )

| | |
|---|---|
| TRANSGUARD INSURANCE COMPANY ) | CAUSE NO.    11C01-2211-CT-000879 |
| OF AMERICA, INC., as subrogee of ) | |
| C.W. Baker Logistics, Inc., Carey Wayne Baker, ) | |
| Ian Windom, and CRST Specialized ) | Judge: |
| Transportation, Inc. ) | |
| 4200 Six Forks Road, Suite 1400 ) | |
| Raleigh, NC  27609 ) | |

         Plaintiff,       )

vs.      )

LUX HOLDINGS, LLC       )
55 Buck Road, Suite 300     )
Huntington Valley, PA 19006    )     **COMPLAINT**

**SERVE**: Serve Via Certified Mail    )
        Indiana Secretary of State    )
        Attn: Service of Process Clerk    )
        302 West Washington St    )
        Room E-018    )
        Indianapolis, IN  46204    )

and     )

EMMANUEL RAMOS     )
3542 N. Marshall Street     )
Philadelphia, PA 19140     )

**SERVE**: Serve Via Certified Mail    )
        Indiana Secretary of State    )
        Attn: Service of Process Clerk    )
        302 West Washington St    )
        Room E-018    )
        Indianapolis, IN  46204    )

        Defendants.    )

NOW COMES the Plaintiff, Transguard Insurance Company of America, Inc. (Transguard), subrogee of CRSST Specialized Transportation, Carey W. Baker (deceased), and Ian Windom, by and through its attorneys, the law offices of Kolb Clare & Arnold, P.S.C., by Linda H. Clare, and for its complaint against the Defendants, states as follows:

### FACTS AND BACKGROUND

1.      Plaintiff's cause of action occurred in Clay County, Indiana on March 10, 2021.

2.      Plaintiff is authorized to engage in the property and casualty insurance business in the State of Indiana, and other jurisdictions, and issues insurance policies insuring among other things, vehicle property damage and Occupational Accident Insurance for commercial drivers and co-drivers in the State of Indiana.

3.      Plaintiff issued a policy of insurance to CW Baker Logistics, Inc. via Policy 206191 (Auto Policy) which was in effect on March 10, 2022.  Said Auto Policy provided coverage for damage to a 2020 Kenworth Model T680 tractor, operated by Carey W. Baker on March 10, 2021. A true and accurate copy of the Auto Policy is attached hereto as **Exhibit 1**.

4.      Plaintiff issued an Occupational Accident Policy of insurance covering physical injuries (including death) covering Carey W. Baker and Ian Windom under  Policy 259096 (OAPolicy), which was in effect on March 10, 2022.  Said OA Policy provided coverage for: medical treatment; lost wages; and death benefits, and other damages sustained by Carey W. Baker and Ian Windom as a result of the accident that occurred on March 10, 2021, in Clay County, Indiana.  A true and accurate copy of the OA Policy is attached hereto as **Exhibit 2**.

5.      This Court is the proper venue for this matter pursuant to Indiana Trial Rule.  This Court has personal jurisdiction over the out-of-state defendants pursuant to Indiana Trial Rule 4.4.

6.   Defendant, Emmanuel Ramos (Ramos), was a resident of the state of Pennsylvania on March 10, 2021, and was operating a commercial vehicle on Interstate 70, when the acts and/or omissions complained of occurred, and Ramos is subject to the jurisdiction of this Court pursuant to Indiana Trial Rule 4.4.

7.      Defendant Lux Holdings, LLC, owned the commercial vehicle operated by Ramos on the date of the accident, and was at all relevant times herein a Pennsylvania Limited Liability Company, formed in the State of Pennsylvania, with its principal place of business listed as 55 Buck Road, Suite 300, Huntingdon Valley, PA 19006.  Defendant Lux Holdings, LLC is subject to jurisdiction of this court pursuant to Trial Rule 4.4, and can be served via the Indiana Secretary of State.

## COUNT 1 – NEGLIGENCE PER SE

8.   Plaintiff incorporates all prior paragraphs as if fully stated herein.

9.   On March 10, 2021, Defendant, Lux Holdings, LLC was the owner of a  red 2012 Freightliner Cascadia tractor, VIN # 1FUJGHDV7CSBF9716,  with an attached red 2017 Wally-Mo vehicle transport trailer, VIN # 1W9H75329HH157518, Pennsylvania license #PT266C6 (Lux tractor-trailer).

10.  On March 10, 2021, Defendant, Lux Holdings, LLC, employed Defendant Ramos to operate the Freightliner tractor with the Wally Mo trailer.

11. On March 10, 2021, Defendant Ramos was operating Defendant, Lux Holdings, LLC's the Freightliner tractor with the Wally Mo trailer in the State of Indiana, on Eastbound Interstate 70 in Clay County, Indiana.

12.      At all times, Defendant Ramos was operating the Lux tractor-trailer in the course and scope of his employment with Defendant Lux Holdings, Inc.

13.     At all times, Defendant Ramos had a duty to ensure that the tractor-trailer was operated in a careful and prudent manner, in order to avoid injuring other vehicles traveling at the same time and place on Eastbound Interstate 70 in Clay County, Indiana.

14.     On March 10, 2021, prior to the incident complained of herein, , Defendant Ramos operated the tractor-trailer at speeds below the lowest speed limit allowed on Interstate 70, at times driving on the far right shoulder of eastbound  Interstate 70, in Clay County Indiana.

15.     Immediately prior to the accident, Defendant Ramos, without regard to other vehicles, and without care and caution, pulled the slow moving tractor-trailer owned by Defendant Lux Holdings, LLC, into the right lane of travel, causing the commercial vehicle and trailer to collide with the rear of the tractor-trailer operated by Defendant Ramos.

16.     At all times, the Plaintiff's insured, Carey W. Baker, was operating the 2020 Kenworth tractor and trailer in a lawful and prudent manner, by operating the vehicle in the right hand lane of Eastbound Interstate 70, at or below the posted speed limit applicable to the 2020 Kenworth tractor-trailer.

17.     Defendant Ramos negligently and recklessly operated the Lux tractor trailer in the right hand travel lane of Eastbound Interstate 70 at a speed of 21 miles per hour, where Plaintiff's insured was traveling at or below the posted speed limit of 65 miles per hour, such that Plaintiff's insured collided with the trailer, causing the death of Carey W. Baker, severe injury to Ian Windom, and severe damage to the 2020 Kenworth Tractor.

18.     Defendant Ramos' operation of the Lux tractor-trailer on Eastbound Interstate 70 at a dangerously low speed was in violation of I.C. 9-21-8-52(a)(1).

19. As a result of the negligent operation of the Lux Tractor, in violation of I.C. 9-21-8-52(a)(1) , the vehicle operated in a lawful and prudent manner by Plaintiff's insured, Carey W. Baker, was unable to avoid a collision with the rear of the trailer operated by Defendant Ramos.

20.     As a result of the negligent operation of the Lux Tractor, in violation of I.C. 9-21-8-52(a)(1) the vehicle operated in a lawful and prudent manner by Plaintiff's insured, Carey W. Baker, and owned by Plaintiff's insured, CRST Specialized Transportation, Inc. was damaged in the amount of $150,994.56, for which Plaintiff became obligated under its Policy issued to CRST Specialized Transportation, Inc..

21. As a result of the negligent operation of the Lux Tractor, in violation of I.C. 9-21-8-52(a)(1), the Plaintiff's insured, Carey W. Baker, was killed, and Plaintiff remains obligated under a Policy of Occupational Accident Coverage issued to Carey W. Baker, with payments totaling $37,000.00, and under which additional payments will be made.

22.     As a result of the negligent operation of the Lux Tractor, in violation of I.C. 9-21-8-52(a)(1), the Plaintiff's insured, Ian Windom, was severely injured, and Plaintiff became obligated under a Policy of Occupational Accident Coverage issued to Ian Windom, co-driver and passenger, for payments including related medical expenses, lost income, and other damages, with payments totaling $ 746,860.21, and under which Policy, additional payments will be made.

**WHEREFORE**, Plaintiff demands Judgment against Defendant Emmanuel Ramos in the amount of $934,854.77, excluding interest and costs, and any additional amounts as the evidence may reveal.

## COUNT II – NEGLIGENCE AS TO DEFENDANT EMMANNUEL RAMOS

23. Plaintiff incorporates all prior paragraphs as if fully stated herein.

24.     At all times, Defendant Ramos had a duty to ensure that the Lux tractor-trailer was operated in a careful and prudent manner, in order to avoid injuring other drivers and vehicles traveling at the same time and place on Eastbound Interstate 70 in Clay County, Indiana.

25.     On March 10, 2021, prior to the incident complained of herein, , Defendant Ramos operated the tractor-trailer at speeds below the lowest speed limit allowed on Interstate 70, at times driving on the far right shoulder of eastbound Interstate 70, in Clay County Indiana.

26.     Immediately prior to the accident, Defendant Ramos, without regard to other vehicles, and without care and caution, pulled the slow moving tractor-trailer owned by Defendant Lux Holdings, LLC, into the right lane of travel, causing the commercial vehicle and trailer operated by Plaintiff's insured, Carey W. Baker, to collide with the rear of the tractor-trailer operated by Defendant Ramos.

27.     As a result of the negligence of Defendant Ramos in failing to operate the Lux tractor-trailer in a safe and prudent manner, the vehicle operated in a lawful and prudent manner by Plaintiff's insured, Carey W. Baker, was unable to avoid a collision with the rear of the trailer operated by Defendant Ramos.

28.     As a result of the negligence of Defendant Ramos in failing to operate the Lux tractor-trailer in a safe and prudent manner, the Plaintiff's insured, Carey W. Baker, was killed, and Plaintiff remains obligated under a Policy of Occupational Accident Coverage issued to Carey W. Baker, with payments totaling $37,000.00, and under which additional payments will be made.

29.     As a result of the negligent operation of the Lux Tractor, in violation of I.C. 9-21-8-52(a)(1), the Plaintiff's insured, Ian Windom, was severely injured, and Plaintiff became obligated under a Policy of Occupational Accident Coverage issued to Ian Windom, co-driver and

passenger, for payments including related medical expenses, lost income, and other damages, with payments totaling $ 746,860.21, and under which Policy, additional payments will be made.

**WHEREFORE**, Plaintiff demands Judgment against Defendant Emmanuel Ramos in the amount of $934,854.77, excluding interest and costs, and any additional amounts as the evidence may reveal.

## COUNT III RESPONDEAT SUPERIOR AS TO LUX HOLDINGS, LLC

30. Plaintiff incorporates all prior paragraphs as if fully stated herein.

31. At the time of the incident described above, Ramos was in the scope and course of his employment with Defendant Lux Holdings, LLC.

32. Defendant Lux Holdings, LLC is vicariously liable for Defendant Ramos' negligence under the doctrine of respondeat superior.

33. As a result of the negligence of Defendant Ramos in failing to operate the Lux tractor-trailer in a safe and prudent manner, the vehicle operated in a lawful and prudent manner by Plaintiff's insured, Carey W. Baker, was unable to avoid a collision with the rear of the trailer operated by Defendant Ramos.

34. As a result of the negligence of Defendant Ramos in failing to operate the Lux tractor-trailer in a safe and prudent manner, the Plaintiff's insured, Carey W. Baker, was killed, and Plaintiff remains obligated under a Policy of Occupational Accident Coverage issued to Carey W. Baker, with payments totaling $37,000.00, and under which additional payments will be made.

35. As a result of the negligent operation of the Lux Tractor, in violation of I.C. 9-21-8-52(a)(1), the Plaintiff's insured, Ian Windom, was severely injured, and Plaintiff became obligated under a Policy of Occupational Accident Coverage issued to Ian Windom, co-driver and

passenger, for payments including related medical expenses, lost income, and other damages, with payments totaling $ 746,860.21, and under which Policy, additional payments will be made.

**WHEREFORE**, Plaintiff demands Judgment against Defendant Emmanuel Ramos in the amount of $934,854.77, excluding interest and costs, and any additional amounts as the evidence may reveal.

Respectfully submitted,

/s/ Linda H. Clare
Linda H. Clare (IBN 27534-22)
KOLB CLARE & ARNOLD, PSC
9400 Williamsburg Plaza, Suite 200
Louisville, KY 40222
(p) (502) 614-4086
(f) (844) 557-4329
Email: lclare@kcalegal.com
*Attorney for Plaintiff*

## POLICY CHANGES ENDORSEMENT DESCRIPTION

The policy is hereby amended to include:
    Non-Occupational Accident Endorsement, 014104 07/15.


The Schedule of Forms and Endorsements 094003 06/04 is amended to include:
    014104 07/15 – Non-Occupational Accident Endorsement

       Copyright, Insurance Services Office, Inc., 1998       **IL 12 04 12 98**   ☐



POLICY NUMBER:

COMMERCIAL AUTO
014104 07/15

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NON-OCCUPATIONAL ACCIDENT ENDORSEMENT

This endorsement modifies insurance provided under the following:

### MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT COVERAGE PART

The provisions of the Coverage Part apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

Attachment of this endorsement to the policy revises SECTION V – BENEFIT PROVISIONS to add the following benefit:

**NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION**

For any loss that is otherwise excluded solely due to the "insured person" being not "on duty" at the time of the "accident", benefits will be payable under the NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION subject to the following limits:

| | |
|---|---|
| Combined Single Limit: | $25,000 |
| **Accidental Death and Dismemberment Benefit** | |
| Principal Sum: | $25,000 |
| **Temporary Total Disability Benefit** | |
| Waiting Period: | 7 days |
| Maximum Benefit Period: | 52 weeks |
| **Accident Medical & Dental Expense Benefit** | |
| Medical Accumulation Period: | 52 weeks |
| Maximum Medical Benefit: | $25,000 |
| Maximum Dental Benefit: | $1,000 |

No benefits are available under the CONTINUOUS TOTAL DISABILITY BENEFIT PROVISION or the PARALYSIS BENEFIT PROVISION for a non-occupational accident.

The following definition of "Injury" applies to a loss payable under the NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION:

**Injury**: means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly, solely and independent of all other causes which:

1. occurs while the "insured person" is covered under this "coverage part"; and

2. arises when the "insured" is not "on duty" to the "contract carrier" named on "his" "certificate" and is not performing the duties of any occupation for wage or profit.

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

The following exclusions from **SECTION VI – GENERAL EXCLUSIONS AND LIMITATIONS** do not apply to a loss payable under the NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION:

4. any loss that was not the result of an "accident" causing "injury" sustained while "he" is engaged in the usual and customary duties of "his" occupation while on duty, "under dispatch" for and "under contract" to "his" "contract carrier";

27. hernias or hemorrhoids.



**TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.**
(A STOCK COMPANY)
215 SHUMAN BLVD., SUITE 400 – NAPERVILLE, IL  60563

091001 (07/03)

# EXHIBIT 1



019102 (04/11)

# IMPORTANT NOTICE TO POLICYHOLDERS
## ILLINOIS

In the event you need to contact someone about this policy, please contact your agent.  If you have additional questions you may contact the insurance company issuing this policy as shown below.

| TRANSGUARD INSURANCE COMPANY OF AMERICA, INC. ||
| **Consumer and Claims** | **Underwriting** |
| 215 Shuman Blvd., Suite 400<br>Naperville, IL 60563<br>800-323-8560 | P.O. Box 901606<br>Kansas City, MO 64190-1555<br>800-821-8014 |

Written correspondence is preferable so that a record of your inquiry is maintained.  When contacting your agent or the company, please have your policy number available.

You can also contact the **DEPARTMENT OF INSURANCE**, a state agency which enforces Illinois' insurance laws, and file a complaint.

**ILLINOIS DEPARTMENT OF INSURANCE**
**Public Services Section**
**320 W. Washington Street**
**Springfield, IL 62767**
**217-782-4515**

**POLICY NUMBER: TGM300007B-46007**

IL 12 04 12 98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ILLINOIS POLICY CHANGES

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

Effective Date of Change:    10/01/2015
Change Endorsement No.:   1
Named Insured:                  National Association of Independent Truckers, LLC

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Insured's Mailing Address |
| ☐ | Policy Number | ☐ | Company |
| ☐ | Effective/Expiration Date | ☐ | Insured's Legal Status/Business of Insured |
| ☐ | Payment Plan | ☐ | Premium Determination |
| ☐ | Additional Interested Parties | X | Coverage Forms and Endorsements |
| ☐ | Limits/Exposures | ☐ | Deductibles |
| ☐ | Covered Property/Located Description | ☐ | Classification/Class Codes |
| ☐ | Rates | ☐ | Underlying Insurance |

is (are) changed to read **{See Additional Page(s)}:**

The above amendments result in a change in the premium as follows:

| X | NO CHANGES | ☐ | TO BE ADJUSTED AT AUDIT | ADDITIONAL PREMIUM | RETURN PREMIUM |
|---|---|---|---|---|---|
| | | | | $ | $ |
| Countersigned By: | | _ǝ - ß5_ | | | |
| | (Authorized Agent) | | | | |

Copyright, Insurance Services Office, Inc.,  1998



**POLICY NO. TGM300007B-46007**

# GROUP VEHICLE MASTER POLICY
## DECLARATIONS

**Item 1.**   **NAMED INSURED:**   **PRODUCER:**

National Association of Independent Truckers, LLC   TransGuard General Agency, Inc.
215 Shuman Blvd, Suite 400   215 Shuman Blvd, Suite 400
Naperville, IL 60563   Naperville, IL 60563

**Item 2.**   **POLICY PERIOD:**   From: 9/25/2015   To: continuous until cancelled.
at 12:01 A.M. Standard Time at your mailing address shown above.

**Item 3.**   The insurance afforded is only with respect to the Coverage Parts for which a premium is shown below  AND  a Certificate indicating such coverage has been issued.

| BASIC VEHICLE POLICY | | | |
|---|---|---|---|
| **LIABILITY INSURANCE COVERAGE PART** | | | |
| PREMIUMS | LIMITS OF INSURANCE | COVERAGES | DEDUCTIBLES |
| Liability Included | Per Certificate | See Certificate | See Certificate |
| **PHYSICAL DAMAGE INSURANCE COVERAGE PART** | | | |
| PREMIUMS | LIMITS OF INSURANCE | COVERAGES | DEDUCTIBLES |
| Comprehensive Included | Actual Cash Value/Stated Value or Cost of Repair, whichever is less. | See Certificate | See Certificate |
| Collision Included | Actual Cash Value/Stated Value or Cost of Repair, whichever is less. | See Certificate | See Certificate |
| **UNINSURED AND UNDERINSURED MOTORISTS INSURANCE** | | | |
| PREMIUMS | LIMITS OF INSURANCE | COVERAGES | DEDUCTIBLES |
| Included | $25,000 per person $50,000 per occurrence | See Endorsement | N/A |
| **MEDICAL PAYMENTS COVERAGE PART** | | | |
| PREMIUMS | BENEFITS | COVERAGES | DEDUCTIBLES |
| Included | Occupational Accident | See Certificate | See Certificate |
| Included | Other Indemnification (Contract Liability) | See Certificate | See Certificate |
| Included | Occupational Compensation | See Certificate | See Certificate |
| | | | |

**FORMS AND ENDORSEMENTS**
Form(s) and Endorsement(s) made a part of this policy at time of issue:

See Schedule of Forms and Endorsements (094003)

**DESCRIPTION OF OWNED VEHICLES:**   Symbol 7: Specifically Described Autos - As Per Certificates

**COUNTERSIGNED BY:** _____
Authorized Representative



**Policy Number: TGM300007B-46007**

# SCHEDULE OF FORMS AND ENDORSEMENTS

Named Insured   National Association of Independent Truckers, LLC.

Agent Insured   Transguard General Agency Inc.

Effective Date: 9/25/2015
12:01 A.M. Standard Time
Agent No.

| | | |
|---|---|---|
| 019102 | 04/11 | Important Notice to Policyholders |
| 091001 | 07/03 | Policy Jacket |
| 012009 | 08/06 | Declarations page |
| 094003 | 06/04 | Schedule of Forms and Endorsements |
| 013007 | 04/02 | Group Vehicle Master Policy Agreement |
| 014093 | 03/13 | Nonrenewal Provision Endorsement |
| IL 00 03 04 98 | | Calculation of Premium |
| IL 00 21 04 98 | | Nuclear Energy Liability Exclusion Endorsement |
| CA 00 01 03 10 | | Business Auto Coverage Form |
| 014069 | 09/06 | Personal Contents Endorsement |
| CA 01 20 01 15 | | Illinois Changes |
| CA 20 01 10 01 | | Lessor – Additional Insured and Loss Payee |
| CA 21 30 01 15 | | Illinois Uninsured Motorists Coverage |
| CA 99 44 12 93 | | Loss Payable Clause |
| 014059 | 07/06 | Changes in Business Auto Coverage Form |
| 014061 | 11/11 | Physical Damage Exclusion |
| 014065 | 11/11 | Stated Amount Insurance |
| 014067 | 07/06 | Truckers – Insurance for Non-Trucking Use |
| 013012 | 04/15 | Medical Payments – Occupational Accident Coverage Part |
| 015020 | 11/08 | Medical Payments – Occupational Accident Coverage Part Schedule of Benefits Plan O |
| 014080 | 02/15 | Contract Driver Endorsement |
| 013013 | 02/15 | Other Indemnification (Contract Liability) Coverage Part |
| 014081 | 06/09 | Contract Driver Endorsement |
| 014075 | 05/08 | Senior Plan Endorsement |
| 015022 | 05/08 | Medical Payments – Occupational Accident Coverage Part Schedule of Benefits – Senior Plan SR |
| 014077 | 02/15 | Broadened Coverage Endorsement |
| 013010 | 04/07 | Medical Payments – Occupational Compensation Coverage Part |
| 014076 | 05/08 | Broadened Coverage Endorsement |

# GROUP VEHICLE MASTER POLICY AGREEMENT

We agree with You, in return for receipt of Your required premium payment, to insure You subject to the terms of this policy.

We will insure You for the Coverage and Limits of Insurance which are displayed on Your Certificate(s).

## GROUP MASTER POLICY PROVISIONS

This Group Vehicle Master Policy is issued to the Group set forth in the Declarations, pursuant to Section 388b of the Illinois Insurance Code, and is for the benefit of those members/beneficiaries of the Group who are issued Certificates of insurance hereunder.

**Entire Contract:** This policy, all endorsements hereto, the individual applications of the members/beneficiaries of the Group set forth in the Declarations and all supplemental applications and schedules shall constitute the entire contract between the parties. All statements made by such members/beneficiaries, in the absence of fraud, shall be deemed representations and not warranties, and no such statement shall be used in defense of a claim under this policy, unless it is contained in a written application.

No agent has the authority to change or waive any part of this Group Vehicle Master Policy or Certificate. To be valid, any change or waiver must be in writing, approved by one of Our officers and made a part of this Group Vehicle Master Policy.

**Certificates:** We will issue and deliver to each member/beneficiary of the Group set forth in the Declarations who is insured under this policy an individual Certificate of Insurance or Evidence of Coverage (hereinafter Certificate) setting forth a statement as to the insurance protection to which it is entitled and to whom proceeds are payable hereunder.

By acceptance of the Certificate, the Insured Person agrees that the statements in the Certificate are His agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured Person and Us or any of Our agents relating to this insurance.

**New Members:** New members/beneficiaries who become affiliated with the Group set forth in the Declarations and who are eligible to make application for insurance under this Group Vehicle Master Policy shall be added by endorsement to this policy; provided, however, if applicable, that participation in the insurance afforded by this Group Vehicle Master Policy shall not be required as a condition of membership, nor shall any member not participating in the insurance afforded by this Group Vehicle Master Policy be coerced or discriminated against by the Group.

**Termination Of Membership:** Notwithstanding any other provision of this Group Vehicle Master Policy, but subject to the conversion rights set forth in the following paragraph, the coverage provided herein shall terminate automatically with respect to any individual member/beneficiary upon such member/beneficiary's termination of its connection with the Group set forth in the Declarations.

**Conversion Rights**

1. Upon termination of its connection with the Group set forth in the Declarations, a member/beneficiary shall have the right to convert its Certificate under this Group Vehicle Master Policy to an individual standard policy of insurance in the same insurer as offered by Us to non-group insureds, extending the same limits of coverage, subject to underwriting criteria and rating procedures which are normally applied to non-group insureds.

2. Conversion procedure

   In order to convert Your Certificate to an individual standard policy, You must, within ten (10) days of the date Your connection with the Group is terminated:

   a. Notify Us in writing of Your election to convert; and

   b. Pay the full amount of premium due for the conversion policy.

## GENERAL CONDITIONS

The following conditions are applicable to the entire Group Vehicle Master Policy, including all Coverage Parts and Endorsements, except as expressly amended or superseded by the terms of any Coverage Part or Endorsement.

**Premium:** All premiums for this policy shall be computed in accordance with Our rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

The Insured Person shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to Us at the end of the policy Period and at such times during the policy period as We may direct.

**Inspections And Surveys:**
1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give the Insured Person reports on the conditions We find; and
   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions We do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for health or safety of workers or the public. And We do not warrant that the conditions:

   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to Us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations We may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**Examination of Insured Person's Books and Records:** We may examine and audit the Insured Person's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**Action Against Us:** No action shall lie against Us unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor, if applicable, until the amount of the Insured Person's obligation to pay shall have been finally determined either by judgment against the Insured Person after actual trial or by written agreement of the Insured Person, the claimant and Us.

1. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

2. No person or organization shall have any right under this policy to join Us as a party to any action against the Insured Person to determine the Insured Person's liability, nor shall We be impleaded by the Insured Person or His legal representative.

3. Bankruptcy or insolvency of the Insured Person or of the Insured Person's estate shall not relieve Us of any of its obligations hereunder.

**Changes:** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or stop Us from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**Transfer of Insured Person's Rights And Duties Under This Policy:** Assignment of interest under this policy or any Certificate issued thereunder shall not bind Us until Our written consent is endorsed thereon; if, however, the Insured Person shall die, such insurance as is afforded by the Liability and Physical Damage Coverage Parts shall apply:

1. The Insured Person's rights and duties will be transferred to the Insured Person's legal representative but only while acting within the scope of duties as the Insured Person's legal representative; and

2. Until the Insured Person's legal representative is appointed and qualified, anyone having proper temporary custody of the Insured Person's property will have the Insured Person's rights and duties but only with respect to that property.

013007 (04/02)

**Cancellation**

1. If You are the holder of this Group Vehicle Master Policy, You may cancel this policy by returning this policy to Us or by mailing Us advance written notice of cancellation.

2. If You are a Certificate holder for insurance issued hereunder, You may cancel the specific coverage documented in Your Certificate by returning Your Certificate to Us or by mailing Us advance written notice of cancellation.

3. When this policy is in effect 61 days or more or is a renewal or continuation policy, We may cancel only for one or more of the following reasons by mailing You written notice of cancellation stating the reasons for cancellation.

   a. Nonpayment of premium.

   b. The policy was obtained through a material misrepresentation.

   c. Any Insured Person has violated any of the terms and conditions of the policy.

   d. The risk originally accepted has measurably increased.

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

   f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the Illinois insurance laws.

4. If We cancel for nonpayment of premium, We will mail you at least 10 days written notice.

5. If this policy is cancelled for other than nonpayment of premium and the policy is in effect:

   a. 60 days or less, We will mail you at least 30 days written notice.

   b. 61 days or more, We will mail you at least 60 days written notice.

6. We may not cancel the insurance afforded by this policy with respect to any individual member/beneficiary of the Group set forth in the Declarations, except for the non-payment of premium by such member/beneficiary or unless the insurance for the entire Group is cancelled.

   a. Notice of cancellation will be given to each individual member/beneficiary in accordance with this subsection.

   b. Subject to the Conversion Rights set forth in the **Group Master Policy Provisions** herein, Your coverage under this policy will terminate automatically upon termination of Your connection with the Group set forth in the Declarations, pursuant to the Termination of Membership section set forth in the **Group Master Policy Provisions** herein.

7. Upon cancellation, We will send You any premium refund due. If We cancel, the refund will be 100% of the unearned premium computed on a pro rata basis. If you cancel, the refund will be 90% of the unearned premium computed on a pro rata basis. The cancellation will be effective even if We have not made or offered a refund.

8. The effective date of cancellation stated in the notice shall become the end of the policy period.

9. Our notice of cancellation will state the reason for cancellation.

10. A copy of the notice will also be sent to your agent or broker and the loss payee.

**Mailing of Notices:**

We will mail cancellation and nonrenewal notices to the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**Bankruptcy:** We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an Insured Person.

**Liberalization:** If We revise these Coverage Forms to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective.



POLICY NUMBER:

COMMERCIAL AUTO
014093 03/13

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NONRENEWAL PROVISION ENDORSEMENT

This endorsement modifies the GROUP VEHICLE MASTER POLICY AGREEMENT as described below.

The provisions of the GROUP VEHICLE MASTER POLICY AGREEMENT shall apply except as modified by this endorsement.  This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

(If no entry appears above, information to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The **GENERAL CONDITIONS** section of the **GROUP VEHICLE MASTER POLICY AGREEMENT** is hereby amended to include the following provision immediately following that section's **Cancellation** provision.

**Nonrenewal**

If we decide not to renew or continue this policy, we will mail you, each individual member, your agent or broker and the loss payee written notice, stating the reason for nonrenewal, at least 60 days before the policy renewal date. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**INTERLINE**
**IL 00 03 04 98**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage";

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

       Copyright, Insurance Services Office, Inc., 1997       IL 00 21 04 98       □

COMMERCIAL AUTO
CA 00 01 03 10

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|--------|--|--------------------------------------------------|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

© Insurance Services Office, Inc., 2009

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II – LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

 © Insurance Services Office, Inc., 2009   □

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. **Coverage Extensions**

a. **Supplementary Payments**

We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

b. **Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. **Exclusions**

This insurance does not apply to any of the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. **Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

3. **Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

   **(1)** Employment by the "insured"; or

   **(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

   **(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the coverage form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

   **(1)** When all of the work called for in your contract has been completed.

   **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

© Insurance Services Office, Inc., 2009

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

    **a. Comprehensive Coverage**

    From any cause except:

    (1) The covered "auto's" collision with another object; or

    (2) The covered "auto's" overturn.

    **b. Specified Causes Of Loss Coverage**

    Caused by:

    (1) Fire, lightning or explosion;

    (2) Theft;

    (3) Windstorm, hail or earthquake;

    (4) Flood;

    (5) Mischief or vandalism; or

    (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

    **c. Collision Coverage**

    Caused by:

    (1) The covered "auto's" collision with another object; or

    (2) The covered "auto's" overturn.

2. **Towing**

    We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

    If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

    **a.** Glass breakage;

    **b.** "Loss" caused by hitting a bird or animal; and

    **c.** "Loss" caused by falling objects or missiles.

    However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

    **a. Transportation Expenses**

    We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

    **b. Loss Of Use Expenses**

    For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle owned or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

    (1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

    (2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

    (3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

    However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

    **a. Nuclear Hazard**

    (1) The explosion of any weapon employing atomic fission or fusion; or

    (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

© Insurance Services Office, Inc., 2009

CA 00 01 03 10    □

**b. War Or Military Action**

   **(1)** War, including undeclared or civil war;

   **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**4.** We will not pay for "loss" to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **b.** Any device designed or used to detect speed-measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed-measurement equipment.

   **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   **a.** Permanently installed in or upon the covered "auto";

   **b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

   **c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   **d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

   **a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   **b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** $1,000 is the most we will pay for "loss" in any one "accident" to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of "loss", is:

   **a.** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

   **b.** Removable from a permanently installed housing unit as described in Paragraph **2.a.** above or is an integral part of that equipment; or

   **c.** An integral part of such equipment.

**3.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**4.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this coverage form until:

**a.** There has been full compliance with all the terms of this coverage form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

© Insurance Services Office, Inc., 2009

CA 00 01 03 10    □

## B. General Conditions

### 1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this coverage form.

### 2. Concealment, Misrepresentation Or Fraud

This coverage form is void in any case of fraud by you at any time as it relates to this coverage form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This coverage form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this coverage form.

### 3. Liberalization

If we revise this coverage form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

### 4. No Benefit To Bailee – Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this coverage form.

### 5. Other Insurance

**a.** For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this coverage form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this coverage form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

### 6. Premium Audit

**a.** The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

### 7. Policy Period, Coverage Territory

Under this coverage form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if:

**(a)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(b)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this coverage form and any other coverage form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the coverage forms or policies shall not exceed the highest applicable Limit of Insurance under any one coverage form or policy. This condition does not apply to any coverage form or policy issued by us or an affiliated company specifically to apply as excess insurance over this coverage form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

© Insurance Services Office, Inc., 2009

□

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

   **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

  **1.** A lease of premises;

  **2.** A sidetrack agreement;

  **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

  **6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

  **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

  **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

  **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **2.** Vehicles maintained for use solely on or next to premises you own or rent;

  **3.** Vehicles that travel on crawler treads;

  **4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **a.** Power cranes, shovels, loaders, diggers or drills; or

   **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

  **5.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   **b.** Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

   However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

   1. Damages because of "bodily injury" or "property damage"; or

   2. A "covered pollution cost or expense";

   to which this insurance applies, are alleged.

   "Suit" includes:

      a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

 © Insurance Services Office, Inc., 2009 CA 00 01 03 10   □



POLICY NUMBER:

**COMMERCIAL AUTO**
**014069 09/06**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PERSONAL CONTENTS ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

In consideration of the premium paid, and subject to the terms of this endorsement and the policy terms and conditions, we agree to pay the "insured" for loss of personal contents arising from an occurrence to a covered "auto" excluding "trailers".

A.  The following is added to Paragraph **A. Coverage** of **SECTION III – PHYSICAL DAMAGE COVERAGE:**

**Personal Contents**

If evidence of Physical Damage Coverage is shown on your Certificate, then, coverage for personal property contained in the covered "auto" described in the Certificate applies, subject to a $100 deductible per occurrence.

B.  The following exclusions are added to Paragraph **B. Exclusions of SECTION III – PHYSICAL DAMAGE COVERAGE:**

We do not cover "loss" or damage:

**a.**  To any personal property of the "insured" or others in the "trailer".

**b.**  To any personal property of the "insured", or others, permanently installed in the covered "auto".

**c.**  To any of the following items or their accessories whether or not permanently installed in or on the covered "auto":

(1)  Citizens' band radios;

(2)  Two-way radios;

(3)  Telephones including, but not limited to, Cellular Telephones;

(4)  Scanning monitor receivers;

(5)  Antennas;

(6)  Computers;

(7)  Tape decks or other sound reproducing equipment;

(8)  Custom murals, paintings or graphics.

(9)  Money; and

(10) Credit Cards.

**d.**  To tarpaulins, chains, or cargo securing devices.

   e.   To a covered "auto" while in anyone else's possession under a written trailer interchange agreement.

   f.   Due to conversion, embezzlement or secretion.

   g.   Which was caused by you or any person or persons in your household or in your service or employment, whether the loss or damage occurs during the hours of such service or employment or not.

   h.   To any permits, licenses or documents, either attached to or carried upon or within the covered "auto", whether caused by any of the coverages insured by this policy.

C.   The following is added to Paragraph **A. Loss Conditions** item **2. Duties in the Event of Accident, Claim, Suit or Loss** of **SECTION IV – BUSINESS AUTO CONDITIONS:**

   A police report must be filed at the time of all theft losses; and

A proof of loss form must be filled out, and include an itemized list of items and actual sales receipts for each item. The proof of loss form, itemized list, sales receipts and a copy of the police report for theft losses, must be submitted to the company.

D.   The following is added to Paragraph **A. Loss Conditions** of **SECTION IV – BUSINESS AUTO CONDITIONS:**

   **Loss Payment – Personal Contents**

   The following limitations apply to payment for Personal Content losses:

   a.   Coverage is based on actual cash value at the time of "loss" subject to an annual maximum of $2,000;

   b.   Maximum limit per item is $500; and

   c.   Jewelry is limited to $250.

COMMERCIAL AUTO
CA 01 20 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

For a covered "auto" licensed or principally garaged in Illinois, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **1.b.(3)** of the **Who Is An Insured** provision does not apply.

2. The **Limit Of Insurance** provision applies except that we will apply the Covered Autos Liability Coverage limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident";

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $20,000 for "property damage" caused by any one "accident".

   This provision will not change our total Limit of Insurance for Covered Autos Liability Coverage.

**B. Changes In Physical Damage Coverage**

Paragraph **3.** of the **Limits Of Insurance** provision is replaced by the following:

3. We may deduct for betterment if:

   a. The deductions reflect a measurable decrease in market value attributable to the poorer condition of, or prior damage to, the vehicle.

   b. The deductions are for prior wear and tear, missing parts and rust damage that are reflective of the general overall condition of the vehicle considering its age. In this event, deductions may not exceed $500.

**C. Changes In Conditions**

The **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are changed by the addition of the following:

Covered Autos Liability Coverage provided by this Coverage Form for any "auto" you do not own is primary if:

1. The "auto" is owned or held for sale or lease by a new or used vehicle dealership;

2. The "auto" is operated by an "insured" with the permission of the dealership described in Paragraph **1.** while your "auto" is being repaired or evaluated; and

3. The Limit of Insurance for Covered Autos Liability Coverage under this Policy is at least:

   a. $100,000 for "bodily injury" to any one person caused by any one "accident";

   b. $300,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $50,000 for "property damage" caused by any one "accident".

© Insurance Services Office, Inc., 2014

POLICY NUMBER:

COMMERCIAL AUTO
CA 20 01 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LESSOR – ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | (Authorized Representative) |

**SCHEDULE**

| Insurance Company Policy Number Effective Date |
|---|
| Expiration Date |
| Named Insured  See schedule on file with company. Address |
| Additional Insured (Lessor) Address |
| Designation or Description of "Leased Autos" |

| Coverages | Limit Of Insurance |
|---|---|
| Liability | $                                Each "Accident" |
| Personal Injury Protection (or equivalent no-fault coverage) | $ |
| Comprehensive | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS:   $          For Each Covered "Leased Auto" |
| Collision | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS:   $          For Each Covered "Leased Auto" |
| Specified Causes of Loss | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS:   $          For Each Covered "Leased Auto" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

CA 20 01 10 01                    © ISO Properties, Inc.,  2000                    Page 1 of 2          ☐

## A. Coverage

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow. For a covered "auto" that is a "leased auto" **Who Is An Insured** is changed to include as an "insured" the lessor named in the Schedule.

2. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

## B. Loss Payable Clause

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

## C. Cancellation

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

## D.
The lessor is not liable for payment of your premiums.

## E. Additional Definition

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

© ISO Properties, Inc., 2000

CA 20 01 10 01   ☐

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 21 30 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

### SCHEDULE

| | |
|---|---|
| **Limit Of Insurance:  $** | Each "Accident" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

   d. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

© Insurance Services Office, Inc., 2014

b. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

We will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

a. $25,000 for "bodily injury" to any one person caused by any one "accident"; and

b. $50,000 for "bodily injury" to two or more persons caused by any one "accident".

This provision will not change our total limit of liability.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

## E. Changes In Conditions

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this Coverage Form is provided:

(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved; and

b. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Legal Action Against Us** is replaced by the following:

**Legal Action Against Us**

a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

b. Any legal action against us must be brought within two years after the date of the "accident". However, this Paragraph 3.b. does not apply to an "insured" if, within two years after the date of the "accident", arbitration proceedings have commenced in accordance with the provisions of this Coverage Form.

4. **Transfer Of Rights Of Recovery Against Others To Us** does not apply.

5. The following conditions are added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages, then the disagreement will be arbitrated. If the "insured" requests, we and the "insured" will each select an arbitrator. The two arbitrators will select a third. If the arbitrators are not selected within 45 days of the "insured's" request, either party may request that arbitration be submitted to the American Arbitration Association. We will bear all the expenses of the arbitration except when the "insured's" recovery exceeds the minimum limit specified in the Illinois Safety Responsibility Law.

If this occurs, the "insured" will be responsible for payment of his or her expenses and an equal share of the expenses of the third arbitrator up to the amount by which the "insured's" recovery exceeds the statutory minimum.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives.

c. If arbitration is submitted to the American Arbitration Association, then the American Arbitration Association rules shall apply to all matters except medical opinions. As to medical opinions, if the amount of damages being sought:

(1) Is equal to or less than the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then the American Arbitration Association rules shall apply.

(2) Exceeds the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then rules of evidence that apply in the circuit court for placing medical opinions into evidence shall apply.

In all other arbitration proceedings, local rules of law as to arbitration procedure and evidence will apply.

**d.** If the arbitration involves three arbitrators, a decision agreed to by two of the arbitrators will be binding for the amount of damages not exceeding the lesser of either:

(1) $75,000 for "bodily injury" to any one person/$150,000 for "bodily injury" to two or more persons caused by any one "accident"; or

(2) The Limit Of Uninsured Motorists Insurance shown in the Schedule or Declarations.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**a.** For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**c.** That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto" or a vehicle an "insured" is "occupying". If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

**b.** Owned by a governmental unit or agency; or

**c.** Designed for use mainly off public roads while not on public roads.

© Insurance Services Office, Inc., 2014

CA 21 30 01 15

COMMERCIAL AUTO
CA 99 44 12 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.

Copyright, Insurance Services Office, Inc., 1993



**POLICY NUMBER:**

COMMERCIAL AUTO
014059 07/06

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CHANGES IN BUSINESS AUTO COVERAGE FORM

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

The second paragraph of the Business Auto Coverage Form is replaced by the following:

Throughout this policy the words "you" and "your" refer to the "insured" shown in the Certificate evidencing coverage for this Coverage Part.   The words "we", "us" and "our" refer to TRANSGUARD INSURANCE COMPANY OF AMERICA, INC. or its authorized representatives.

The lead-in sentence under **SECTION  IV  – BUSINESS AUTO CONDITIONS** is replaced by the following:

The following conditions apply in addition to the Group Vehicle Master Policy Agreement:

 **TRANSGUARD**
INSURANCE COMPANY OF AMERICA, INC.

**COMMERCIAL AUTO**
**014061 11/11**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PHYSICAL DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

| POLICY NUMBER: | POLICY CHANGES EFFECTIVE: |
|---|---|
| NAMED INSURED: | AUTHORIZED REPRESENTATIVE: |

Paragraph **B. Exclusions of Section III – Physical Damage Coverage** is amended by the addition of the following:

"We" will not pay for "loss" to a covered "auto", or its equipment, or "mobile equipment", under Specified Causes of Loss, which was intentionally caused by "you", any person or persons in "your" household, "your" "employees", or any permissive driver whether the "loss" or damage occurs during the hours of such service of employment or not.

"We" will not deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of a "loss", if the "loss" arose out of a pattern of criminal domestic violence and the perpetrator of the "loss" is criminally prosecuted for the act causing the "loss".



POLICY NUMBER:

**COMMERCIAL AUTO**
**014065 11/11**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# STATED AMOUNT INSURANCE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| Named Insured:   National Association of Independent Truckers, LLC |
| Endorsement Effective Date: |
| **Countersignature Of Authorized Representative** |
| Name: |
| Title: |
| Signature: |
| Date: |

### SCHEDULE

| The insurance provided by this endorsement is reduced by the following deductible(s): | | |
|---|---|---|
| **Vehicle Number** | **Coverage** | **Limit Of Insurance** |
| | | $          Less $ Deductible |
| | | $          Less $ Deductible |
| | | $          Less $ Deductible |

**Note**
The amount shown in the Schedule or in the Certificate is not necessarily the amount you will receive at the time of "loss" for the described property. Please refer to the Limit Of Insurance and Deductible provisions which follow.

| Designation Or Description Of Covered "Autos" | | |
|---|---|---|
| **Vehicle Number** | **Model Year** | **Make/Model** |
| | | |

(If no entry appears above, information to complete this endorsement will be shown in the Certificate as applicable to this endorsement.)

**A.** This endorsement provides only those coverages where a premium has been paid. Each of these coverages applies only to the vehicles shown as covered "autos".

**B.** For a covered "auto" described in the Schedule, paragraphs **C. Limit of Insurance** and **D. Deductible** of **SECTION III – PHYSICAL DAMAGE COVERAGE** are replaced by the following:

   **C. Limit Of Insurance**

      1. The most we will pay for "loss" in any one "accident" is the least of the following amounts minus any applicable deductible shown in the Schedule:

         **a.** The actual cash value of the damaged or stolen property as of the time of the "loss";

         **b.** The cost of repairing or replacing the damaged or stolen property with property of like kind and quality; or

         **c.** The amount shown in the Schedule.

      2. $1,000 is the most we will pay for "loss" in any one "accident" to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of "loss", is:

         **a.** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

         **b.** Removable from a permanently installed housing unit as described in Paragraph **2.a.** above or is an integral part of that equipment; or

         **c.** An integral part of such equipment.

      3. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

      4. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

  **D. Deductible**

     For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations or Schedule.



POLICY NUMBER:

**COMMERCIAL AUTO**
014067 07/06

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TRUCKERS – INSURANCE FOR NON-TRUCKING USE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

### SCHEDULE

**Description of Covered "Auto":**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations or Certificate as applicable to this endorsement.)

Liability Coverage for a covered "auto" described in the Schedule is changed as follows:

1. The following exclusions are added:

   This insurance does not apply:

   a. To a covered "auto" while used to carry, tow or transport property in any business; or

   b. To a covered "auto" while used in the business of anyone to whom the "auto" is leased or rented (including but not limited to engaging in any activities that ultimately benefit the lessee or renter). If in New York, this exclusion applies only if the lease or rental agreement requires the lessee or renter to carry

primary insurance for liability arising out of the lessee's or renter's use of the "auto"; or

c. During such time as the power unit (tractor) is used for the carrying, towing or transporting of any trailer or semi-trailer, or while the power unit is in the process of having a trailer or semi-trailer attached to or detached from it, unless such trailer or semi-trailer is owned by you and specifically described above.

However, in New York, the above exclusions apply only if there is other liability insurance which is valid and collectible, applicable to the covered "auto", which provides the minimum kinds of insurance required by law and which meets the minimum limits specified by the compulsory or financial responsibility laws of the jurisdiction where the covered "auto" is being used or the minimum limits specified by any law governing motor carriers of passengers or property, whichever is applicable.

2. Who Is An Insured does not include anyone engaged in the business of carrying, towing or transporting property by "auto" for hire who is liable for your conduct.

**TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.**
Includes copyrighted material of Insurance Services Office, Inc., with its permission.                    014067 07/06



013012 04/15

## TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

IMPORTANT NOTICE –
THIS DOES NOT PROVIDE COVERAGE FOR SICKNESS.
THIS DOES NOT PROVIDE STATUTORY WORKERS' COMPENSATION COVERAGE

**GROUP VEHICLE MASTER POLICY**
**MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT COVERAGE PART**

### SECTION I – DEFINITIONS

As used in this "coverage part":

**Accident:** means an unforeseeable, unexpected and unintended event; something that could not be foreseen as a consequence of an undertaking and is definite to time and place.

**Act of Terrorism:** means a violent act or an act that is dangerous to human life, property, or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion.

**Administrator:** means any entity which adjusts or settles claims for an insurer or trust, in connection with insurance coverage or annuities.

**Aggravation of a Medical Condition:** means that a "pre-existing condition" or "degenerative disease or condition" is worsened, either temporarily or permanently, by an "injury".

**Association:** means the National Association of Independent Truckers, LLC.

**Average Weekly Earnings;** means:

1. for an "independent contractor", the "member's" "line haul revenue" multiplied by the net earnings percentage shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate", divided by 52; or

2. for an "independent contractor's" "scheduled co-driver, partner or helper", the gross earnings as reported by the "member" for the 52 weeks prior to

the date of "injury" for which a claim is made under this "coverage part", divided by 52.

**Beneficiary:** means any party other than the "insured person" who is eligible to receive benefits under this "coverage part".

**Certificate:** means a certificate of insurance or evidence of coverage issued by "us" setting forth a statement as to the insurance protection to which the "insured person" is entitled.

**Combined Single Limit:** means, with respect to any one "insured person", the total amount of benefits that are payable under this "coverage part" for or in connection with "injury" sustained as the result of any one "accident". When the "combined single limit" has been reached, no further benefits shall be payable under this "coverage part", with respect to that "insured person", for or in connection with "injury" sustained as the result of that one "accident".

**Contract Carrier:** means the motor carrier identified on the "member's" "certificate".

**Coverage Part:** means this MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT EXTENDED COVERAGE PART.

**Cumulative Injury:** means an injury not caused by a single event but arising from repeated or recurring events and/or trauma which comes on gradually and occurs only by reason of the effect of successive events or trauma.

**Degenerative Disease or Condition:** means a disease or condition in which the function or structure of the affected body part(s) increasingly deteriorates

over time, whether due to normal bodily wear or lifestyle choices.

**Dependent Child or Dependent Children:** means "your" unmarried children, including natural children from the moment of birth, step or foster children, or adopted children, under age 19 (age 19-23 if attending an accredited institution of higher learning on a full-time basis) and who relies on "you" for more than 50% of "his" support and is taken as a dependent on "your" Federal Income Tax Return.
It also includes any unmarried "dependent children", regardless of age, who are incapable of self-sustaining employment by reason of mental or physical incapacity, and who are primarily dependent on "your" support and maintenance as defined herein.

**Dispatch or Under Dispatch:** means the period of time during which an "insured person" performs services on behalf of "his" "contract carrier" while:

1. being en route to pick up a load or a trailer needed to pick up a load by the most direct route without deviation;

2. picking up a load;

3. en route to deliver a load by the most direct route without deviation;

4. unloading a load; or

5. en route returning from delivering a load by the most direct route, without deviation, to the place where the "vehicle" is normally garaged.

**He, His or Him:** means she, hers or her respectively when referring to a female.

**Home Health Care:** means nursing care and treatment of an "insured person" in "his" home as part of an overall extended treatment plan. To qualify, the plan must:

1. be established and approved in writing by the attending "physician";

2. be provided by a "hospital" certified to provide home health services or by a certified "home health care" agency;

3. commence within 7 days of discharge from a "hospital";

4. be preceded by a "hospital" confinement of 7 days or more; and

5. be "medically necessary" as determined by "us".

No benefits are payable for home care services by a person who is a member of the "insured person's" immediate family, or resides in the "insured person's" home.

**Hospital:** means an institution which meets these requirements:

1. it is licensed as a hospital;

2. it provides facilities for medical and surgical treatment either

   a. on its premises; or

   b. through formal written arrangements with other "hospitals";

3. it provides said treatment primarily to patients confined for more than 24 hours;

4. it provides 24-hour nursing services supervised by registered graduate nurses;

5. all treatments and services are supervised by "physicians"; and

6. it charges patients for its services.

In no event shall the term include an institution which is primarily a rest home, or home for the aged or which is primarily engaged in the care and treatment of drug addicts or alcoholics.

**Hospital Intensive Care:** means confinement in that section or portion of a "hospital" established for critically injured persons, which has full-time nurses or other skilled "hospital" employees in close attendance and equipment for treating the critically injured person.

**Independent Contractor:** means a person who:

1. owns or leases "his" own "vehicle";

2. is not an employee of "his" "contract carrier";

3. is not otherwise eligible for payments under Workers' Compensation or any similar law; and

4. is "under contract" with "his" "contract carrier".

**Independent Medical Examination:** means an examination by a "physician" who has not previously been involved in the "insured person"'s care. There is no ongoing doctor-patient relationship.

**Injury:** means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly, solely and independent of all other causes which:

1. occurs while the "insured person" is covered under this "coverage part"; and

2. arises solely out of and in the course of "his" regular occupation while "under dispatch" and "on duty" and "under contract" with the "contract carrier" named on "his" "certificate".

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

**Inpatient Services:** means services which will include:

1. "Hospital" room and board, but not more than the average semi-private room rate charged by the "hospital" for each day of "hospital" confinement, except that for "hospital intensive care", not more than twice the average semi-private rate charged by the "hospital" for each day of such confinement and for not more than a maximum of 15 days for any "accident"; and

2. "Hospital" services and supplies "medically necessary" for the care and treatment of patients (not to include personal comfort services such as radio, television, telephone, barber and beauty services).

**Insured Person:** means an "independent contractor" who is a "member" of the "association" to whom this Group Vehicle Master Policy is issued, who is at least age 18 and less than age 70, and who is a "certificate" holder under this "coverage part". An "insured person" may also include an "independent contractor's" "scheduled co-driver, partner or helper" who is at least age 18 and less than age 70, as evidenced by a "certificate".

**Line Haul Revenue:** means the gross revenue as reported by the "contract carrier" paid to the "insured person" for the 12 months prior to the date of "injury" for which a claim is made under this "coverage part".

**Medical Accumulation Period:** means the maximum period of time in which benefits will be paid by this "coverage part" as shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate". The "medical accumulation period" incepts on the date of the "accident" which caused the "injury".

**Medical Documentation:** means any and all records, including forms provided by "us" for completion, whether in written, electronic or other format, generated by a "physician", "hospital" or other health care provider.

**Medically Necessary:** means that a service or supply is necessary and appropriate for the diagnosis or treatment of an "injury" resulting from "accident" based on generally accepted current medical practice, as determined by "us". A service or supply will not be considered "medically necessary" if:

1. it is provided only as a convenience to the "insured person" or provider;

2. it exceeds (in scope, duration or intensity) that level of care which is needed to provide safe, adequate and appropriate diagnosis or treatment, or

3. it is part of a plan of treatment that is experimental, unproven or related to research protocol.

The fact that any particular "physician" may prescribe, order, recommend, or approve a service or supply does not, of itself, make the service or supply "medically necessary".

**Member:** means a person who is a member in good standing of the "association".

**Net Recovery:** means the "insured person's" total recovery, less the reasonable and necessary expenses, including attorney fees, actually expended in securing the recovery.

**Occurrence:** means an "accident" occurring while an "insured person" is covered under this "coverage part", including continuous or repeated exposure to the same general harmful conditions, that results in "injury" to that "insured person".

**Occupational Disease:** means a condition, illness or injury, resulting over time, associated with a particular occupation or industry.

**On Duty:** means on-duty time as defined in the Department of Transportation regulations 49 C.F.R. § 395.2 as it relates to the completion of drivers' logs.

**Outpatient:** means a person who receives treatment at a "hospital", clinic or doctor's office without being hospitalized.

**Physician:** means a practitioner of the medical arts who is acting within the lawful scope of "his" license either as a doctor of medicine or a doctor of osteopathy or as such other practitioner as "we" by law must recognize as a physician legally qualified to render such treatment.

The "physician" cannot be the "insured person" or related to the "insured person" by blood, marriage or civil union or reside in the "insured person's" home.

**Pre-existing Condition:** means any illness, disease, or medical condition that existed prior to the "injury", including but not limited to "degenerative disease" or any prior injury, whether known or unknown to "us" or the "insured person".

**Reasonable and Customary Charge:** means a charge which is not more than is charged when there is no insurance; and is not more than the prevailing charge in the locality for a like service or supply and not more than the allowable charge under the Workers' Compensation fee schedule, if a Workers' Compensation fee schedule exists in the state where the service or supply is received.

**Related Disabilities:** means successive periods of "total disability", unless:

1. the latter "total disability" results from a separate "accident", or

2. the periods of "total disability" are separated by at least 90 days.

**Scheduled Co-Driver, Partner or Helper:** means a person on file with "us" who has been contracted by an "independent contractor" and coverage afforded to said person is evidenced by a "certificate".

**Serious Physical Injury:** means for purposes of excluding loss resulting from an "act of terrorism":

1. physical injury that involves a substantial risk of death;
2. protracted and obvious physical disfigurement; or
3. protracted loss of or impairment of the function of a bodily member or organ.

**Skilled Nursing Care Facility:** means an institution operating pursuant to law which is engaged in providing, for compensation, skilled nursing care and related services, including physical therapy services, to persons convalescing from illness or "injury" and who are confined for this purpose.

**Social Security Disability Award:** means Social Security disability benefits for which the "insured person" has submitted a claim and which have been approved for payment by the Social Security Administration directly and solely as a result of an "injury" and independent of all other causes and documentation of such award has been provided to "us".

**Spouse:** means the "insured person's" legal spouse as determined by the laws of the "insured person's" state of domicile.

**Stop Work:** means strike, lockout or walkout.

**Totally Disabled or Total Disability means:**

1. for purposes of the TEMPORARY TOTAL DISABILITY BENEFIT Provision only:

   a. for the "insured person's" first 52 weeks of "total disability", that the "insured person" is deemed by a "physician", to be unable to perform, due to "injury", the material and substantial duties of "his" regular occupation, and is not engaged in any occupation for wage or profit.

   b. for the "insured person's" period of "total disability" beyond 52 weeks, that the "insured person" is deemed by a "physician" to be unable to perform, due to "injury", the material and substantial duties of any occupation for which "he" is reasonably fitted by education, training or experience, and is not engaged in any occupation for wage or profit.

2. for purposes of the CONTINUOUS TOTAL DISABILITY BENEFIT Provision only, that the "insured person" is deemed by a "physician" to be permanently unable to perform, due to "injury", the material and substantial duties pertaining to any occupation for which "he" is or becomes qualified by education, training or experience, is not engaged in any occupation for wage or profit, and has been granted a total "Social Security Disability Award" directly and solely as a result of an "injury" and independent of all other causes.

**Under Contract:** means providing services in performing the substantial and material duties of "his" regular occupation as specified in "his" written "independent contractor" or owner/operator contract with the "contract carrier".

For a "member's" "scheduled co-driver, partner or helper" means physically working on behalf of and at the direction of that "member".

**Under the Influence of Alcohol:** means a person's level of alcohol in "his" blood equals or exceeds the amount where a person is presumed, under the law of the locale in which the "injury" is sustained (or in the absence of such law, the level indicated by the State of Illinois), to be under the influence of alcohol or intoxicating liquor if operating a motor vehicle,

regardless of whether "he" is in fact operating a motor vehicle when the "injury" occurs.

**Vehicle:** means a truck, tractor, tractor-trailer, trailer, semi-trailer, or van used primarily in "your" business, but does not include mobile equipment or a vehicle that is a private passenger or recreational vehicle.

**Waiting Period:** means for an "insured person" who becomes "totally disabled" while insured under this "coverage part", the period of time the "insured person" must be "totally disabled" before "total disability" benefits become payable. The "waiting period" is shown on the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

**We, Us, or Our:** means TRANSGUARD INSURANCE COMPANY OF AMERICA, INC. or its authorized representatives.

**Written Request:** means the "association" application in its entirety, or any form required by "us", which is requesting coverage under this "coverage part".

**You or Your:** means the "insured person" or the legal estate and/or "beneficiary" of an "insured person" who is deceased.

## SECTION II - ELIGIBILITY AND PARTICIPATION

**ELIGIBLE PERSONS:** Persons eligible for insurance under this "coverage part" are the following:

a. "Members" in good standing of the "association" who:

   a.  are "under contract";

   b.  are not "totally disabled"; and

   c.  are age 18 or over, but have not attained age 70.

b. A "member's" "scheduled co-driver, partner or helper"; provided:

   a.  they work for a "member" covered by this "coverage part";

   b.  they are not "totally disabled"; and

   c.  they are age 18 or over, but have not attained age 70.

**Age Limit:** No individual shall be eligible for insurance beyond age 70.

## PARTICIPATION

**PARTICIPATION:** A "member" may choose to participate in this insurance plan by completing a "written request" for insurance. A "member" may also make a "written request" to cover "his" "scheduled co-driver, partner or helper". All "written requests" must be approved by "us" and in no event will coverage be effective until a "certificate" has been issued.

## SECTION III - INSURED PERSONS – COVERAGE PERIOD

### EFFECTIVE DATE OF COVERAGE

**Effective Date:** "We" will issue a "certificate" to the "member" indicating "his" effective date under the "coverage part" and in no event will coverage be effective until a "certificate" has been issued.

**Scheduled Co-Driver, Partner or Helper Coverage Period:** The period of coverage for a "scheduled co-driver, partner or helper" will be only for that period of time in which the "scheduled co-driver, partner or helper" is contracted by the "member" (provided the "member's" insurance is effective) for a specified job(s) and is physically working on behalf of and at the direction of the "member".

## SECTION IV - CHANGE IN COVERAGE

Request for change in coverage: A "member" may request a change in "his" coverage if "he" is eligible for such change in coverage. The change will become effective on the date evidenced by a "certificate".

An "insured person" may name a beneficiary for loss of life benefits payable under the Accidental Death and Dismemberment Benefits Provision in the event "he" dies without a surviving "spouse" or "dependent children" Changes to the beneficiary designation for loss of life benefits under the Accidental Death and Dismemberment benefit provision must be requested by providing "us" with a completed Change of Beneficiary form.

## SECTION V - BENEFIT PROVISIONS

The benefits for the coverage provided under this "coverage part" are described in the following benefit provisions. "We" will pay the benefits set forth below when "we" receive due proof that:

   1.  the "insured person" sustained an "injury" in an "accident"; and

   2.  the "injury" occurred while performing the usual and customary duties of "his" occupation while

"on duty", "under dispatch" for and "under contract" to "his" "contract carrier".

All benefits payable under this "coverage part" will be subject to the "combined single limit" shown on the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

Any overpayment of any benefits paid by "us" pursuant to this "coverage part" may be recouped by "us" by: (a) suspension of any benefits pursuant to this "coverage part", including but not limited to medical benefit claims received but not yet paid; and/or (b) a demand by "us" for reimbursement by the "insured person" to "us" for any such overpayment.

### ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS PROVISION

"We" will pay the Benefit Payable opposite the Covered Loss as shown on the Table of Covered Losses listed below when "we" receive due proof that the "insured person's" dismemberment or loss of life occurred prior to the expiration of the "medical accumulation period" shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate". The amount of the Principal Sum applicable to each "insured person" is shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

For benefits to become payable under this benefit provision, death or dismemberment must be directly and solely as a result of an "injury" and independent of all other causes, including but not limited to any "pre-existing condition" to include but not be limited to diabetes or any heart-related condition.

### TABLE OF COVERED LOSSES

**For covered loss of:**
**Benefit Payable:**

| | |
|---|---|
| Life | Principal Sum |
| Both hands or both feet or sight of both eyes | Principal Sum |
| One hand and one foot | Principal Sum |
| Either hand or foot and sight of one eye | Principal Sum |
| Either hand or foot | One-Half Principal Sum |
| Sight of one eye | One-Half Principal Sum |
| Loss of one thumb | $2,000 |
| Loss of three fingers or three toes | $2,000 |
| Loss of two fingers or two toes | $1,500 |
| Loss of one finger or one toe | $1,250 |

Loss, with regard to:

1. hands and feet means actual, permanent and complete physical separation of a hand at or above the wrist, or of a foot at or above the ankle.

2. sight means entire and irrecoverable loss thereof, or diminution of vision corrected to 20/200 or less after corrective lenses and/or corrective surgery.

3. thumb, finger or toe means actual, permanent and physical separation resulting in actual bone loss.

Benefits for loss of life under this benefit provision shall be paid in a lump sum of $25,000 followed by payments of $1,000 per month until the Principal Sum has been paid, subject to the terms and conditions of this provision.

All dismemberment benefits will be paid in one lump sum.

**Benefit Limitations:**

If more than one covered loss shown on the Table of Covered Losses results from the same "accident", only one amount, the largest, will be payable.

The benefits payable under this benefit provision will be reduced by any Temporary Total Disability and Continuous Total Disability benefits paid or payable under this "coverage part" for the same "injury".

**Death benefit payments:**

If "you" have a surviving "spouse", "we" will pay the benefits for loss of life to "your" surviving "spouse".

If "you" are not survived by a "spouse", or if "your" "spouse" dies or remarries, "we" will pay or continue to pay the benefits for loss of life to "your" surviving "dependent children", if any. If there is more than one surviving "dependent child", the benefits for loss of life will be distributed equally among "your" surviving "dependent children".

If "you" do not have a surviving "spouse" or "dependent children", benefits for loss of life will be limited to $25,000 and will be paid to the "insured person's" named beneficiary on file with "us". In the event a beneficiary has not been named or the named beneficiary does not survive the "insured person", "we" will pay the $25,000 to the "insured person's" estate.

Any claim for death benefit must be submitted within the "medical accumulation period".

Benefits for loss of life will end on the earliest of the following dates:

---

013012 04/15               **TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.**               **Page 6 of 14**

1. the date "your" "spouse" dies or remarries, if there are no "dependent children";

2. the date the last "dependent child" dies or no longer meets the definition of "dependent child" under this "coverage part";

3. the date the Principal Sum has been paid; or

4. the date $25,000 has been paid, if "you" do not have a surviving "spouse" or "dependent children".

"We" may require satisfactory proof be submitted to "us" as often as "we" deem necessary that the "spouse" and/or "dependent children" continue to be eligible for benefits as defined by this "coverage part".

If a benefit is payable to a "dependent child" who is a minor, "we" will pay the benefit to the child's legal guardian.

## PARALYSIS BENEFIT PROVISION

"We" will pay the Benefit Payable opposite the Type of Paralysis as shown on the Table of Covered Losses listed below when "we" receive due proof that the "insured person's" Paralysis occurred prior to the expiration of the "medical accumulation period" shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate". The amount of the Principal Sum applicable to each "insured person" is shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate",

For benefits to become payable under this benefit provision, paralysis must be due to "injury". If paralysis would not have occurred but for a separate medical condition, including but not limited to a stroke, coverage under this benefit provision is excluded.

### TABLE OF COVERED LOSSES

| Type of Paralysis: | Benefit Payable: |
|---|---|
| Quadriplegia | Principal Sum |
| Paraplegia | 75% of Principal Sum |
| Hemiplegia | 50% of Principal Sum |
| Uniplegia | 25% of Principal Sum |

Quadriplegia: means the complete and irreversible paralysis of both upper and both lower limbs.

Paraplegia: means the complete and irreversible paralysis of both lower limbs.

Hemiplegia: means complete and irreversible paralysis of the upper and lower limbs of the same side of the body.

Uniplegia: means the complete and irreversible paralysis of one limb.

### Benefit Limitations:

If more than one covered loss shown on the Table of Covered Losses results from the same "accident", only one amount, the largest, will be payable.

The benefits payable under this benefit provision will be reduced by any Temporary Total Disability and Continuous Total Disability benefits paid or payable under this "coverage part".

## TEMPORARY TOTAL DISABILITY BENEFIT PROVISION

"We" will pay the Weekly Benefit described below to the "insured person" when "we" receive due proof that:

1. "he" is "totally disabled"; and

2. such "total disability":

   a. began before the "insured person" attained age 70;

   b. began within 90 days from the date of "accident" causing "injury";

   c. continued without interruption for at least the "waiting period" (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate"); and

   d. is due to "injury"

The Weekly Benefit which applies to the "insured person" will:

1. become payable at the end of the "waiting period";

2. continue to be payable while the "insured person" is "totally disabled"; and

3. end on the earliest of the following dates:

   a. the date the "insured person's" "total disability" ends;

   b. the date the "insured person" ceases to be under the regular care of a "physician", unless "he" has reached maximum medical improvement;

   c. the date the Maximum Benefit Period (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") is exhausted;

d.  the date the "insured person" attains Age 70; or

e.  the date the "insured person" dies.

The Weekly Benefit will not be payable during any period of time in which:

a.  The "insured person" is knowingly and willfully not following the medical treatment plan prescribed by "his" treating "physician", unless the prescribed treatment is a surgical or invasive procedure;
b.  The treatment is delayed while the "insured person" receives treatment for a condition not arising from a covered "injury"
c.  Treatment is delayed due to a "pre-existing condition"

If an "insured person's" "total disability" ends and the "insured person" has another period of "total disability" solely resulting from the same "injury", "we" will pay the Weekly Benefit for the Related Disability unless the periods of "total disability" are separated by 90 days or more, in which case no Temporary Total Disability benefits will be paid.

For purposes of calculating the Maximum Payment Period, "related disabilities" shall be counted toward one period of "total disability".

**Weekly Benefit Calculation:**

The Weekly Benefit amount payable for the first 52 weeks of "total disability" shall be the percentage of the "insured person's" "average weekly earnings" up to the Maximum Weekly Benefit (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") reduced by 100% of any "Social Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits not received prior to the "injury".

For weeks 53-104 (for Plans with more than a 52-week Maximum Payment Period), the Weekly Benefit shall be the percentage of the "insured person's" "average weekly earnings" up to the Maximum Weekly Benefit (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") reduced by 100% of any "Social Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits not received prior to the "injury".

Any benefits for less than a week of disability will be paid at the rate of $1/7^{th}$ of the Weekly Benefit amount per day of compensable "total disability".

The minimum Weekly Benefit will be $150.00 (reduced by 100% of any "Social Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits not received prior to the "injury"), provided the "insured person" has been continuously providing services to the "contract carrier" for the 60 days immediately prior to a covered "injury".

**CONTINUOUS TOTAL DISABILITY BENEFIT PROVISION**

"We" will pay the benefit described to an "insured person" when "we" receive due proof that:

1.  "He" is "totally disabled";
2.  "He" has received a "Social Security Disability Award" directly and solely as a result of an "injury" and independent of all other causes, and such "total disability":

    a.  began within 6 months from the date of "accident" causing "injury";

    b.  continued without interruption for at least the "waiting period" (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate");

    c.  is reasonably expected to continue without interruption until the "insured person" dies; and

    d.  the "Total Disability" is authorized by a "physician"; and

    e.  is confirmed via an "Independent Medical Examination"; and

3.  The "insured person" has been granted a Social Security Award directly and solely as a result of the "injury" within one year from the end of the "medical accumulation period"

**Weekly Benefit Calculation:**

The Weekly Benefit amount payable shall be the percentage of the "insured person's" "average weekly earnings" up to the Maximum Weekly Benefit (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") reduced by 100% of any "Social

Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits.

Benefits will be paid in monthly installments that will:

1. begin to be payable at the end of the "waiting period";

2. continue to be payable while the "insured person" is "totally disabled"; and

3. end on the earliest of the following dates:

   a. the date the "insured person's" "total disability" ends;

   b. the date the Maximum Benefit Period (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") is exhausted;

   c. the date the "insured person" dies; or

   d. the date the "insured person's" "Social Security Disability Award" ceases.

Any benefits for less than a week of disability will be paid at the rate of 1/7th of the Weekly Benefit amount per day of compensable "total disability".

## ACCIDENT MEDICAL & DENTAL EXPENSE BENEFIT PROVISION

If an "insured person" incurs "covered expenses" resulting from an "accident" which caused an "injury" while insured under this "coverage part", "we" will pay the "reasonable and customary charge" of such "covered expenses" incurred within the "medical accumulation period", but not more than the maximum benefit, while insured, for Accident Medical and Dental Expense shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

A "covered expense" will be deemed to have been incurred when the service or supply is rendered.

"We" will issue payments for a "covered expense" on behalf of the "insured person" directly to the "physician", "hospital" or medical service provider who provided such service or supply. If the "insured person" provides "us" with proof that "he" has already paid for the "covered expense", "we" will issue payment to the "insured person".

"We" will not pay for any medical or dental expense that is not submitted to "us" for payment within 2 years from the date the service or supply is rendered.

Covered Expense: means a "covered medical expense" or "covered dental expense" that is incurred by an "insured person" as a direct result of an "injury", within the "medical accumulation period".

A medical or dental expense will be a "covered expense" under this "coverage part" only if:

1. it is incurred on the recommendation or approval of a "physician" or dentist attending the "insured person";

2. it is "medically necessary"; and

3. the provider of the service is acting within the scope of "his" license.

Covered Medical Expense: means the "reasonable and customary charges":

1. for a professional ambulance service on the date of "accident" to a "hospital", required as a result of an "injury", subject to a maximum payment of $1,000.00.

2. for a medical air ambulance on the date of "accident" for service to a "hospital" required as a result of an "injury" subject to a maximum payment of $10,000.00.

3. for medical care by a "physician" or dentist.

4. for the initial supply but not replacement of splints, braces, artificial limbs and artificial eyes.

5. for the rental of oxygen equipment, "hospital" beds, wheelchairs and other durable medical equipment not to exceed the purchase price of such equipment.

6. for a "hospital" for "outpatient" and "inpatient" services" and for emergency room services, but only when emergency medical treatment is needed on an urgent basis.

7. for a licensed practical nurse (LPN), if under the supervision of a registered nurse (RN), for "home health care" which follows a 7 day period of "hospital" confinement resulting from a covered "injury" due to "accident" and which is prescribed by a "physician".

8. for a "skilled nursing care facility" for "inpatient services" which follow a period of "hospital" confinement resulting from a covered "injury" due to "accident" of at least 5 days, provided the confinement in the "skilled nursing care facility" results from the need for further and indefinite

medical care and the attending "physician" certifies the confinement is "medically necessary".

9. for rehabilitative spinal manipulation therapy or other rehabilitative chiropractic services or treatment, subject to a maximum payment of $1,000.00.

10. for physical therapy on an "outpatient" basis. Treatment shall be treated as a Covered Medical Expense up to a maximum of 36 visits.

11. for occupational therapy on an "outpatient" basis. Treatment shall be treated as a Covered Medical Expense up to a maximum of 10 visits.

12. for prescription drugs which are "medically necessary" for the treatment of a specific covered "injury" and have been prescribed in writing by a "physician". When generic prescription drugs are available, the most "we" will pay is the cost of the generic prescription drugs.

A "covered medical expense" does not include and no benefits will be payable for:

1. prosthetic or orthopedic appliances except as required for the replacement of natural parts of the body;

2. services of a Federal, Veterans, State or Municipal "hospital" or other health care provider for which the "insured person" is not liable for payment;

3. cosmetic plastic or restorative surgery unless "medically necessary" for the treatment of an "injury" resulting from a covered "accident";

4. eye refractions, eye glasses or contact lenses;

5. hearing aids;

6. work hardening programs;

7. medical treatment received outside of the United States, except for treatment on an emergency basis or treatment that has been approved by "us";

8. medical treatment for mental, functional nervous or emotional disorders without demonstrable organic cause;

9. emergency room services at a "hospital", unless emergency medical treatment is needed is needed on an urgent basis

10. Functional Capacity Evaluation

11. Pain Management; or

12. Medication available without a prescription, also referred to as over-the-counter medication.

**Covered Dental Expense**: means the "reasonable and customary charge" for the care, treatment, or replacement due to "accident" of sound natural teeth provided such care is recommended and given by a dentist operating within the scope of "his" license. A "Covered dental expense" payable shall be limited to the Maximum Dental Benefit per "injury" shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

## SECTION VI - GENERAL EXCLUSIONS AND LIMITATIONS

The following General Exclusions and Limitations apply to all benefits under this "coverage part".

This "coverage part" does not cover and no benefits will be paid for any "injury", loss or claim caused or contributed to by or resulting from:

1. sickness, disease or bacterial infection (except pyogenic infection which results from an accidental bodily "injury", or bacterial infection which results from the accidental ingestion of a contaminated substance);

2. suicide, attempted suicide or intentionally self-inflicted "injury" while sane or insane;

3. "injuries" sustained in an "accident" occurring prior to the "insured person's" 18th birthday or an "accident" occurring after the "insured person's" 70th birthday;

4. any loss that was not the result of an "accident" causing "injury" sustained while "he" is engaged in the usual and customary duties of "his" occupation while on duty, "under dispatch" for and "under contract" to "his" "contract carrier";

5. any loss sustained by the "insured person" which was the result of an "accident" causing "injury" that was sustained while "he" is being transported to or from "his" workplace, unless "he" is being transported in a "vehicle" that is primarily used in the "insured person's" occupation;

6. any "accident" occurring while the "insured person" is "under the influence of alcohol" or is otherwise in violation of Federal Department of Transportation Regulation 49 CFR §392.5;

7. any loss occurring while the "insured person" is in violation of Federal Department of Transportation Regulation 49 CFR §392.4 due to the presence of drugs into their system;

8. the "insured person's" commission of a criminal or felonious act, or any attempt thereat;

9. the "insured person's" riding or driving in any kind of race;

10. any "injury" for which benefits are available to the "insured person" under any Workers' Compensation Act or similar law, or under any policy providing Workers' Compensation or Employer's Liability benefits or coverage;

11. any condition for which medical advice or treatment was received by the "insured person" during the twelve months prior to the effective date of the "insured person's" coverage shown on "his" "certificate". In no event shall this exclusion apply to loss incurred or disability commencing after the earlier of:

   a. the end of a continuous period of twelve months commencing on or after the effective date of the "insured person's" coverage during which "he" has received no medical advice or treatment in connection with such disease or physical condition; or

   b. the end of the two-year period commencing on the effective date of the "insured person's" coverage;

12. any charges for medical care furnished by any of the following persons: the "insured person's" "spouse", parent, child, grandparent, brother, sister, parent-in-law or any other person residing in the "insured person's" home;

13. care that is not "medically necessary";

14. war (declared or undeclared), or any act thereof;

15. (an) "act(s) of terrorism" if the "act(s) of terrorism" result(s) in industry-wide insured losses that exceed 25 million dollars for related incidents that occur within a 72 hour period or fifty or more persons sustain death or "serious physical injury" for related incidents that occur within a 72 hour period;

16. mental, functional nervous or emotional disorders not arising directly and solely as a result of a traumatic head "injury" and independent of all other causes;

17. "cumulative injury";

18. "occupational disease";

19. any "injury" for which benefits are payable under United States Longshoremen's and Harbor Workers' Compensation Act or Federal Merchant Marine Act, including the Jones Act;

20. radioactive contamination whether suffered directly or indirectly;

21. a condition, malady or disorder involving the heart, its arteries and/or vessels, or any portion thereof, including that resulting from stress, strain or overexertion, which is not accompanied by and the result of an "accident" resulting in "injury" of external origin;

22. any loss occurring while the "insured person", covered "scheduled co-driver, partner or helper" is operating a "vehicle" without a valid license appropriate for the type of "vehicle" being driven;

23. treatment for alcoholism or drug abuse;

24. any "injury" arising out of a "stop work" action;

25. a sickness, disease, medical condition or "aggravation of a medical condition", including but not limited to "degenerative disease or condition" or "pre-existing condition";

26. the "insured person" performing normal maintenance or repairs on "his" "vehicle" while not "under dispatch"; or

27. hernias or hemorrhoids.

## SECTION VII – CONDITIONS

The following general conditions apply to this "coverage part":

**Modification:** This "coverage part" may be modified prospectively by rider, endorsement or amendment. "We" will give the "member" thirty (30) days prior notice of any such modifications; provided however, that consent of the Named Insured to any modification shall not be required.

**Time Periods:** All time periods, including this "coverage part", begin and end at 12:01 A.M., Standard Time at the Insured's Person's mailing address.

**Workers' Compensation:** This "coverage part" does not satisfy any legal requirement for Workers' Compensation.

A "member" is issued a "certificate" under this "coverage part" based on the representation of the "insured person" that "he" is an "independent contractor" and not an employee. This "coverage part" will not provide coverage where Workers' Compensation benefits are payable or claimed.

If Workers' Compensation benefits are claimed, found due, payable, settled with or without a finding of coverage or owed to an "insured person" for the same "injury" for which benefits would be payable under this "coverage part", then no benefits shall be paid under this "coverage part" for the "injury". If benefits have been paid for the "injury" under this "coverage part", they shall be fully reimbursed to "us" by the "insured person" without reduction for costs or collection of attorney's fees.

If the "insured person" is deemed to be an employee by final administrative order or judicial decree, contrary to the "insured person's" representations to "us" that "he" is an "independent contractor", the amount paid by "us" shall act as a lien on any Workers' Compensation benefits due the "insured person" and permission for that lien is granted by the "insured person". "We" shall be entitled to full rights of offset against any other monies owed the "insured person" to satisfy that lien.

If the "insured person" is deemed to be an "independent contractor" by final administrative order or judicial decree no benefits are owed under this "coverage part" as a result of a prior Workers' Compensation filing.

**Right of Recovery:** If another party is responsible for the "injury" for which benefits are paid by "us", "you" may pursue "your" remedies against such parties, and "we" will continue payment of benefits subject to the following terms and conditions:

1.  Assignment and Lien Rights

    "You" automatically assign to "us" any right of recovery "you" may have against any third party responsible for "your" "injury", to the extent of benefits paid or payable, by accepting benefits under this "coverage part". "You" must immediately notify "us" of any third party who "you" believe is responsible for "your" "injury" and any action "you" have taken to recover from that third party. "You" must do everything necessary to secure "our" rights and must do nothing after the "accident" to impair them. "We" shall have a lien on the amounts collected by "you" from such third parties and their insurers to the extent of all benefits paid or payable to "you" regardless if their claim for benefits has been submitted to us. The amount collected by "you" to which "our" lien shall attach shall be "your" total recovery, however obtained and whether or not such recovery is described as payment of loss for which benefits were paid under this "coverage part". "We" shall also be entitled to "our" pro-rata

share of any interest collected on the "net recovery".

2.  Payment to "us"

    The lien created and "your" obligation under that lien to reimburse "us" for benefits paid shall be discharged upon "our" receipt of "your" "net recovery" to the extent of benefits paid under this "coverage part" and "our" pro-rata share of any interest collected. Any remaining balance of the "net recovery" shall be paid to "you" but shall serve as a credit against any future or ongoing benefits otherwise payable arising out of "your" "injury".

3.  Compromise

    Any settlement of "your" claim against a third party that would result in a "net recovery" for an amount that is less than the total amount of benefits paid and reasonably expected to be paid in the future shall be made only with "our" prior written approval. Failure to obtain "our" prior approval will immediately terminate "our" obligation under this "coverage part" for the payment of benefits resulting "your" "injury". "our" lien rights shall survive and do not terminate.

4.  Subrogation

    "We" shall be subrogated to any right of recovery "you" may have against others to the extent of "our" benefits paid and payable together with "our" expenses of recovery and "we" may commence "our" own action under this right of subrogation. In such event, the recovery will be distributed in the same manner as a recovery by "you".

"We" are entitled to a first priority right of reimbursement and subrogation regardless of whether "you" recover all of "your" damages or whether "you" are made whole.

**Conformity with State Statutes:** Any provision of this "coverage part" which, on the date it takes effect, is in conflict with the laws of the state where it is issued is amended to conform to the minimum requirements of said law.

**Statements Not Warranties:** Statements made by the "insured person" will be deemed representations and not warranties. No such statement will be used to void or reduce the insurance unless it is contained in a written, signed statement. If the statement was made by an "insured person", "we" must furnish a copy to the "insured person" or "his" beneficiary.

## SECTION VIII - CLAIMS

The following conditions apply to any claim made by or on behalf of an "insured person" under this "coverage part":

**Notice of Claim:** means notification to "us" or the "administrator". A claim must be given to "us" within 30 days of the date of "injury". If notice cannot be given within that time frame, it must be given as soon as reasonably possible, but in no event beyond the "medical accumulation period".

**Proof of Loss:** After "we" receive a "notice of claim", "we" may require that the following information be provided to "us" to satisfy the Proof of Loss requirements before "we" can pay any benefits that may be due:

1. A copy of the "insured person's" driver logs for a period of time to include the date of "injury". If the "insured person" is not required by the U.S. Department of Transportation to maintain driver logs, a copy of the "insured person's" bill of lading, manifest, or other documentation of their load assignment must be provided.

2. Verification from the "insured person's" "contract carrier" that the "insured person" was "under dispatch" at the time of the "accident".

3. "Medical documentation" that indicates "you" suffered an "injury" due to an "accident", including but not limited to the documentation from "your" first treatment related to the "injury".

4. If the "insured person" is making a claim for Temporary Total Disability benefits, any and all "medical documentation" must be provided to "us" within 30 days of the date of "injury" to avoid a delay in benefits.

5. A copy of the police report, if applicable.

6. The results of any post accident drug and/or alcohol test.

7. A recorded statement and/or examination under oath as often as "we" feel necessary. Utilizing one method does not exclude the use of the other.

Proof of Loss must be sent to "us" within 90 days after "we" receive a "notice of claim". If the claimant is not able to send Proof of Loss within that time, it may be sent as soon as reasonably possibly without affecting the claim. The additional time allowed cannot exceed one year unless the "insured person" is legally incapacitated.

**Time of Claim Payment:** Benefits will be paid on a monthly basis after "we" receive the Proof of Loss.

**Physical Examination and Autopsy:** "We" have the right at "our" expense:

1. to have a person whose "injury" is the basis of a claim examined by an "Independent Medical Examination" as often as "we" feel necessary. Failure to submit to an examination will result in an immediate termination of benefits; and

2. to require an autopsy in the event of a claim for loss of life, except where forbidden by law.

**Legal Actions:** No one may bring a legal action against "us" under this "coverage part":

1. until 60 days following the date Proof of Loss is sent to "us" and "we" have made a coverage determination; or

2. after 3 years following the date Proof of Loss is due.

The period allowed for bringing legal action shall be tolled from the date Proof of Loss is sent to "us" until the date a claim is denied in whole or in part.

**Assignment:** Benefits payable under this "coverage part" may not be assigned.

The following condition applies to any claim made by or on behalf of a "contract carrier" as an additional insured or by an "insured person" under this "coverage part":

**Claim Administration Nonwaiver:** None of the following acts by "us", our claim representatives, or claim administrators shall be deemed to constitute a waiver of any coverage provision, limitation, exclusion or condition of this "coverage part" and/or "certificate" or of any right or defense that "we" may have thereunder:

1. Acknowledgement of receipt of notice of loss or claim under this "coverage part";

2. Furnishing forms for reporting a loss or claim, for providing information relative thereto, or for making Proof of Loss, or receiving or acknowledging receipt of any such forms or proofs, whether completed or uncompleted;

3.  Investigating any loss or claim under this "coverage part" or engaging in negotiations regarding any such loss or claim;

4.  Making any benefit or expense payment described in SECTION V – BENEFIT PROVISIONS, or making a commitment to any person or organization to make a payment of any such benefit or expense; or,

5.  Extending particular coverages or making payments to or on behalf of a "contract carrier" as an additional insured or "an "insured person" which exceeds the coverages or benefits provided by this "coverage part".   Such "contract carrier" or "insured person" agrees to promptly reimburse "us" for any amounts we pay to or on behalf of that "contract carrier" or "insured person" which exceeds the coverage or benefits provided by this "coverage part".



015020 11/08

# TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

### GROUP VEHICLE MASTER POLICY
### MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT
### COVERAGE PART

### SCHEDULE OF BENEFITS

|  | Plan O |
|---|---|
| Combined Single Limit: | $5,000,000 |
| **Accidental Death and Dismemberment Benefit** | |
| Principal Sum: | $300,000 |
| **Temporary Total Disability Benefit** | |
| Waiting Period: | 7 days |
| Maximum Benefit Period: | 104 weeks |
| Maximum Weekly Benefit: | $400 |
| Net Earnings Percentage | 25% |
| **Continuous Total Disability Benefit** | |
| Waiting Period: | 105 weeks |
| Maximum Benefit Period: | To age 65 |
| Maximum Weekly Benefit: | $400 |
| **Accident Medical & Dental Expense Benefit** | |
| Medical Accumulation Period: | 104 weeks |
| Maximum Medical Benefit: | $5,000,000 |
| Maximum Dental Benefit: | $1,000 |
| **Paralysis Benefit** | |
| Principal Sum: | $300,000 |

015020 11/08



POLICY NUMBER:

COMMERCIAL AUTO
014080 02/15

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACT DRIVER ENDORSEMENT

This endorsement modifies insurance provided under the following:

MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT COVERAGE PART

The provisions of the Coverage Part apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: |
| --- |
| Endorsement Effective Date: |
| **Countersignature Of Authorized Representative** |
| Name: |
| Title: |
| Signature: |
| Date: |

Attachment of this endorsement to the policy revises **SECTION I – DEFINITIONS** of the referenced Coverage Part as follows:

The following definitions are added:

**Contract Driver:** means a person on file with "us" who:

1.   has been contracted by a "fleet owner" to drive a "vehicle" owned or leased by the "fleet owner";

2.   is paid on a 1099 and not a W2;

3.   is not an employee of the "fleet owner" or "his" "contract carrier"; and

4.   coverage afforded to said person is evidenced by a "certificate".

**Fleet Owner:** means an "independent contractor" on file with "us" whose vehicle is driven by a "contract driver" who is a "certificate" holder under this "coverage part".

The following definitions replace definitions previously included for these terms:

**Average Weekly Earnings:** means:

1.   for an "independent contractor", the "member's" "line haul revenue" multiplied by the net earnings percentage shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate", divided by 52; or

2.   for an "independent contractor's" "scheduled co-driver, partner or helper", or "contract driver", the gross earnings as reported by the "independent contractor" for the 52 weeks prior to the date of "injury" for which a claim is made under this "coverage part", divided by 52.

**Injury:** means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly and independent of all other causes which:

1.  occurs while the "insured person" is covered under this "coverage part"; and

2.  arises solely out of and in the course of "his" regular occupation while "under dispatch" and "on duty" for the "contract carrier" named on "his" "certificate".

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

**Insured Person:** means an "independent contractor" who is a "member" of the "association" to whom this Group Vehicle Master Policy is issued, who is at least age 18 and less than age 70, and who is a "certificate" holder under this "coverage part". An "insured person" may also include an "independent contractor's" "scheduled co-driver, partner or helper" or "contract driver" who is at least age 18 and less than age 70, as evidenced by a "certificate".

**Under Contract:**

For a "member" who is not a "contract driver" means providing services in performing the substantial and material duties of "his" regular occupation as specified in "his" written "independent contractor" or owner/operator contract with the "contract carrier".

For a "member" who is a "contract driver" means providing services in performing the substantial and material duties of "his" regular occupation working on behalf of and at the direction of the "fleet owner" listed on "his" application.

For a "member's" "scheduled co-driver, partner or helper" means physically working on behalf of and at the direction of that "member".

Attachment of this endorsement revises **SECTION V – Benefit Provisions** of the referenced Coverage Part to read as follows:

**SECTION V – Benefit Provisions**

The benefits for the coverage provided under this "coverage part" are described in the following benefit provisions. "We" will pay the benefits set forth below when "we" receive due proof that:

1.  the "insured person" sustained an "injury" in an "accident"; and

2.  the "injury" occurred while performing the usual and customary duties of "his" occupation while "on duty" and "under dispatch" for "his" "contract carrier".

All benefits payable under this "coverage part" will be subject to the "combined single limit" shown on the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".



013013 02/15

## TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

### NOTICE –
### THIS IS NOT A WORKERS' COMPENSATION POLICY
### AND IS NEITHER GOVERNED BY OR SUBJECT TO THE
### ILLINOIS WORKERS' COMPENSATION ACT, 820 ILCS 305/1 et seq.

### GROUP VEHICLE MASTER POLICY
### OTHER INDEMNIFICATION
### (CONTRACT LIABILITY)
### COVERAGE PART

### SECTION I – DEFINITIONS

As used in this "coverage part":

**Accident:** means an unforeseeable, unexpected and unintended event; something that could not be foreseen as a consequence of an undertaking and is definite to time and place.

**Act of Terrorism:** means a violent act or an act that is dangerous to human life, property, or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion.

**Administrator:** means any entity which adjusts or settles claims for an insurer or trust, in connection with insurance coverage or annuities.

**Association:** means the National Association of Independent Truckers, LLC.

**Certificate:** means a certificate of insurance or evidence of coverage issued by "us" setting forth a statement as to the insurance protection to which the "insured person" is entitled.

**Contract Carrier:** means the motor carrier identified on the "member's" "certificate".

**Coverage Part:** means this OTHER INDEMNIFICATION (Contract Liability) COVERAGE PART.

**Dispatch or Under Dispatch:** means the period of time during which an "insured person" performs services on behalf of "his" "contract carrier" while:

1. being en route to pick up a load or a trailer needed to pick up a load by the most direct route without deviation;

2. picking up a load;

3. en route to deliver a load by the most direct route without deviation;

4. unloading a load, or

5. en route returning from delivering a load by the most direct route, without deviation, to the place where the "vehicle" is normally garaged.

**He, His or Him:** means she, hers or her respectively when referring to a female.

**Independent Contractor:** means a person who:

1. owns or leases "his" own "vehicle";

2. is not an employee of "his" "contract carrier";

3. is not otherwise eligible for payments under Workers' Compensation or any similar law; and

4. is "under contract" with "his" "contract carrier".

**Injury:** means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly, solely and independent of all other causes which:

1. occurs while the "insured person" is covered under this "coverage part"; and

2. arises solely out of and in the course of "his" regular occupation while "under dispatch" and "on duty" and "under contract" with the "contract carrier" named on "his" "certificate".

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

**Insured Person:** means an "independent contractor" who is a "member" of the "association" to whom this Group Vehicle Master Policy is issued, who is at least age 18 and less than age 70, and who is a "certificate" holder under this "coverage part". An "insured person" may also include an "independent contractor's" "scheduled co-driver, partner or helper" who is at least age 18 and less than age 70, as evidenced by a "certificate".

**Member:** means a person who is a member in good standing of the "association".

**Occurrence:** means an "accident" occurring while an "insured person" is covered under this "coverage part", including continuous or repeated exposure to the same general harmful conditions, that results in "injury" to that "insured person".

**On Duty:** means on-duty time as defined in the Department of Transportation regulations 49 C.F.R. § 395.2 as it relates to the completion of drivers' logs.

**Scheduled Co-Driver, Partner or Helper:** means a person on file with "us" who has been contracted by an "independent contractor" and coverage afforded to said person is evidenced by a "certificate".

**Serious Physical Injury:** means for purposes of excluding loss resulting from an "act of terrorism":

1. physical injury that involves a substantial risk of death;
2. protracted and obvious physical disfigurement; or
3. protracted loss of or impairment of the function of a bodily member or organ.

**Under Contract:** means providing services in performing the substantial and material duties of "his" regular occupation as specified in "his" written "independent contractor" or owner/operator contract with the "contract carrier".

For a "member's" "scheduled co-driver, partner or helper" means physically working on behalf of and at the direction of that "member".

**Vehicle:** means a truck, tractor, tractor-trailer, trailer, semi-trailer, or van used primarily in "your" business, but does not include mobile equipment or a vehicle that is a private passenger or recreational vehicle.

**We, Us, or Our:** means TRANSGUARD INSURANCE COMPANY OF AMERICA, INC. or its authorized representatives.

**Written Request:** means the "association" application in its entirety, or any form required by "us", which is requesting coverage under this "coverage part".

**You or Your:** means the "insured person".

## SECTION II - ELIGIBILITY AND PARTICIPATION

**ELIGIBLE PERSONS:** Persons eligible for insurance under this "coverage part" are the following:

I. "Members" in good standing of the "association" who:

   a. are "under contract";

   b. are not "totally disabled"; and

   c. are age 18 or over, but have not attained age 70.

II. A "member's" "scheduled co-driver, partner or helper"; provided:

   a. they work for a "member" covered by this "coverage part";

   b. they are not "totally disabled"; and

   c. they are age 18 or over, but have not attained age 70.

**Age Limit:** No individual shall be eligible for insurance beyond age 70.

### PARTICIPATION

PARTICIPATION: A "member" may choose to participate in this insurance plan by completing a "written request" for insurance. A "member" may also make a "written request" to cover "his" "scheduled co-driver, partner or helper". All "written requests" must be approved by "us" and in no event will coverage be effective until a "certificate" has been issued.

## SECTION III - INSURED PERSONS – COVERAGE PERIOD

### EFFECTIVE DATE OF COVERAGE

**Effective Date:** "We" will issue a "certificate" to the "member" indicating "his" effective date under the "coverage part" and in no event will coverage be effective until a "certificate" has been issued.

**Scheduled Co-Driver, Partner or Helper Coverage Period:** The period of coverage for a "scheduled co-driver, partner or helper" will be only for that period of time in which the "scheduled co-driver, partner or helper" is contracted by the "member" (provided the "member's" insurance is effective) for a specified job(s) and is physically working on behalf of and at the direction of the "member".

## SECTION IV - OTHER INDEMNIFICATION (Contract Liability) BENEFIT PROVISION

"We" will indemnify and defend an "insured person's" "contract carrier", subject to the terms and conditions of this benefit provision, in the event that "insured person" files a claim or lawsuit before any board, agency or court seeking Workers' Compensation benefits as an employee of "his" "contract carrier", in conflict with "member's" representation that such "insured person" is an "independent contractor". "We" have the right and duty to defend at "our" expense any claim, proceeding or suit against the "insured person's" "contract carrier" for claims payable by this insurance.

If the "insured person" is deemed to be entitled to Workers' Compensation benefits from "his" "contract carrier" by final order of any administrative or regulatory agency or court of competent jurisdiction, "we" will pay the "insured person" the benefits awarded on behalf of "his" "contract carrier". The maximum "we" will pay under this "coverage part" is five million dollars ($5,000,000) per claim.

### SECTION V - EXCLUSIONS

The following are excluded from coverage under this benefit provision:

1.  Any "injury" intentionally caused by the "insured person" and/or the "insured person's" "contract carrier".

2.  Claims for punitive or exemplary damages however described; except that if a lawsuit shall have been brought against the "insured person's" "contract carrier" with respect to a claim for acts or alleged acts falling within the coverage hereof, seeking both Workers' Compensation benefits and punitive or exemplary damages, then "we" will afford a defense to such action without liability, however, for such punitive or exemplary damages.

3.  Claims resulting from serious or willful misconduct by the "insured person" and/or the "insured person's" "contract carrier".

4.  Claims resulting from entering into any contractual relationship known by the "insured person" and/or "his" "contract carrier" to be in violation of law on or before the date of "accident".

5.  Penalties resulting from the failure to comply with any health or safety laws or regulations by the "insured person" and/or the "insured person's" "contract carrier".

6.  Damages in the event the "insured person's" "contract carrier's" Workers' Compensation policy or the "insured person's" self-insurance pays benefits or settles without prior authorization from "us"

7.  Any claim that is not directly related to an "occurrence" while an "insured person" is "on duty" and "under dispatch" to or performing services on behalf of that "insured person's" "contract carrier".

8.  Any claim for "injury" occurring outside the United States of America, its territories or possession, or Canada, unless the "insured person" is a citizen of the United States of America or Canada temporarily located elsewhere.

9.  Any claim not relating to an "occurrence" while the "insured person" is covered under this "coverage part".

10. Damages for which the "insured person's" "contract carrier" is liable to a third party by reason of a claim or suit against the "insured person's" "contract carrier" by that third party to recover damages claimed against such third party as a result of an "injury" to the "insured person".

11. Damages for care and loss of services.

12. Damages for consequential bodily "injury" to the "insured person's" "spouse", child, parent, brother or sister.

13. Damages claimed against the "insured person's" "contract carrier" in a capacity other than as employer.

14. Damages rising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination against the "insured person" or any personnel practices, policies acts or omissions.

15. Claims arising from or relating to the promulgation or enactment of any statute, regulation or rule, or the amendment of any existing statute, regulation or rule, the effect of which is to make the "insured person" an employee of "his" "contract carrier" for any purpose whatsoever.

16. Claims arising from or relating to any federal, state, local or other governmental entity's income, sales, withholding, unemployment or other taxes, and any interest or penalties related thereto.

17. Claims arising from or relating to any obligation imposed by an unemployment compensation or disability benefits law other than Workers' Compensation.

18. Claims arising from or related to any common law cause of action or labor law cause of action filed against the "insured person's" "contract carrier".

19. Claims arising from or related to war (declared or undeclared), or any act thereof.

20. Claims arising from (an) "act(s) of terrorism" if the "act(s) of terrorism" result(s) in industry-wide insured losses that exceed 25 million dollars for related incidents that occur within a 72 hour period or fifty or more persons sustain death or "serious physical injury" for related incidents that occur within a 72 hour period.

## SECTION VI - CONDITIONS

With respect to this "coverage part" the following conditions will apply:

For a "member":

A. The "member" must be "under contract" as of the date of the "occurrence" or the last day of last exposure to the condition causing the "insured person" "injury" and the "member" must provide "us" with a copy of the written contract upon request. The contract:

   1. must represent and warrant that neither the "member" nor any of "his" "scheduled co-drivers", "helpers" or "partners" is an employee of "his" "contract carrier"; and

   2. shall contain a provision whereby the "member" agrees to indemnify "his" "contract carrier" for any liability, damages, costs and expenses, including reasonable attorneys' fees, relating to a breach of "his" representations and warranties in the contract.

B. The "member" must:

   i. assume no obligation, make no payment and incur no expense with respect to any claim for benefits under the policy without "our" prior written consent;

   ii. immediately give "us" written notice of any claim made by an "insured person" against "his" "contract carrier" for Workers' Compensation benefits as soon as "member" learns of such claim and send "us" copies of any demand, notice, summons or other document received concerning such claim, and any related hearing or suit; and

   3. cooperate with "us" in the investigation, settlement or defense of such claim, and any related hearing or suit.

C. If the "member" has rights to recover all or part of any payment "we" have made under this policy, those rights are assigned to "us"; the "member" must do nothing after loss to impair them. At "our" request, the "member" will bring suit or transfer those rights to "us" and help "us" enforce them.

For a "member's" "scheduled co-driver, helper or partner":

A. The "member's" "scheduled co-driver, helper or partner" must be physically working as an "independent contractor" on behalf of and at the direction of a "member" who is insured under this "coverage part" as of the date of the "occurrence" or the last day of last exposure to the condition causing the "insured person" "injury"; and

B. "We" must have issued a "certificate" identifying that "member's" "scheduled co-driver, helper or partner" as covered under this "coverage part".

## SECTION VII - ADDITIONAL INSURED

The "member's" "contract carrier" shall be an additional insured under this Other Indemnification (Contract Liability) Benefit Provision only. The following conditions shall apply to the "contract carrier" as an additional insured:

A. the "contract carrier" must have a written contract in force with the "member" as of the date of the "occurrence" or the last day of last exposure to the condition causing the "insured person" "injury" and the "contract carrier" must provide "us" with a copy of that contract upon request. That contract:

   1. must represent and warrant that neither the "member" nor any of "his" "scheduled co-

drivers", "helpers" or "partners" is an employee of "his" "contract carrier"; and

2. shall contain a provision whereby the "member" agrees to indemnify "his" "contract carrier" for any liability, damages, costs and expenses, including reasonable attorneys' fees, relating to a breach of "his" representations and warranties in the contract.

B. The "contract carrier" must:

1. assume no obligation, make no payment and incur no expense with respect to any claim for benefits under the policy without "our" consent;

2. immediately send "us" copies of any demand or notice, summons or legal paper received concerning a claim, hearing or suit for which the "contract carrier" desires coverage under this policy;

3. cooperate with "us" in the investigation, settlement or defense of such claim, and any related hearing or suit; and

4. provide "us" with a copy of the written contract with an "insured person" upon request.

C. If the "contract carrier" has rights to recover all or part of any payment "we" have made under this benefit provision, those rights are assigned to "us"; The "contract carrier" must do nothing after loss to impair them. At "our" request, the "contract carrier" will bring suit or transfer those rights to "us" and help "us" enforce them.

## SECTION VIII – CLAIM ADMINISTRATION NONWAIVER

The following condition applies to any claim made by or on behalf of a "contract carrier" as an additional insured under this "coverage part":

None of the following acts by "us", our claim representatives, or claim administrators shall be deemed to constitute a waiver of any coverage provision, limitation, exclusion or condition of this "coverage part" and/or "certificate" or of any right or defense that "we" may have thereunder:

1. Acknowledgement of receipt of notice of loss or claim under this "coverage part";

2. Furnishing forms for reporting a loss or claim, for providing information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs, whether completed or uncompleted;

3. Investigating any loss or claim under this "coverage part" or engaging in negotiations regarding any such loss or claim;

4. Making payments to or on behalf of a "contract carrier" as an additional insured that exceeds the coverage or benefits provided by this "coverage part". Such "contract carrier" agrees to promptly reimburse "us" for any amounts we pay to or on behalf of that "contract carrier" which exceeds the coverage or benefits provided by this "coverage part".

---

013013 02/15          **TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.**          **Page 5 of 5**



POLICY NUMBER:

**COMMERCIAL AUTO**
**014081 06/09**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONTRACT DRIVER ENDORSEMENT

This endorsement modifies insurance provided under the following:

OTHER INDEMNIFICATION (CONTRACT LIABILITY) COVERAGE PART

The provisions of the Coverage Part apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

**SECTION I – DEFINITIONS** is revised as follows:

The following definitions are added:

**Contract Driver:** means a person on file with "us" who:

1. has been contracted by a "fleet owner" to drive a "vehicle" owned or leased by the "fleet owner";

2. is paid on a 1099 and not a W2;

3. is not an employee of the "fleet owner" or "his" "contract carrier"; and

4. coverage afforded to said person is evidenced by a "certificate".

**Fleet Owner:** means an "independent contractor" on file with "us" whose vehicle is driven by a "contract driver" who is a "certificate" holder under this "coverage part".

The following definitions replace definitions previously included for these terms:

**Injury:** means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly and independently of all other causes which:

1. occurs while the "insured person" is covered under this "coverage part"; and

2. arises solely out of and in the course of "his" regular occupation while "under dispatch" and on duty for the "contract carrier" named on "his" "certificate".

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

**Insured Person:** means an "independent contractor" who is a "member" of the "association" to whom this Group Vehicle Master Policy is issued, who is at least age 18 and less than age 70, and who is a "certificate" holder under this "coverage part". An "insured person" may also include an "independent contractor's" "scheduled co-driver, partner or helper" or "contract driver" who is at least age 18 and less than age 70, as evidenced by a "certificate".

**Under Contract:**

For a "member" who is not a "contract driver" means actively working at least 30 hours each week performing the substantial and material duties of "his" regular occupation as specified in his written "independent contractor" or owner/operator contract with "his" "contract carrier".

For a "member" who is a "contract driver" means actively working at least 30 hours each week performing the substantial and material duties of "his" regular occupation working on behalf of and at the direction of a "fleet owner".

For a "member's" "scheduled co-driver, helper or partner" means physically working on behalf of and at the direction of that "member".

**SECTION IV – OTHER INDEMNIFICATION (Contract Liability) BENEFIT PROVISION** is hereby amended by the addition of the following at the end of that section:

When the "insured person" is a "contract driver", all references to "contract carrier" shall include the "contract carrier" and/or "fleet owner".

**SECTION V – EXCLUSIONS** is hereby amended by the addition of the following at the end of that section:

When the "insured person" is a "contract driver", all references to "contract carrier" shall include the "contract carrier" and/or "fleet owner".

**SECTION VI – CONDITIONS,** under *For a "member"* :, is hereby amended by the addition of the following:

D. Condition A. shall not apply to a "member" who is a "contract driver".

**SECTION VII – ADDITIONAL INSURED** is hereby amended by the addition of the following:

D. When the "insured person" is a "contract driver", all references to "contract carrier" shall include the "contract carrier" and/or "fleet owner". However, condition A. of this section shall not apply to a "fleet owner".

 **TRANSGUARD** INSURANCE COMPANY OF AMERICA, INC.

POLICY NUMBER:

COMMERCIAL AUTO
014075 05/08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SENIOR PLAN ENDORSEMENT

This endorsement modifies insurance provided under the following while insuring "members" eligible for Senior Plan coverage :

> MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT COVERAGE PART
> MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT EXTENDED COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Part apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

Attachment of this endorsement to the policy creates the Senior Plan with the following Senior Plan revisions to the Coverage Part:

A. All references to "70" or "70ᵗʰ" are hereby replaced by "75" or "75ᵗʰ", respectively.  And, all references to "18" or "18ᵗʰ" are hereby replaced by "69" or "69ᵗʰ", respectively.

B. The Accidental Death And Dismemberment Benefits Provision, the Paralysis Benefit Provision and the Continuous Total Disability Benefit Provision of **SECTION V – BENEFIT PROVISIONS** do not apply when coverage is provided under the Senior Plan and no benefits will be payable under those benefit provisions.

C. **SECTION I - DEFINITIONS** is hereby amended to:

1. Include the following definition:

**Age:** means the "insured person's" age as of "his" last birthday.

2. Revise the definition of "Insured Person" to read as follows:

**Insured Person:** means an "independent contractor" who is a "member" of the "association" to whom this Group Vehicle Master Policy is issued, who is at least age 69 and less than age "75", and who is a "certificate" holder under this "coverage part".

D. Part II of **SECTION II – ELIGIBILITY AND PARTICIPATION** does not apply to the Senior Plan and participation in the Senior Plan is limited to "members".

No other revisions are intended or implied. None of the Coverage Part revisions described above apply to "members" insured under that Coverage Part who are not eligible for Senior Plan coverage.



015022 05/08

## TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

### GROUP VEHICLE MASTER POLICY
### MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT
### COVERAGE PART

### SENIOR PLAN

### SCHEDULE OF BENEFITS

|  | Plan SR |
|---|---|
| Combined Single Limit: | $300,000 |
| **Temporary Total Disability Benefit** | |
| Waiting Period: | 7 days |
| Maximum Benefit Period: | 52 weeks |
| Maximum Weekly Benefit: | $250 |
| Net Earnings Percentage | 25% |
| **Accident Medical & Dental Expense Benefit** | |
| Medical Accumulation Period: | 52 weeks |
| Maximum Medical Benefit: | $300,000 |
| Maximum Dental Benefit: | $1,000 |


**TRANSGUARD**
INSURANCE COMPANY OF AMERICA, INC.

POLICY NUMBER:

**COMMERCIAL AUTO**
014077  02/15

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BROADENED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT COVERAGE PART
MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT EXTENDED COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: |
| Endorsement Effective Date: |

| Countersignature Of Authorized Representative |
| Name: |
| Title: |
| Signature: |
| Date: |

Attachment of this endorsement to the policy revises the definition of "Injury" included in **SECTION I – DEFINITIONS** to read as follows:

**Injury:** means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly, solely and independent of all other causes which:

1. occurs while the "insured person" is covered under this "coverage part"; and

2. arises solely out of and in the course of "his" regular occupation while "under dispatch" and "on duty" and "under contract" with the "contract carrier" named on "his" "certificate", or when the "insured person" is off duty but is in a "vehicle" that is "under dispatch" and being driven by another "insured person" who is "on duty" at the time of the "accident".

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

No other revision is intended or implied.



013010 04/07

NOTICE -
THIS IS NOT A WORKERS' COMPENSATION POLICY
AND IS NEITHER GOVERNED BY OR SUBJECT TO THE
ILLINOIS WORKERS' COMPENSATION ACT, 820 ILCS 305/1 et seq.

# GROUP VEHICLE MASTER POLICY
# MEDICAL PAYMENTS-OCCUPATIONAL COMPENSATION COVERAGE PART

## SECTION I - DEFINITIONS

The following definitions apply to all insurance provided by this "coverage part".

A. **Association:** means the National Association of Independent Truckers.

B. **Bodily Injury by Accident:** means physical injury as a result of an occurrence or traumatic event which is external and/or violent, caused by physical force which is unusual, unexpected or unforeseen and which precedes the bodily injury. "Bodily injury by accident" does not include intentional self-inflicted injuries or injuries which are a natural and foreseeable result of a voluntary act nor does it include any bodily injury which is solely the result of bodily infirmities or disease.

C. **Casual Laborer:** means a helper who is paid by the "insured person" to provide loading and unloading services for work necessary or incidental to the "insured person's" contract with "his" "contract carrier". A "casual laborer" is not a person who is eligible for payment under any workers' compensation or any other such law. "Co-contractors" or guests who are traveling with the "insured person" are not "casual laborers". No definition of a casual laborer included in any workers' compensation act will apply to or affect this "coverage part."

D. **Certificate:** means a certificate of insurance or evidence of coverage issued by "us" setting forth a statement as to the insurance protection to which the "insured person" is entitled.

E. **Co-Contractor:** means an "independent contractor" who is contracted to the same "contract carrier" as the "insured person".

F. **Contract Carrier:** means the motor carrier identified on the "insured person's" "certificate".

G. **Coverage Part:** means this MEDICAL PAYMENTS – OCCUPATIONAL COMPENSATION COVERAGE PART.

H. **Cumulative Injury:** means an injury not caused by a single event but arising from repeated or recurring events and/or trauma which comes on gradually and occurs only by reason of the effect of successive events or trauma.

I. **He, His or Him:** means she, hers or her respectively when referring to a female.

J. **Independent Contractor:** means an individual who is the primary or sole operator and owner of a single "vehicle" or sole operator of a single "vehicle" leased under a bona fide equipment lease, whose application has been accepted by "us", and for whom a "certificate" under this "coverage part" has been issued.

An "independent contractor":

1. is not an employee and nothing contained in any written agreement, nor the actual services rendered, shall be deemed to create employment, an agency, joint venture, partnership or any legal relationship that contradicts that of an "independent contractor";

2. is not a person otherwise eligible for coverage under any workers' compensation or any such similar law;

3. is an individual and does not have state or federal payroll taxes withheld from "his" compensation; and

4. does not regularly contract for services with more than three (3) "casual laborers" at any time.

K. **Insured Person:** means an "independent contractor" who is a "member" of the "Association" to whom this Group Vehicle Master Policy is issued and who is a "certificate" holder under this "coverage part".

L. **Member:** means a person who is a "member" in good standing of the "Association".

M. **Vehicle:** means a truck, truck-tractor, trailer, semi-trailer or van used exclusively in "your" business, but does not include mobile equipment or a "vehicle" that is a private passenger or recreational "vehicle".

N. **We, Us, or Our:** means TRANSGUARD INSURANCE COMPANY OF AMERICA, INC. or its authorized representatives.

O. **You and Your:** means the "insured person".

## SECTION II - OCCUPATIONAL COMPENSATION INSURANCE

A. **How This Insurance Applies To "Casual Laborers"**

This insurance applies to "bodily injury by accident" which occurs while the "casual laborer" is performing loading and unloading services at the direction of an "insured person", including incidental travel in the "insured person's" "vehicle" related to performing of loading and unloading services. "Bodily injury by accident" includes resulting death.

1. A "casual laborer" is not an "insured person" under this "coverage part" and is entitled to benefits only in accordance with the terms herein.

2. The "bodily injury by accident" must be sustained by a "casual laborer" while in the service of an "insured person" who is under contract to, on duty with, and under dispatch by a "contract carrier", and in the course of work necessary or incidental to the contract with the "contract carrier".

3. The "bodily injury by accident" must occur in the United States of America to a "casual laborer" who resides in the United States of America.

4. "Bodily injury by accident" must occur during the coverage period reflected on the "insured person's" "certificate".

B. **"We" Will Pay For A Covered "Bodily Injury By Accident"**

If a "casual laborer" incurs a "bodily injury by accident", "we" will pay benefits equal to the benefits that would be provided under the workers' compensation laws in the "casual laborer's" state of residence at the time of the "bodily injury by accident" as if "he" were entitled to workers compensation benefits, subject to the terms, conditions and limitations of this "coverage part". This "coverage part" is not subject to the administrative rules of any workers' compensation statute, excepting that portion of such administrative rules governing the determination of average weekly wage.

1. Choice of physician – The "casual laborer" will be entitled to choose his initial attending physician. Reasonable, related and necessary treatment of a "bodily injury by accident" provided by the attending physician or a referral from that physician will be covered. The "casual laborer" will be entitled to no more than one change in attending physician.

2. Average weekly wage – Average weekly wage will be determined using the procedures accepted under the workers' compensation laws in the "casual laborer's" state of residence at the time of the "bodily injury by accident". This average weekly wage will be the basis used to calculate any wage loss benefits including temporary total disability, temporary partial disability, permanent partial disability, permanent total disability and death benefits. All benefits will be subject to the maximums of the "casual laborer's" state of residence.

3. Permanency rating – In the event a "casual laborer" has a "bodily injury by accident" that would entitle "him" to permanency benefits under the workers compensation laws of "his" state of residence, he will be entitled to one evaluation from his attending physician. "We" reserve the right to have the "casual laborer" examined and "his" medical records reviewed by a physician of "our" choice for a second opinion at "our" expense. If there is a conflict of opinion, "we" will obtain a third opinion from a physician acceptable to the "casual laborer" and "us". The opinion of that physician will be binding on the "casual laborer" and "us" and will represent the final determination of the "casual laborer's" permanency rating. Any payment or settlement based on that permanency rating will be based on the calculations considered as accepted procedures in the causal laborer's state of residence.

4. Settlements – Any settlement agreement reached as a result of the coverage under this "coverage part" will be full and final.

C. **Exclusions**

The insurance afforded by **SECTION II** of this "coverage part" does not apply to:

1. Any obligation imposed by a workers' compensation or occupational disease law or any similar law;

2. Any claim made under a workers' compensation or occupational disease law or any similar law;

3. Any claim made by a "casual laborer" whose state of residence is in North Dakota, Ohio, Washington, West Virginia or Wyoming;

4. Any claim made in the states of North Dakota, Ohio, Washington, West Virginia or Wyoming;

5. "Bodily injury by accident" intentionally caused or aggravated by any person insured or entitled to benefits under this "coverage part";

6. "Bodily injury by accident" sustained in work subject to the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. 901 - 950) or any amendment thereto or any act ancillary thereto;

7. "Bodily injury by accident" to a master or member of the crew of any vessel;

8. "Bodily injury by accident" sustained by employees of the following:  the "contract carrier", any "insured person", any "independent contractor", or a "casual laborer";

9. Any claim made more than two (2) years after the date of the accident which caused the "bodily injury by accident";

10. Punitive or exemplary damages however described;

11. "Cumulative injury", unless "we" receive satisfactory proof that the work the "casual laborer" performed on behalf of the "insured person" was the proximate cause of the "cumulative injury";

12. "Bodily injury by accident" as a result of radioactive contamination;

13. "Bodily injury by accident" proximately caused by being under the influence of alcohol. A "casual laborer" will be conclusively presumed to be under the influence of alcohol if the level of alcohol in "his" blood equals or exceeds the amount when a person is presumed, under the law of the locale in which the injury is sustained (or in the absence of such law, the level indicated by the State of Illinois), to be under the influence of alcohol or intoxicating liquor if operating a motor vehicle, regardless of whether "he" is in fact operating a motor vehicle when the injury or loss occurs;

14. "Bodily injury by accident" proximately caused by being under the influence of drugs or narcotics unless prescribed by a doctor for a medical condition other than drug addiction and taken in accordance with the recommended dosage and following all applicable warnings, including but not limited to restrictions on operating machinery while taking the medication;

15. The death or disability of a "casual laborer" when caused, continued or aggravated by:

   a. a "casual laborer's" unreasonable refusal to submit to medical or surgical treatment,

if the risk of the treatment is (based upon expert medical or surgical advice) small in view of the seriousness of the injury; or

   b. a "casual laborer's" unreasonable or continued refusal or failure to submit to a medically prescribed course of treatment;

16. "Bodily injury by accident" while loading, unloading, operating or occupying owned or non-owned aircraft; or

17. "Bodily injury by accident" arising out of a circumstance that would give rise to an affirmative defense under the workers' compensation law of the state of competent jurisdiction over the claim.

## D. Before "We" Pay

Before "we" begin to pay or continue to pay benefits to a person entitled to them, that person or their authorized representative must:

1. Give the "insured person" immediate notice of the "bodily injury by accident";

2. Cooperate with "us" and do everything necessary to enable "us" to pursue "our" right of recovery for benefits paid or payable against any third party responsible for a "casual laborer's" "bodily injury by accident";

3. Allow a physical examination or autopsy while a claim is pending or ongoing. "We" have the right at "our" expense to have a person whose injury is the basis of a claim examined by a physician when and as often as "we" feel is necessary, and allow an autopsy to be made in case of death where it is not forbidden by law;

4. Periodically provide "us" satisfactory proof of disability at "our" request during the pendency of a claim for loss of time benefits, including but not limited to proof of temporary total disability or temporary partial disability; and,

5. Periodically provide "us" satisfactory proof at "our" request that the spouse and/or dependent child(ren) would be eligible for such benefits according to the workers' compensation laws of the "casual laborer's" state of residence in the event a claim is made for death benefits.

If the person otherwise entitled to the benefits of this insurance fails to do any of those things enumerated above, "our" duty to pay ends at once.

## E. Recovery From Others

If third persons are responsible for the "bodily injury by accident" for which benefits are paid by "us", the "casual laborer" may pursue "his" remedies against such persons, and "we" will continue payment of benefits subject to the following terms and conditions:

**1.  Lien**

"We" shall have a lien on the amounts collected by a "casual laborer" from such persons and their insurers to the extent of all benefits paid or payable to a "casual laborer" under this "coverage part". The amount collected by a "casual laborer" to which "our" lien shall attach shall be the "casual laborer's" total recovery, however obtained and whether or not such recovery is described as payment for loss for which benefits were paid under this "coverage part", less the reasonable and necessary expenses including attorneys fees actually expended in securing the recovery. The recovery amount subject to our lien is hereafter referred to as the "Net Recovery". "We" shall also be entitled to "our" pro-rata share of any interest collected on the recovery.

**2.  Payment To "Us"**

The lien created and a "casual laborer's" obligation under that lien to reimburse "us" for benefits paid shall be discharged upon "our" receipt of the "casual laborer's" Net Recovery to the extent of benefits paid plus "our" pro-rata share of any interest collected. The remaining balance of the Net Recovery, if any, shall be paid to the "casual laborer" but shall serve as a credit in satisfaction of any future or ongoing benefit claims arising out of this "bodily injury by accident". "We" shall suspend payment of additional benefits until such time as benefits suspended are equal to the credit. "Our" lien and credit apply to the entire Net Recovery even if the recovery includes damages not covered by this "coverage part", such as pain and suffering and loss of consortium.

**3.  Compromise**

Any settlement of a "casual laborer's" claim against a third party that would result in a Net Recovery that is less than the benefits paid and reasonably expected to be paid in the future shall only be made with "our" prior written approval.

**4.  Subrogation**

"We" shall be subrogated to any right of recovery the "casual laborer" may have against others to the extent of "our" benefits paid and payable and "we" may, upon 30 days prior written notice to the "casual laborer", commence "our" own action under this right of subrogation. In such event, the recovery will be paid in the same manner as a recovery by the "casual laborer".

**F.  Recovery Under Statutory Law**

If a person otherwise entitled to the benefits of this insurance becomes, or claims to be, eligible for benefits under a workers' compensation or occupational disease law or similar law, no amounts will be paid under this insurance. If such person receives any benefits under any such law, that person must reimburse "us", to the extent of such benefits, for any benefits "we" paid. THIS COVERAGE PART DOES NOT PROVIDE STATUTORY WORKERS' COMPENSATION COVERAGE.

**SECTION III - EXTENDED LIABILITY INSURANCE**

**A.  Coverage**

"We" will pay on behalf of the "insured person" all sums which the "insured person" shall become legally obligated to pay as damages to a "casual laborer" because of "bodily injury by accident" to which this insurance applies; provided, however:

1.  The "bodily injury by accident" must be sustained by a "casual laborer" while in the service of an "insured person" who is under contract to, on duty with, and under dispatch by a "contract carrier", and in the course of work necessary or incidental to the contract with the "contract carrier";

2.  "Bodily injury by accident" must occur during the coverage period reflected on the "certificate";

3.  Any suit or related legal actions for damages for "bodily injury by accident" must be brought in the United States of America; and

4.  The "bodily injury by accident" must occur while the "casual laborer" is performing loading and unloading services at the direction of an "insured person", including incidental travel in the "insured person's" "vehicle" related to performing of loading and unloading services. "Bodily injury by accident" includes resulting death.

"We" shall have the right and duty to defend any suit against the "insured person" seeking damages on account of such "bodily injury by accident", even if any of the allegations of the suit are groundless, false or fraudulent, and "we" may make such investigation and settlement of any claim or suit as "we" deem expedient, but "we" shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of insurance has been exhausted by payment of judgments or settlements.

## B. Exclusions

This insurance does not cover:

1. Liability assumed under a contract;

2. Punitive or exemplary damages however described; except that if a suit shall have been brought against the "insured person" with respect to a claim for acts or alleged acts falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages, then "we" will afford a defense to such action without liability, however for such punitive or exemplary damages;

3. "Bodily injury by accident" to a "casual laborer" while engaged in violation of law with the actual knowledge of the "insured person";

4. Any obligation imposed by a workers' compensation, occupational disease, unemployment compensation or disability benefits law, or any similar law;

5. "Bodily injury by accident" intentionally caused or aggravated by the "casual laborer" or "insured person";

6. "Bodily injury by accident" occurring outside the United States of America;

7. Damages to any "casual laborer" arising out of the discharge, coercion of or discrimination against said employee in violation of law;

8. "Bodily injury by accident" due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

9. "Bodily injury by accident" arising out of the discharge, dispersal, release or escape of smoke (other than smoke from a hostile fire), vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental; or

10. "Bodily injury by accident" for which benefits are eligible under SECTION II of this "coverage part".

## C. "We" Will Also Pay

"We" will pay these costs, subject to the limit stated on the "certificate":

1. Reasonable expenses incurred at "our" request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of "our" liability under this insurance;

3. Litigation costs taxed against the "insured person" with respect to "bodily injury by accident" covered under SECTION III of this "coverage part"; and

4. Expenses "we" incur.

## D. Other Insurance

"We" will not pay more than "our" share of damages and costs covered by SECTION III of this "coverage part" and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

## E. Limit Of Insurance

"Our" liability to pay for damages is limited. "Our" limit of insurance is shown on the "certificate". It applies as explained below:

1. "Bodily injury by accident". The limit shown for "bodily injury by accident" (each accident) is the most "we" will pay for all damages covered by SECTION III of this "coverage part" because of "bodily injury by accident" to one or more "casual laborers" in any one accident.

   A disease (including infection) is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

2. "We" will not pay any claim for damages after "we" have paid the applicable limit of liability under this insurance.

## F. Recovery From Others

"We" have the "insured person's" rights to recover "our" payment from anyone liable for an injury covered by SECTION III of this "coverage part". The "insured person" will do everything necessary to protect those rights for "us" and to help "us" enforce such rights.

## G. Actions Against "Us"

There will be no right of action against "us" under SECTION III of this "coverage part" unless:

1. The "insured person" has complied with all the terms of this policy; and

2. The amount the "insured person" owes has been determined with "our" consent or by actual trial and final judgment.

This insurance does not give anyone the right to add "us" as a defendant in an action against the "insured person" to determine its liability.

## SECTION IV – OTHER INDEMNIFICATION

In the event a "casual laborer" elects to pursue recovery for bodily injury, to which this insurance would otherwise be applicable, as a statutory workers' compensation claim, "we" will defend and indemnify the "contract carrier" and the "insured person", but only if such "contract carrier" is lawfully insured or self-insured under workers' compensation or other such similar law, statute or regulation, for any amounts that would otherwise have been payable under this policy.

## SECTION V - "YOUR" DUTIES IF INJURY OCCURS

Tell "us" at once if injury occurs to a "casual laborer" that may be covered by this policy. "Your" other duties are listed here:

1. Provide for immediate medical services required;

2. Give "us" the names and addresses of the injured person and of witnesses, and other information "we" may need;

3. Promptly give "us" all notices, demands, documents and legal papers related to the injury, claim, proceeding or suit;

4. Cooperate with "us" and assist "us", as "we" may request, in the investigation, settlement or defense of any claim, proceeding or suit;

5. Do nothing after an injury occurs that would interfere with "our" right to recover from others;

6. Do not voluntarily make payments, assume obligations or incur expenses, except at "your" own cost;

7. Upon "our" request, attend hearings and trials, secure and give evidence and assist in obtaining the attendance of witnesses; and

8. As often as may be reasonably required, submit to examination under oath by any person named by "us". No such examination under oath may be considered a waiver of any defense which "we" might otherwise have with respect to any claim, but all such examinations will be considered to have been made or done without prejudice to "our" liability.

If the "insured person" fails to do any of those things enumerated above, "our" duty to pay ends at once.

## SECTION VI - CONDITIONS

### A. Premium

"You" will pay all premiums when due.

### B. Transfer Of "Your" Rights And Duties

"Your" rights and duties under this "coverage part" may not be transferred without "our" written consent.

If "you" die and "we" receive notice within thirty days after "your" death, "we" will cover "your" legal representative as an "insured person", but only with respect to SECTION III - EXTENDED LIABILITY INSURANCE.

### C. Sole Representative

The named insured in Item 1 of the Declaration Page will act on behalf of all "insured persons" to change this policy and give or receive notice of cancellation.

### D. Dispute Resolution

In the event of a dispute between a person claiming benefits under this "coverage part" and "us" about whether that person is entitled to those benefits, either party may make a written demand for arbitration. In this event, within sixty (60) days of making the demand, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within thirty (30) days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally. If a person claiming benefits fails to name an arbitrator within sixty (60) days of the demand, the demand for arbitration will be null and void. If "we" fail to name an arbitrator within sixty (60) days of the demand, the person claiming benefits is not bound by this provision.

Unless both parties agree otherwise, arbitration will take place in the county in which the "casual laborer" lived at the time of injury. The arbitration panel shall abide by the rules of law, for both arbitration and evidence, of the state in which the arbitration is being held.

Within sixty (60) days of the selection of this third arbitrator, or upon an extension thereof as agreed by a majority of the arbitrators, the arbitrators shall reach a majority decision, in writing, which shall be binding upon the parties thereto.



POLICY NUMBER:

COMMERCIAL AUTO
014076  05/08

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BROADENED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

MEDICAL PAYMENTS – OCCUPATIONAL COMPENSATION COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:   National Association of Independent Truckers, LLC** |
| **Endorsement Effective Date:** |

| **Countersignature Of Authorized Representative** |
|---|
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

Attachment of this endorsement to the policy revises exclusion number 4. of subsection **C. Exclusions** of **SECTION II** of the **Medical Payments - Occupational Compensation Coverage Part** to read as follows:

4.   Any claim made in the states of North Dakota, Ohio, Washington or Wyoming;

No other revision is intended or implied.

In witness whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

091001 (07/03)

# EXHIBIT 2



019102 (07/16)

# IMPORTANT NOTICE TO POLICYHOLDERS
## ILLINOIS

In the event you need to contact someone about this policy, please contact your agent.  If you have additional questions you may contact the insurance company issuing this policy as shown below.

| TRANSGUARD INSURANCE COMPANY OF AMERICA, INC. | | |
|---|---|---|
| **Claims Questions** | **Policy Questions** | **All Other Inquiries** |
| **P. O. Box 2148** **Warrenville, IL 60555-9936** **800-474-2526** claims.reporting@transguard.com | **P.O. Box 901606** **Kansas City, MO 64190-1555** **800-821-8014** | **215 Shuman Blvd., #400** **Naperville, IL 60563** **800-323-8560** transguard.compliance@transguard.com |

Written correspondence is preferable so that a record of your inquiry is maintained.  When contacting your agent or the company, please have your policy number available.

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that you can contact the **ILLINOIS DEPARTMENT OF INSURANCE**, a state agency which enforces Illinois' insurance laws, if you have any comments, questions, concerns, or complaints.

## ILLINOIS DEPARTMENT OF INSURANCE
### Consumer Division
### www.insurance.illinois.gov

122 S. Michigan Ave., 19th Floor     or     320 West Washington Street
Chicago, IL 60603                              Springfield, IL 62767
Phone: 312-814-2420                          Phone: 217-782-4515

POLICY NUMBER: TGM300007B-32638

IL 12 04 12 98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ILLINOIS POLICY CHANGES

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

Effective Date of Change:    06/01/2018
Change Endorsement No.:   2
Named Insured:                 National Association of Independent Truckers, LLC

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Insured's Mailing Address |
| ☐ | Policy Number | ☐ | Company |
| ☐ | Effective/Expiration Date | ☐ | Insured's Legal Status/Business of Insured |
| ☐ | Payment Plan | ☐ | Premium Determination |
| ☐ | Additional Interested Parties | X | Coverage Forms and Endorsements |
| ☐ | Limits/Exposures | ☐ | Deductibles |
| ☐ | Covered Property/Located Description | ☐ | Classification/Class Codes |
| ☐ | Rates | ☐ | Underlying Insurance |

is (are) changed to read {See Additional Page(s)}:

The above amendments result in a change in the premium as follows:

| X | NO CHANGES | ☐ | TO BE ADJUSTED AT AUDIT | ADDITIONAL PREMIUM | RETURN PREMIUM |
|---|---|---|---|---|---|
| | | | | $ | $ |
| Countersigned By: | | | | | ☐ |

(Authorized Agent)

Copyright, Insurance Services Office, Inc.,  1998

## POLICY CHANGES ENDORSEMENT DESCRIPTION

The policy is hereby amended to include:

Extended Senior Plan Endorsement for Occupational Accident Extended Coverage Part, 014084 04/10, which modifies the age limit for coverage from 75 to 77 as referenced in the endorsement.

The Schedule of Forms and Endorsements 094003 06/04 is amended to include:

014084 04/10  Extended Senior Plan Endorsement; and
015025 04/10  Extended Senior Plan Schedule of Benefits, Plan SR.

015025 04/10



## TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

### GROUP VEHICLE MASTER POLICY
### MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT
### EXTENDED COVERAGE PART

### EXTENDED SENIOR PLAN

### SCHEDULE OF BENEFITS

|  | Plan SR |
|---|---|
| Combined Single Limit: | $300,000 |
| **Temporary Total Disability Benefit** | |
| Waiting Period: | 7 days |
| Maximum Benefit Period: | 52 weeks |
| Maximum Weekly Benefit: | $250 |
| Net Earnings Percentage | 25% |
| **Accident Medical & Dental Expense Benefit** | |
| Medical Accumulation Period: | 52 weeks |
| Maximum Medical Benefit: | $300,000 |
| Maximum Dental Benefit: | $1,000 |

**POLICY NUMBER: TGM300007B-32638**

IL 12 04 12 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS POLICY CHANGES

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

Effective Date of Change:   06/01/2018
Change Endorsement No.:  1
Named Insured:              National Association of Independent Truckers, LLC

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Insured's Mailing Address |
| ☐ | Policy Number | ☐ | Company |
| ☐ | Effective/Expiration Date | ☐ | Insured's Legal Status/Business of Insured |
| ☐ | Payment Plan | ☐ | Premium Determination |
| ☐ | Additional Interested Parties | X | Coverage Forms and Endorsements |
| ☐ | Limits/Exposures | ☐ | Deductibles |
| ☐ | Covered Property/Located Description | ☐ | Classification/Class Codes |
| ☐ | Rates | ☐ | Underlying Insurance |

is (are) changed to read {**See Additional Page(s)**}:

The above amendments result in a change in the premium as follows:

| X | **NO CHANGES** | ☐ | **TO BE ADJUSTED AT AUDIT** | **ADDITIONAL PREMIUM** | **RETURN PREMIUM** |
|---|---|---|---|---|---|
| | | | | $ | $ |

Countersigned By:  _ɔ ~ P5_
(Authorized Agent)

IL 12 04 12 98                 Copyright, Insurance Services Office, Inc.,  1998                 Page 1 of 2

## POLICY CHANGES ENDORSEMENT DESCRIPTION

The policy is hereby amended as follows:

Truckers – Insurance for Non-Trucking Use is being deleted and replaced with Truckers - Extended Insurance for Non-Trucking Use Coverage Endorsement.

The Schedule of Forms and Endorsements 094003 06/04 is amended as follows:

014067 07/06 Truckers – Insurance for Non-Trucking Use endorsement is hereby deleted in its entirety and replaced with;

014109 12/17 Truckers – Extended Insurance for Non-Trucking Use endorsement.



POLICY NUMBER:

COMMERCIAL AUTO
014109 12/17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TRUCKERS – EXTENDED INSURANCE FOR NON-TRUCKING USE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

**SCHEDULE**

| |
|---|
| **Description of Covered "Auto"** |
| |

(If no entry appears above, information to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**LIABILITY COVERAGE** for a covered "auto" described in the **Schedule** above is changed as follows:

**A. SECTION II – LIABILITY COVERAGE, Paragraph B. Exclusions** is modified to include the following exclusions:

This insurance does not apply to:

**1.** A covered "auto" while used:

**(a)** To carry, tow or transport property in any business;

**014109 12/17    TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.    Page 1 of 2**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **(b)**  In the business of any person or organization to whom the "auto" is leased, rented or loaned; or

    **(c)**  In the course of any activities that ultimately benefit the person or organization to whom the "auto" is leased, rented or loaned.

    But **Paragraphs (b)** and **(c)** above do not apply to a covered "auto" to which New York law applies, unless your agreement with the person or organization to whom the "auto" is leased, rented or loaned requires that person or organization to provide primary insurance for liability arising out of such person's or organization's use of the "auto".

  **2.**  A covered "auto" that is a power unit while:

    **(a)**  Used to carry, tow or transport a "trailer"; or

    **(b)**  In the process of having a "trailer" attached to or detached from it;

    unless such "trailer" is owned by you and specifically described in the **Schedule** above.

**B.**  However, the exclusions in **Paragraph A.** above do not apply to a covered "auto":

  **1.**  To which New York law applies, unless there is other valid and collectible liability insurance applicable to the covered "auto", which meets the minimum limits specified by New York's compulsory or financial responsibility laws or the minimum limits specified by New York law governing motor carriers of passengers or property, whichever is applicable;

  **2.**  While the covered "auto" is travelling from the place where it is "principally garaged" to a service facility, for the purpose of having maintenance or repairs performed on it; or

  **3.**  While the "covered auto" is travelling from the service facility at which it had maintenance or repairs performed on it, back to the place where it is "principally garaged".

**C.**  **SECTION II – LIABILITY COVERAGE, Paragraph A. Coverage, 1. Who Is An Insured** does not include anyone engaged in the business of carrying, towing or transporting property by "auto" for hire who is liable for your conduct.

**D.**  For purposes of this endorsement, the following definition is added:

  **1.**  **"Principally garaged"** means the regular domicile of the covered "auto" in the physical location where it is routinely parked or stored when not in use.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# YOUR

# COMMERCIAL POLICY

# ISSUED BY



**A Stock Company**

**Address:**

215 Shuman Boulevard, Suite 400
Naperville, IL 60563
(800) 323-8560

**A Member of:**



IN WITNESS WHEREOF, the Company has caused the facsimile signatures of its President and Secretary to be affixed hereto, and caused this policy to be signed on the Declarations Page by an authorized representative of the Company.

Secretary

President

CO 00 01 06 15

 **TRANSGUARD** INSURANCE COMPANY OF AMERICA, INC.

**POLICY NO.  TGM300007B-32638**

# GROUP VEHICLE MASTER POLICY
## DECLARATIONS

**Item 1.**  **NAMED INSURED:**  **PRODUCER:**

National Association of Independent Truckers, LLC
215 Shuman Blvd, Suite 400
Naperville, IL  60563

TransGuard General Agency, Inc.
215 Shuman Blvd, Suite 400
Naperville, IL  60563

**Item 2.**  **POLICY PERIOD:**  From:  06/01/2016  To:  continuous until cancelled.
at 12:01 A.M. Standard Time at your mailing address shown above.

**Item 3.**  The insurance afforded is only with respect to the Coverage Parts for which a premium is shown below <u>AND</u> a Certificate indicating such coverage has been issued.

| BASIC VEHICLE POLICY | | | |
|---|---|---|---|
| **LIABILITY INSURANCE COVERAGE PART** | | | |
| **PREMIUMS** | **LIMITS OF INSURANCE** | **COVERAGES** | **DEDUCTIBLES** |
| Liability Included | Per Certificate | See Certificate | See Certificate |
| **PHYSICAL DAMAGE INSURANCE COVERAGE PART** | | | |
| **PREMIUMS** | **LIMITS OF INSURANCE** | **COVERAGES** | **DEDUCTIBLES** |
| Comprehensive Included | Actual Cash Value/Stated Value or Cost of Repair, whichever is less. | See Certificate | See Certificate |
| Collision Included | Actual Cash Value/Stated Value or Cost of Repair, whichever is less. | See Certificate | See Certificate |
| **UNINSURED AND UNDERINSURED MOTORISTS INSURANCE** | | | |
| **PREMIUMS** | **LIMITS OF INSURANCE** | **COVERAGES** | **DEDUCTIBLES** |
| Included | $25,000 per person $50,000 per occurrence | See Endorsement | N/A |
| **MEDICAL PAYMENTS COVERAGE PART** | | | |
| **PREMIUMS** | **BENEFITS** | **COVERAGES** | **DEDUCTIBLES** |
| Included | Occupational Accident Extended | See Certificate | See Certificate |
| Included | Occupational Accident | See Certificate | See Certificate |
| | | | |

**FORMS AND ENDORSEMENTS**
Form(s) and Endorsement(s) made a part of this policy at time of issue:

See Schedule of Forms and Endorsements (094003)

**DESCRIPTION OF OWNED VEHICLES:**     Symbol 7:  Specifically Described Autos - As Per Certificates

**COUNTERSIGNED BY:** _____
Authorized Representative

 **TRANSGUARD**
INSURANCE COMPANY OF AMERICA, INC.

**Policy Number: TGM300007B-32638**

# SCHEDULE OF FORMS AND ENDORSEMENTS

| Named Insured | National Association of Independent Truckers, LLC. | Effective Date: | 06/01/2016 |
|---|---|---|---|
| | | | 12:01 A.M. Standard Time |
| Agent Name | Transguard General Agency Inc. | Agent No. | |

| | | |
|---|---|---|
| 019102 | 04/11 | Important Notice to Policyholders |
| CO 00 01 | 06 15 | Policy Jacket |
| 012009 | 08/06 | Declarations page |
| 094003 | 06/04 | Schedule of Forms and Endorsements |
| 013007 | 04/02 | Group Vehicle Master Policy Agreement |
| 014093 | 03/13 | Nonrenewal Provision Endorsement |
| IL 00 03 | 04 98 | Calculation of Premium |
| IL 00 21 | 04 98 | Nuclear Energy Liability Exclusion Endorsement |
| CA 00 01 | 03 10 | Business Auto Coverage Form |
| CA 01 20 | 01 15 | Illinois Changes |
| CA 20 01 | 10 01 | Lessor – Additional Insured and Loss Payee |
| CA 21 30 | 01 15 | Illinois Uninsured Motorists Coverage |
| CA 99 44 | 12 93 | Loss Payable Clause |
| 014059 | 07/06 | Changes in Business Auto Coverage Form |
| 014061 | 11/11 | Physical Damage Exclusion |
| 014065 | 11/11 | Stated Amount Insurance |
| 014067 | 07/06 | Truckers – Insurance for Non-Trucking Use |
| CA 20 71 | 10 01 | Auto Loan/Lease Gap Coverage |
| 013011 | 08/15 | Medical Payments – Occupational Accident Extended Coverage Part |
| 015019 | 11/08 | Medical Payments – Occupational Accident Extended Coverage Part Schedule of Benefits, Plan YC7 |
| 013012 | 04/15 | Medical Payments – Occupational Accident Coverage Part |
| 015020 | 11/08 | Medical Payments – Occupational Accident Coverage Part Schedule of Benefits, Plan YC7 |
| 014080 | 06/09 | Contract Driver Endorsement |
| 014082 | 02/15 | Contract Driver Endorsement |
| 014103 | 07/15 | Non-Occupational Accident Extended Endorsement |
| 014104 | 07/15 | Non-Occupational Accident Endorsement |
| 014075 | 05/08 | Senior Plan Endorsement |
| 015021 | 05/08 | Medical Payments – Occupational Accident Extended Coverage Part Schedule of Benefits – Senior Plan |
| 015022 | 05/08 | Medical Payments – Occupational Accident Coverage Part Schedule of Benefits – Senior Plan |
| 014077 | 02/15 | Broadened Coverage Endorsement |

# GROUP VEHICLE MASTER POLICY AGREEMENT

We agree with You, in return for receipt of Your required premium payment, to insure You subject to the terms of this policy.

We will insure You for the Coverage and Limits of Insurance which are displayed on Your Certificate(s).

### GROUP MASTER POLICY PROVISIONS

This Group Vehicle Master Policy is issued to the Group set forth in the Declarations, pursuant to Section 388b of the Illinois Insurance Code, and is for the benefit of those members/beneficiaries of the Group who are issued Certificates of insurance hereunder.

**Entire Contract:** This policy, all endorsements hereto, the individual applications of the members/beneficiaries of the Group set forth in the Declarations and all supplemental applications and schedules shall constitute the entire contract between the parties. All statements made by such members/beneficiaries, in the absence of fraud, shall be deemed representations and not warranties, and no such statement shall be used in defense of a claim under this policy, unless it is contained in a written application.

No agent has the authority to change or waive any part of this Group Vehicle Master Policy or Certificate. To be valid, any change or waiver must be in writing, approved by one of Our officers and made a part of this Group Vehicle Master Policy.

**Certificates:** We will issue and deliver to each member/beneficiary of the Group set forth in the Declarations who is insured under this policy an individual Certificate of Insurance or Evidence of Coverage (hereinafter Certificate) setting forth a statement as to the insurance protection to which it is entitled and to whom proceeds are payable hereunder.

By acceptance of the Certificate, the Insured Person agrees that the statements in the Certificate are His agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured Person and Us or any of Our agents relating to this insurance.

**New Members:** New members/beneficiaries who become affiliated with the Group set forth in the Declarations and who are eligible to make application for insurance under this Group Vehicle Master Policy shall be added by endorsement to this policy; provided, however, if applicable, that participation in the insurance afforded by this Group Vehicle Master Policy shall not be required as a condition of membership, nor shall any member not participating in the insurance afforded by this Group Vehicle Master Policy be coerced or discriminated against by the Group.

**Termination Of Membership:** Notwithstanding any other provision of this Group Vehicle Master Policy, but subject to the conversion rights set forth in the following paragraph, the coverage provided herein shall terminate automatically with respect to any individual member/beneficiary upon such member/beneficiary's termination of its connection with the Group set forth in the Declarations.

**Conversion Rights**

1. Upon termination of its connection with the Group set forth in the Declarations, a member/beneficiary shall have the right to convert its Certificate under this Group Vehicle Master Policy to an individual standard policy of insurance in the same insurer as offered by Us to non-group insureds, extending the same limits of coverage, subject to underwriting criteria and rating procedures which are normally applied to non-group insureds.

2. Conversion procedure

   In order to convert Your Certificate to an individual standard policy, You must, within ten (10) days of the date Your connection with the Group is terminated:

   a. Notify Us in writing of Your election to convert; and

   b. Pay the full amount of premium due for the conversion policy.

## GENERAL CONDITIONS

The following conditions are applicable to the entire Group Vehicle Master Policy, including all Coverage Parts and Endorsements, except as expressly amended or superseded by the terms of any Coverage Part or Endorsement.

**Premium:**  All premiums for this policy shall be computed in accordance with Our rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

The Insured Person shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to Us at the end of the policy Period and at such times during the policy period as We may direct.

**Inspections And Surveys:**
1.  We have the right to:
    a.  Make inspections and surveys at any time;
    b.  Give the Insured Person reports on the conditions We find; and
    c.  Recommend changes.

2.  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions We do undertake relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for health or safety of workers or the public.  And We do not warrant that the conditions:

    a.  Are safe or healthful; or
    b.  Comply with laws, regulations, codes or standards.

3.  Paragraphs 1. and 2. of this condition apply not only to Us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4.  Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations We may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**Examination of Insured Person's Books and Records:**  We may examine and audit the Insured Person's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**Action Against Us:**  No action shall lie against Us unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor, if applicable, until the amount of the Insured Person's obligation to pay shall have been finally determined either by judgment against the Insured Person after actual trial or by written agreement of the Insured Person, the claimant and Us.

1.  Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

2.  No person or organization shall have any right under this policy to join Us as a party to any action against the Insured Person to determine the Insured Person's liability, nor shall We be impleaded by the Insured Person or His legal representative.

3.  Bankruptcy or insolvency of the Insured Person or of the Insured Person's estate shall not relieve Us of any of its obligations hereunder.

**Changes:**  Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or stop Us from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**Transfer of Insured Person's Rights And Duties Under This Policy:**  Assignment of interest under this policy or any Certificate issued thereunder shall not bind Us until Our written consent is endorsed thereon; if, however, the Insured Person shall die, such insurance as is afforded by the Liability and Physical Damage Coverage Parts shall apply:

1.  The Insured Person's rights and duties will be transferred to the Insured Person's legal representative but only while acting within the scope of duties as the Insured Person's legal representative; and

2.  Until the Insured Person's legal representative is appointed and qualified, anyone having proper temporary custody of the Insured Person's property will have the Insured Person's rights and duties but only with respect to that property.

013007 (04/02)

**Cancellation**

1. If You are the holder of this Group Vehicle Master Policy, You may cancel this policy by returning this policy to Us or by mailing Us advance written notice of cancellation.

2. If You are a Certificate holder for insurance issued hereunder, You may cancel the specific coverage documented in Your Certificate by returning Your Certificate to Us or by mailing Us advance written notice of cancellation.

3. When this policy is in effect 61 days or more or is a renewal or continuation policy, We may cancel only for one or more of the following reasons by mailing You written notice of cancellation stating the reasons for cancellation.

    a. Nonpayment of premium.

    b. The policy was obtained through a material misrepresentation.

    c. Any Insured Person has violated any of the terms and conditions of the policy.

    d. The risk originally accepted has measurably increased.

    e. Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

    f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the Illinois insurance laws.

4. If We cancel for nonpayment of premium, We will mail you at least 10 days written notice.

5. If this policy is cancelled for other than nonpayment of premium and the policy is in effect:

    a. 60 days or less, We will mail you at least 30 days written notice.

    b. 61 days or more, We will mail you at least 60 days written notice.

6. We may not cancel the insurance afforded by this policy with respect to any individual member/beneficiary of the Group set forth in the Declarations, except for the non-payment of premium by such member/beneficiary or unless the insurance for the entire Group is cancelled.

    a. Notice of cancellation will be given to each individual member/beneficiary in accordance with this subsection.

    b. Subject to the Conversion Rights set forth in the **Group Master Policy Provisions** herein, Your coverage under this policy will terminate automatically upon termination of Your connection with the Group set forth in the Declarations, pursuant to the Termination of Membership section set forth in the **Group Master Policy Provisions** herein.

7. Upon cancellation, We will send You any premium refund due. If We cancel, the refund will be 100% of the unearned premium computed on a pro rata basis. If you cancel, the refund will be 90% of the unearned premium computed on a pro rata basis. The cancellation will be effective even if We have not made or offered a refund.

8. The effective date of cancellation stated in the notice shall become the end of the policy period.

9. Our notice of cancellation will state the reason for cancellation.

10. A copy of the notice will also be sent to your agent or broker and the loss payee.

**Mailing of Notices:**
We will mail cancellation and nonrenewal notices to the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**Bankruptcy:** We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an Insured Person.

**Liberalization:** If We revise these Coverage Forms to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective.



POLICY NUMBER:

**COMMERCIAL AUTO**
**014093 03/13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NONRENEWAL PROVISION ENDORSEMENT

This endorsement modifies the GROUP VEHICLE MASTER POLICY AGREEMENT as described below.

The provisions of the GROUP VEHICLE MASTER POLICY AGREEMENT shall apply except as modified by this endorsement.  This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

---

**Named Insured:**

**Endorsement Effective Date:**

---

(If no entry appears above, information to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The **GENERAL CONDITIONS** section of the **GROUP VEHICLE MASTER POLICY AGREEMENT** is hereby amended to include the following provision immediately following that section's **Cancellation** provision.

**Nonrenewal**

If we decide not to renew or continue this policy, we will mail you, each individual member, your agent or broker and the loss payee written notice, stating the reason for nonrenewal, at least 60 days before the policy renewal date. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**INTERLINE**
**IL 00 03 04 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   Copyright, Insurance Services Office, Inc., 1997     □

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997
☐

COMMERCIAL AUTO
CA 00 01 03 10

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

© Insurance Services Office, Inc., 2009

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II – LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the coverage form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

## 11. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

## 12. War

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

## 13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

    **a. Comprehensive Coverage**

    From any cause except:

    (1) The covered "auto's" collision with another object; or

    (2) The covered "auto's" overturn.

    **b. Specified Causes Of Loss Coverage**

    Caused by:

    (1) Fire, lightning or explosion;

    (2) Theft;

    (3) Windstorm, hail or earthquake;

    (4) Flood;

    (5) Mischief or vandalism; or

    (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

    **c. Collision Coverage**

    Caused by:

    (1) The covered "auto's" collision with another object; or

    (2) The covered "auto's" overturn.

2. **Towing**

    We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

    If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

    **a.** Glass breakage;

    **b.** "Loss" caused by hitting a bird or animal; and

    **c.** "Loss" caused by falling objects or missiles.

    However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

    **a. Transportation Expenses**

    We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

    **b. Loss Of Use Expenses**

    For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

    (1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

    (2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

    (3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

    However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

    **a. Nuclear Hazard**

    (1) The explosion of any weapon employing atomic fission or fusion; or

    (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

    **(1)** War, including undeclared or civil war;

    **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

    **a.** Wear and tear, freezing, mechanical or electrical breakdown.

    **b.** Blowouts, punctures or other road damage to tires.

    This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**4.** We will not pay for "loss" to any of the following:

    **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

    **b.** Any device designed or used to detect speed-measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed-measurement equipment.

    **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

    **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

    **a.** Permanently installed in or upon the covered "auto";

    **b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

    **c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

    **d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

    **a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

    **b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** $1,000 is the most we will pay for "loss" in any one "accident" to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of "loss", is:

    **a.** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

    **b.** Removable from a permanently installed housing unit as described in Paragraph **2.a.** above or is an integral part of that equipment; or

    **c.** An integral part of such equipment.

**3.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**4.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this coverage form until:

**a.** There has been full compliance with all the terms of this coverage form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

© Insurance Services Office, Inc., 2009

## B. General Conditions

### 1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this coverage form.

### 2. Concealment, Misrepresentation Or Fraud

This coverage form is void in any case of fraud by you at any time as it relates to this coverage form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This coverage form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this coverage form.

### 3. Liberalization

If we revise this coverage form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

### 4. No Benefit To Bailee – Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this coverage form.

### 5. Other Insurance

**a.** For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this coverage form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this coverage form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

### 6. Premium Audit

**a.** The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

### 7. Policy Period, Coverage Territory

Under this coverage form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if:

**(a)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(b)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada or in a settlement we agree to.

     © Insurance Services Office, Inc., 2009

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this coverage form and any other coverage form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the coverage forms or policies shall not exceed the highest applicable Limit of Insurance under any one coverage form or policy. This condition does not apply to any coverage form or policy issued by us or an affiliated company specifically to apply as excess insurance over this coverage form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

    **1.** A lease of premises;

    **2.** A sidetrack agreement;

    **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

    **6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

    **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

    **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** Vehicles maintained for use solely on or next to premises you own or rent;

    **3.** Vehicles that travel on crawler treads;

    **4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **a.** Power cranes, shovels, loaders, diggers or drills; or

        **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **5.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

        **b.** Cherry pickers and similar devices used to raise or lower workers; or

 © Insurance Services Office, Inc., 2009 ☐

**6.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **a.** Equipment designed primarily for:

   **(1)** Snow removal;

   **(2)** Road maintenance, but not construction or resurfacing; or

   **(3)** Street cleaning;

   **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

   **1.** Damages because of "bodily injury" or "property damage"; or

   **2.** A "covered pollution cost or expense";

   to which this insurance applies, are alleged.

   "Suit" includes:

   **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

© Insurance Services Office, Inc., 2009

COMMERCIAL AUTO
CA 01 20 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

For a covered "auto" licensed or principally garaged in Illinois, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **1.b.(3)** of the **Who Is An Insured** provision does not apply.

2. The **Limit Of Insurance** provision applies except that we will apply the Covered Autos Liability Coverage limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident";

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $20,000 for "property damage" caused by any one "accident".

   This provision will not change our total Limit of Insurance for Covered Autos Liability Coverage.

**B. Changes In Physical Damage Coverage**

Paragraph **3.** of the **Limits Of Insurance** provision is replaced by the following:

3. We may deduct for betterment if:

   a. The deductions reflect a measurable decrease in market value attributable to the poorer condition of, or prior damage to, the vehicle.

   b. The deductions are for prior wear and tear, missing parts and rust damage that are reflective of the general overall condition of the vehicle considering its age. In this event, deductions may not exceed $500.

**C. Changes In Conditions**

The **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are changed by the addition of the following:

Covered Autos Liability Coverage provided by this Coverage Form for any "auto" you do not own is primary if:

1. The "auto" is owned or held for sale or lease by a new or used vehicle dealership;

2. The "auto" is operated by an "insured" with the permission of the dealership described in Paragraph **1.** while your "auto" is being repaired or evaluated; and

3. The Limit of Insurance for Covered Autos Liability Coverage under this Policy is at least:

   a. $100,000 for "bodily injury" to any one person caused by any one "accident";

   b. $300,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $50,000 for "property damage" caused by any one "accident".

 © Insurance Services Office, Inc., 2014

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 20 01 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LESSOR – ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | (Authorized Representative) |

**SCHEDULE**

| | |
|---|---|
| Insurance Company<br>Policy Number<br>Effective Date | |
| Expiration Date | |
| Named Insured  See schedule on file with company.<br>Address | |
| Additional Insured (Lessor)<br>Address | |
| Designation or Description of "Leased Autos" | |

| Coverages | Limit Of Insurance |
|---|---|
| Liability | $                                   Each "Accident" |
| Personal Injury Protection (or equivalent no-fault coverage) | $ |
| Comprehensive | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS;<br>MINUS:   $            For Each Covered "Leased Auto" |
| Collision | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS;<br>MINUS:   $            For Each Covered "Leased Auto" |
| Specified Causes of Loss | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS;<br>MINUS:   $            For Each Covered "Leased Auto" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow. For a covered "auto" that is a "leased auto" **Who Is An Insured** is changed to include as an "insured" the lessor named in the Schedule.

2. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 21 30 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ILLINOIS UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

### SCHEDULE

| |
|---|
| **Limit Of Insurance:  $**                                        **Each "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

   d. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

© Insurance Services Office, Inc., 2014

**b.** Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

**c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

**1.** Any claim settled without our consent.

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** "Bodily injury" sustained by:

**a.** An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

**b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

**c.** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

**4.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**5.** Punitive or exemplary damages.

**6.** "Bodily injury" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

We will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

**a.** $25,000 for "bodily injury" to any one person caused by any one "accident"; and

**b.** $50,000 for "bodily injury" to two or more persons caused by any one "accident".

This provision will not change our total limit of liability.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

## E. Changes In Conditions

The **Conditions** are changed for Uninsured Motorists Coverage as follows:

**1. Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

**a.** The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this Coverage Form is provided:

(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved; and

b. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Legal Action Against Us** is replaced by the following:

**Legal Action Against Us**

a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

b. Any legal action against us must be brought within two years after the date of the "accident". However, this Paragraph **3.b.** does not apply to an "insured" if, within two years after the date of the "accident", arbitration proceedings have commenced in accordance with the provisions of this Coverage Form.

4. **Transfer Of Rights Of Recovery Against Others To Us** does not apply.

5. The following conditions are added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages, then the disagreement will be arbitrated. If the "insured" requests, we and the "insured" will each select an arbitrator. The two arbitrators will select a third. If the arbitrators are not selected within 45 days of the "insured's" request, either party may request that arbitration be submitted to the American Arbitration Association. We will bear all the expenses of the arbitration except when the "insured's" recovery exceeds the minimum limit specified in the Illinois Safety Responsibility Law.

If this occurs, the "insured" will be responsible for payment of his or her expenses and an equal share of the expenses of the third arbitrator up to the amount by which the "insured's" recovery exceeds the statutory minimum.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives.

c. If arbitration is submitted to the American Arbitration Association, then the American Arbitration Association rules shall apply to all matters except medical opinions. As to medical opinions, if the amount of damages being sought:

(1) Is equal to or less than the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then the American Arbitration Association rules shall apply.

(2) Exceeds the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then rules of evidence that apply in the circuit court for placing medical opinions into evidence shall apply.

© Insurance Services Office, Inc., 2014

In all other arbitration proceedings, local rules of law as to arbitration procedure and evidence will apply.

**d.** If the arbitration involves three arbitrators, a decision agreed to by two of the arbitrators will be binding for the amount of damages not exceeding the lesser of either:

**(1)** $75,000 for "bodily injury" to any one person/$150,000 for "bodily injury" to two or more persons caused by any one "accident"; or

**(2)** The Limit Of Uninsured Motorists Insurance shown in the Schedule or Declarations.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**a.** For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**c.** That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto" or a vehicle an "insured" is "occupying". If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

**b.** Owned by a governmental unit or agency; or

**c.** Designed for use mainly off public roads while not on public roads.

© Insurance Services Office, Inc., 2014

CA 21 30 01 15

COMMERCIAL AUTO
CA 99 44 12 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.

CA 99 44 12 93          Copyright, Insurance Services Office, Inc.,  1993          Page 1 of 1          ☐



POLICY NUMBER:

COMMERCIAL AUTO
014059 07/06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CHANGES IN BUSINESS AUTO COVERAGE FORM

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

The second paragraph of the Business Auto Coverage Form is replaced by the following:

Throughout this policy the words "you" and "your" refer to the "insured" shown in the Certificate evidencing coverage for this Coverage Part.  The words "we", "us" and "our" refer to TRANSGUARD INSURANCE COMPANY OF AMERICA, INC. or its authorized representatives.

The lead-in sentence under **SECTION IV – BUSINESS AUTO CONDITIONS** is replaced by the following:

The following conditions apply in addition to the Group Vehicle Master Policy Agreement:



COMMERCIAL AUTO
014061 11/11

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PHYSICAL DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

| POLICY NUMBER: | POLICY CHANGES EFFECTIVE: |
|---|---|
| NAMED INSURED: | AUTHORIZED REPRESENTATIVE: |

Paragraph **B. Exclusions** of **Section III – Physical Damage Coverage** is amended by the addition of the following:

"We" will not pay for  "loss" to a covered "auto", or its equipment, or "mobile equipment", under Specified Causes of Loss, which was intentionally caused by "you", any person or persons in "your" household, "your" "employees", or any permissive driver whether the "loss" or damage occurs during the hours of such service of employment or not.

"We" will not deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of a "loss", if the "loss" arose out of a pattern of criminal domestic violence and the perpetrator of the "loss" is criminally prosecuted for the act causing the "loss".

 **TransGuard** INSURANCE COMPANY OF AMERICA, INC.

POLICY NUMBER:

**COMMERCIAL AUTO**
**014065 11/11**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# STATED AMOUNT INSURANCE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:   National Association of Independent Truckers, LLC** <br><br> **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

### SCHEDULE

The insurance provided by this endorsement is reduced by the following deductible(s):

| Vehicle Number | Coverage | Limit Of Insurance | |
|---|---|---|---|
| | | $ | Less $ <br> Deductible |
| | | $ | Less $ <br> Deductible |
| | | $ | Less $ <br> Deductible |

**Note**
The amount shown in the Schedule or in the Certificate is not necessarily the amount you will receive at the time of "loss" for the described property. Please refer to the Limit Of Insurance and Deductible provisions which follow.

| Designation Or Description Of Covered "Autos" | | |
|---|---|---|
| Vehicle Number | Model Year | Make/Model |
| | | |

(If no entry appears above, information to complete this endorsement will be shown in the Certificate as applicable to this endorsement.)

**A.** This endorsement provides only those coverages where a premium has been paid. Each of these coverages applies only to the vehicles shown as covered "autos".

**B.** For a covered "auto" described in the Schedule, paragraphs **C. Limit of Insurance** and **D. Deductible** of **SECTION III – PHYSICAL DAMAGE COVERAGE** are replaced by the following:

**C. Limit Of Insurance**

    **1.** The most we will pay for "loss" in any one "accident" is the least of the following amounts minus any applicable deductible shown in the Schedule:

        **a.** The actual cash value of the damaged or stolen property as of the time of the "loss";

        **b.** The cost of repairing or replacing the damaged or stolen property with property of like kind and quality; or

        **c.** The amount shown in the Schedule.

    **2.** $1,000 is the most we will pay for "loss" in any one "accident" to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of "loss", is:

        **a.** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

        **b.** Removable from a permanently installed housing unit as described in Paragraph **2.a.** above or is an integral part of that equipment; or

        **c.** An integral part of such equipment.

    **3.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

    **4.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations or Schedule.



POLICY NUMBER:

**COMMERCIAL AUTO**
**014067 07/06**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TRUCKERS – INSURANCE FOR NON-TRUCKING USE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

### SCHEDULE

**Description of Covered "Auto":**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations or Certificate as applicable to this endorsement.)

Liability Coverage for a covered "auto" described in the Schedule is changed as follows:

1. The following exclusions are added:

   This insurance does not apply:

   **a.** To a covered "auto" while used to carry, tow or transport property in any business; or

   **b.** To a covered "auto" while used in the business of anyone to whom the "auto" is leased or rented (including but not limited to engaging in any activities that ultimately benefit the lessee or renter).  If in New York, this exclusion applies only if the lease or rental agreement requires the lessee or renter to carry

primary insurance for liability arising out of the lessee's or renter's use of the "auto"; or

c. During such time as the power unit (tractor) is used for the carrying, towing or transporting of any trailer or semi-trailer, or while the power unit is in the process of having a trailer or semi-trailer attached to or detached from it, unless such trailer or semi-trailer is owned by you and specifically described above.

However, in New York, the above exclusions apply only if there is other liability insurance which is valid and collectible, applicable to the covered "auto", which provides the minimum kinds of insurance required by law and which meets the minimum limits specified by the compulsory or financial responsibility laws of the jurisdiction where the covered "auto" is being used or the minimum limits specified by any law governing motor carriers of passengers or property, whichever is applicable.

2. **Who Is An Insured** does not include anyone engaged in the business of carrying, towing or transporting property by "auto" for hire who is liable for your conduct.

**TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.**
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**014067 07/06**

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 20 71 10 01**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AUTO LOAN/LEASE GAP COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: **National Association of Independent Truckers, LLC** | (Authorized Representative) |

### SCHEDULE

| Vehicle No. | Description Of Loan/Lease "Auto(s)" Which Are Covered "Autos" | Other Than Collision Additional Premium | Collision Additional Premium |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The **Physical Damage Coverage** Section is amended by the addition of the following:

In the event of a total "loss" to a covered "auto" shown in the Schedule or Declarations for which a specific premium charge indicates that Auto Loan/Lease GAP Coverage applies, we will pay any unpaid amount due on the lease or loan for a covered "auto", less:

**1.** The amount paid under the Physical Damage Coverage Section of the policy; and

**2.** Any:

    **a.** Overdue lease/loan payments at the time of the "loss";

**b.** Financial penalties imposed under a lease for excessive use, abnormal wear and tear or high mileage.

**c.** Security deposits not returned by the lessor;

**d.** Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

**e.** Carry-over balances from previous loans or leases.

© ISO Properties, Inc.,  2000



013011 08/15

# TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

IMPORTANT NOTICE –
THIS DOES NOT PROVIDE COVERAGE FOR SICKNESS.
THIS DOES NOT PROVIDE STATUTORY WORKERS' COMPENSATION COVERAGE

## GROUP VEHICLE MASTER POLICY
### MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT EXTENDED COVERAGE PART

### SECTION I – DEFINITIONS

As used in this "coverage part":

**Accident**: means an unforeseeable, unexpected and unintended event; something that could not be foreseen as a consequence of an undertaking and is definite to time and place.

**Act of Terrorism**: means a violent act or an act that is dangerous to human life, property, or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion.

**Administrator**: means any entity which adjusts or settles claims for an insurer or trust, in connection with insurance coverage or annuities.

**Aggravation of a Medical Condition:** means that a "pre-existing condition" or "degenerative disease or condition" is worsened, either temporarily or permanently, by an "injury".

**Association**: means the National Association of Independent Truckers, LLC.

**Average Weekly Earnings**: means:

1. for an "independent contractor", the "member's" "line haul revenue" multiplied by the net earnings percentage shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate", divided by 52; or

2. for an "independent contractor's" "scheduled co-driver, partner or helper", the gross earnings as reported by the "member" for the 52 weeks prior to

the date of "injury" for which a claim is made under this "coverage part", divided by 52.

**Beneficiary:** means any party other than the "insured person" who is eligible to receive benefits under this "coverage part".

**Certificate**: means a certificate of insurance or evidence of coverage issued by "us" setting forth a statement as to the insurance protection to which the "insured person" is entitled.

**Combined Single Limit:** means, with respect to any one "insured person", the total amount of benefits that are payable under this "coverage part", excepting benefits payable under the Other Indemnification (Contract Liability) Benefit Provision, for or in connection with "injury" sustained as the result of any one "accident". When the "combined single limit" has been reached, no further benefits shall be payable under this "coverage part", with respect to that "insured person", for or in connection with "injury" sustained as the result of that one "accident". The "combined single limit" shall not apply to the Other Indemnification (Contract Liability) Benefit Provision, which is subject to a five million dollar ($5,000,000) limit per claim.

**Contract Carrier**: means the motor carrier identified on the "member's" "certificate".

**Coverage Part:** means this MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT EXTENDED COVERAGE PART.

**Cumulative Injury**: means an injury not caused by a single event but arising from repeated or recurring events and/or trauma which comes on gradually and occurs only by reason of the effect of successive events or trauma.

**Degenerative Disease or Condition:** means a disease or condition in which the function or structure of the affected body part(s) increasingly deteriorates over time, whether due to normal bodily wear or lifestyle choices.

**Dependent Child or Dependent Children:** means "your" unmarried children, including natural children from the moment of birth, step or foster children, or adopted children, under age 19 (age 19-23 if attending an accredited institution of higher learning on a full-time basis) and who relies on "you" for more than 50% of "his" support and is taken as a dependent on "your" Federal Income Tax Return.  It also includes any unmarried "dependent children", regardless of age, who are incapable of self-sustaining employment by reason of mental or physical incapacity, and who are primarily dependent on "your" support and maintenance as defined herein.

**Dispatch or Under Dispatch:** means the period of time during which an "insured person" performs services on behalf of "his" "contract carrier" while:

1. being en route to pick up a load or a trailer needed to pick up a load by the most direct route without deviation;

2. picking up a load;

3. en route to deliver a load by the most direct route without deviation;

4. unloading a load, or

5. en route returning from delivering a load by the most direct route without deviation, to the place where the "vehicle" is normally garaged.

**He, His or Him:** means she, hers or her respectively when referring to a female.

**Home Health Care:** means nursing care and treatment of an "insured person" in "his" home as part of an overall extended treatment plan. To qualify, the plan must:

1. be established and approved in writing by the attending "physician";

2. be provided by a "hospital" certified to provide home health services or by a certified "home health care" agency;

3. commence within 7 days of discharge from a "hospital";

4. be preceded by a "hospital" confinement of 7 days or more; and

5. be "medically necessary" as determined by "us".

No benefits are payable for home care services by a person who is a member of the "insured person's" immediate family, or resides in the "insured person's" home.

**Hospital:** means an institution which meets these requirements:

1. it is licensed as a hospital;

2. it provides facilities for medical and surgical treatment either

   a. on its premises; or

   b. through formal written arrangements with other "hospitals";

3. it provides said treatment primarily to patients confined for more than 24 hours;

4. it provides 24-hour nursing services supervised by registered graduate nurses;

5. all treatments and services are supervised by "physicians"; and

6. it charges patients for its services.

In no event shall the term include an institution which is primarily a rest home, or home for the aged or which is primarily engaged in the care and treatment of drug addicts or alcoholics.

**Hospital Intensive Care:** means confinement in that section or portion of a "hospital" established for critically injured persons, which has full-time nurses or other skilled "hospital" employees in close attendance and equipment for treating the critically injured person.

**Independent Contractor:** means a person who:

1. owns or leases "his" own "vehicle";

2. is not an employee of "his" "contract carrier";

3. is not otherwise eligible for payments under Workers' Compensation or any similar law; and

4. is "under contract" with "his" "contract carrier".

**Independent Medical Examination:** means an examination by a "physician" who has not previously been involved in the "insured person's" care.  There is no ongoing doctor-patient relationship.

**Injury:** means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly, solely and independent of all other causes which:

1. occurs while the "insured person" is covered under this "coverage part"; and

2. arises solely out of and in the course of "his" regular occupation while "under dispatch" and "on duty" and "under contract" with the "contract carrier" named on "his" "certificate".

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

**Inpatient Services**: means services which will include:

1. "Hospital" room and board, but not more than the average semi-private room rate charged by the "hospital" for each day of "hospital" confinement, except that for "hospital intensive care", not more than twice the average semi-private rate charged by the "hospital" for each day of such confinement and for not more than a maximum of 15 days for any "accident"; and

2. "Hospital" services and supplies "medically necessary" for the care and treatment of patients (not to include personal comfort services such as radio, television, telephone, barber and beauty services).

**Insured Person**: means an "independent contractor" who is a "member" of the "association" to whom this Group Vehicle Master Policy is issued, who is at least age 18 and less than age 70, and who is a "certificate" holder under this "coverage part". An "insured person" may also include an "independent contractor's" "scheduled co-driver, partner or helper" who is at least age 18 and less than age 70, as evidenced by a "certificate".

**Line Haul Revenue**: means the gross revenue as reported by the "contract carrier" paid to the "insured person" for the 12 months prior to the date of "injury" for which a claim is made under this "coverage part".

**Medical Accumulation Period**: means the maximum period of time in which benefits will be paid by this "coverage part" as shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate". The "medical accumulation period" incepts on the date of the "accident" which caused the "injury".

**Medical Documentation:** means any and all records, including forms provided by "us" for completion, whether in written, electronic or other format, generated by a "physician", "hospital" or other health care provider.

**Medically Necessary**: means that a service or supply is necessary and appropriate for the diagnosis or treatment of an "injury" resulting from "accident" based on generally accepted current medical practice, as determined by "us". A service or supply will not be considered "medically necessary" if:

1. it is provided only as a convenience to the "insured person" or provider;

2. it exceeds (in scope, duration or intensity) that level of care which is needed to provide safe, adequate and appropriate diagnosis or treatment, or

3. it is part of a plan of treatment that is experimental, unproven or related to research protocol.

The fact that any particular "physician" may prescribe, order, recommend, or approve a service or supply does not, of itself, make the service or supply "medically necessary".

**Member**: means a person who is a member in good standing of the "association".

**Net Recovery**: means the "insured person's" total recovery, less the reasonable and necessary expenses, including attorney fees, actually expended in securing the recovery.

**Occurrence**: means an "accident" occurring while an "insured person" is covered under this "coverage part", including continuous or repeated exposure to the same general harmful conditions, that results in "injury" to that "insured person".

**Occupational Disease**:  means a condition, illness or injury, resulting over time, associated with a particular occupation or industry.

**On Duty**:  means on-duty time as defined in the Department of Transportation regulations 49 C.F.R. § 395.2 as it relates to the completion of drivers' logs.

**Outpatient**: means a person who receives treatment at a "hospital", clinic or doctor's office without being hospitalized.

**Physician**: means a practitioner of the medical arts who is acting within the lawful scope of "his" license either as a doctor of medicine or a doctor of osteopathy or as such other practitioner as "we" by law must recognize as a physician legally qualified to render such treatment.

The "physician" cannot be the "insured person" or related to the "insured person" by blood, marriage or civil union or reside in the "insured person's" home.

**Pre-existing Condition:** means any illness, disease, or medical condition that existed prior to the "injury", including but not limited to "degenerative disease" or any prior injury, whether known or unknown to "us" or the "insured person".

**Reasonable and Customary Charge:** means a charge which is not more than is charged when there is no insurance; and is not more than the prevailing charge in the locality for a like service or supply and not more than the allowable charge under the Workers' Compensation fee schedule, if a Workers' Compensation fee schedule exists in the state where the service or supply is received.

**Related Disabilities:** means successive periods of "total disability", unless:

1. the latter "total disability" results from a separate "accident", or
2. the periods of "total disability" are separated by at least 90 days.

**Scheduled Co-Driver, Partner or Helper:** means a person on file with "us" who has been contracted by an "independent contractor" and coverage afforded to said person is evidenced by a "certificate".

**Serious Physical Injury:** means for purposes of excluding loss resulting from an "act of terrorism":

1. physical injury that involves a substantial risk of death;
2. protracted and obvious physical disfigurement; or
3. protracted loss of or impairment of the function of a bodily member or organ.

**Skilled Nursing Care Facility:** means an institution operating pursuant to law which is engaged in providing, for compensation, skilled nursing care and related services, including physical therapy services, to persons convalescing from illness or "injury" and who are confined for this purpose.

**Social Security Disability Award:** means Social Security disability benefits for which the "insured person" has submitted a claim and which have been approved for payment by the Social Security Administration directly and solely as a result of an "injury" and independent of all other causes and documentation of such award has been provided to "us".

**Spouse:** means the "insured person's" legal spouse as determined by the laws of the "insured person's" state of domicile.

**Stop Work:** means strike, lockout or walkout.

**Totally Disabled or Total Disability means:**

1. for purposes of the TEMPORARY TOTAL DISABILITY BENEFIT Provision only:

   a. for the "insured person's" first 52 weeks of "total disability", that the "insured person" is deemed by a "physician" to be unable to perform, due to "injury", the material and substantial duties of "his" regular occupation, and is not engaged in any occupation for wage or profit.

   b. for the "insured person's" period of "total disability" beyond 52 weeks, that the "insured person" is deemed by a "physician" to be unable to perform, due to "injury", the material and substantial duties of any occupation for which "he" is reasonably fitted by education, training or experience, and is not engaged in any occupation for wage or profit.

2. for purposes of the CONTINUOUS TOTAL DISABILITY BENEFIT Provision only, that the "insured person" is deemed by a "physician" to be permanently unable to perform, due to "injury", the material and substantial duties pertaining to any occupation for which "he" is or becomes qualified by education, training or experience, is not engaged in any occupation for wage or profit, and has been granted a total "Social Security Disability Award" directly and solely as a result of an "injury" and independent of all other causes.

**Under Contract:** means providing services in performing the substantial and material duties of "his" regular occupation as specified in "his" written "independent contractor" or owner/operator contract with the "contract carrier".

For a "member's" "scheduled co-driver, partner or helper" means physically working on behalf of and at the direction of that "member".

**Under the Influence of Alcohol:** means a person's level of alcohol in "his" blood equals or exceeds the amount where a person is presumed, under the law of the locale in which the "injury" is sustained (or in the absence of such law, the level indicated by the State of Illinois), to be under the influence of alcohol or intoxicating liquor if operating a motor vehicle,

regardless of whether "he" is in fact operating a motor vehicle when the "injury" occurs.

**Vehicle**: means a truck, tractor, tractor-trailer, trailer, semi-trailer, or van used primarily in "your" business, but does not include mobile equipment or a vehicle that is a private passenger or recreational vehicle.

**Waiting Period**: means for an "insured person" who becomes "totally disabled" while insured under this "coverage part", the period of time the "insured person" must be "totally disabled" before "total disability" benefits become payable. The "waiting period" is shown on the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

**We, Us, or Our**: means TRANSGUARD INSURANCE COMPANY OF AMERICA, INC. or its authorized representatives.

**Written Request**: means the "association" application in its entirety, or any form required by "us", which is requesting coverage under this "coverage part".

**You or Your**: means the "insured person" or the legal estate and/or "beneficiary" of an "insured person" who is deceased.

### SECTION II - ELIGIBILITY AND PARTICIPATION

**ELIGIBLE PERSONS:** Persons eligible for insurance under this "coverage part" are the following:

I.   "Members" in good standing of the "association" who:

   a.   are "under contract";

   b.   are not "totally disabled"; and

   c.   are age 18 or over, but have not attained age 70.

II.  A "member's" "scheduled co-driver, partner or helper"; provided:

   a.   they work for a "member" covered by this "coverage part";

   b.   they are not "totally disabled"; and

   c.   they are age 18 or over, but have not attained age 70.

**Age Limit**: No individual shall be eligible for insurance beyond age 70.

### PARTICIPATION

PARTICIPATION:  A "member" may choose to participate in this insurance plan by completing a "written request" for insurance. A "member" may also make a "written request" to cover "his" "scheduled co-driver, partner or helper". All "written requests" must be approved by "us" and in no event will coverage be effective until a "certificate" has been issued.

### SECTION III - INSURED PERSONS – COVERAGE PERIOD

#### EFFECTIVE DATE OF COVERAGE

**Effective Date**: "We" will issue a "certificate" to the "member" indicating "his" effective date under the "coverage part" and in no event will coverage be effective until a "certificate" has been issued.

**Scheduled Co-Driver, Partner or Helper Coverage Period**: The period of coverage for a "scheduled co-driver, partner or helper" will be only for that period of time in which the "scheduled co-driver, partner or helper" is contracted by the "member" (provided the "member's" insurance is effective) for a specified job(s) and is physically working on behalf of and at the direction of the "member".

### SECTION IV - CHANGE IN COVERAGE

Request for change in coverage: A "member" may request a change in "his" coverage if "he" is eligible for such change in coverage. The change will become effective on the date evidenced by a "certificate".

An "insured person" may name a beneficiary for loss of life benefits payable under the Accidental Death and Dismemberment Benefits Provision in the event "he" dies without a surviving "spouse" or "dependent children" Changes to the beneficiary designation for loss of life benefits under the Accidental Death and Dismemberment benefit provision must be requested by providing "us" with a completed Change of Beneficiary form.

### SECTION V - BENEFIT PROVISIONS

The benefits for the coverage provided under this "coverage part" are described in the following benefit provisions.  "We" will pay the benefits set forth below when "we" receive due proof that:

1.   the "insured person" sustained an "injury" in an "accident"; and

2.   the "injury" occurred while performing the usual and customary duties of "his" occupation while "on duty", "under dispatch" for and "under contract" to "his" "contract carrier".

All benefits payable under this "coverage part", except for those payable under the Other Indemnification (Contract Liability) Benefit Provision, will be subject to the "combined single limit" shown on the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate". The Other Indemnification (Contract Liability) Benefit Provision is subject to a five million dollar ($5,000,000) limit per claim.

Any overpayment of any benefits paid by "us" pursuant to this "coverage part" may be recouped by "us" by: (a) suspension of any benefits pursuant to this "coverage part", including but not limited to medical benefit claims received but not yet paid; and/or (b) a demand by "us" for reimbursement by the "insured person" to "us" for any such overpayment.

### ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS PROVISION

"We" will pay the Benefit Payable opposite the Covered Loss as shown on the Table of Covered Losses listed below when "we" receive due proof that the "insured person's" dismemberment or loss of life occurred prior to the expiration of the "medical accumulation period" shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate". The amount of the Principal Sum applicable to each "insured person" is shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

For benefits to become payable under this benefit provision, death or dismemberment must be directly and solely as a result of an "injury" and independent of all other causes, including but not limited to any "pre-existing condition" to include but not be limited to diabetes or any heart-related condition.

### TABLE OF COVERED LOSSES

**For covered loss of:**
**Benefit Payable:**

| | |
|---|---|
| Life | Principal Sum |
| Both hands or both feet or sight of both eyes | Principal Sum |
| One hand and one foot | Principal Sum |
| Either hand or foot and sight of one eye | Principal Sum |
| Either hand or foot | One-Half Principal Sum |
| Sight of one eye | One-Half Principal Sum |
| Loss of one thumb | $2,000 |
| Loss of three fingers or three toes | $2,000 |
| Loss of two fingers or two toes | $1,500 |
| Loss of one finger or one toe | $1,250 |
| Loss, with regard to: | |

1. hands and feet means actual, permanent and complete physical separation of a hand at or above the wrist, or of a foot at or above the ankle.

2. sight means entire and irrecoverable loss thereof, or diminution of vision corrected to 20/200 or less after corrective lenses and/or corrective surgery.

3. thumb, finger or toe means actual, permanent and physical separation resulting in actual bone loss.

Benefits for loss of life under this benefit provision shall be paid in a lump sum of $25,000 followed by payments of $1,000 per month until the Principal Sum has been paid, subject to the terms and conditions of this provision.

All dismemberment benefits will be paid in one lump sum.

**Benefit Limitations:**

If more than one covered loss shown on the Table of Covered Losses results from the same "accident", only one amount, the largest, will be payable.

The benefits payable under this benefit provision will be reduced by any Temporary Total Disability and Continuous Total Disability benefits paid or payable under this "coverage part" for the same "injury".

**Death benefit payments:**

If "you" have a surviving "spouse", "we" will pay the benefits for loss of life to "your" surviving "spouse".

If "you" are not survived by a "spouse", or if "your" "spouse" dies or remarries, "we" will pay or continue to pay the benefits for loss of life to "your" surviving "dependent children", if any. If there is more than one surviving "dependent child", the benefits for loss of life will be distributed equally among "your" surviving "dependent children".

If "you" do not have a surviving "spouse" or "dependent children", benefits for loss of life will be limited to $25,000 and will be paid to the "insured person's" named beneficiary on file with "us". In the event a beneficiary has not been named or the named beneficiary does not survive the "insured person", "we" will pay the $25,000 to the "insured person's" estate.

Any claim for death benefit must be submitted within the "medical accumulation period".

Benefits for loss of life will end on the earliest of the following dates:

1. the date "your" "spouse" dies or remarries, if there are no "dependent children";

2. the date the last "dependent child" dies or no longer meets the definition of "dependent child" under this "coverage part";

3. the date the Principal Sum has been paid; or

4. the date $25,000 has been paid, if "you" do not have a surviving "spouse" or "dependent children".

"We" may require satisfactory proof be submitted to "us" as often as "we" deem necessary that the "spouse" and/or "dependent children" continue to be eligible for benefits as defined by this "coverage part".

If a benefit is payable to a "dependent child" who is a minor, "we" will pay the benefit to the child's legal guardian.

### PARALYSIS BENEFIT PROVISION

"We" will pay the Benefit Payable opposite the Type of Paralysis as shown on the Table of Covered Losses listed below when "we" receive due proof that the "insured person's" Paralysis occurred prior to the expiration of the "medical accumulation period" shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate". The amount of the Principal Sum applicable to each "insured person" is shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

For benefits to become payable under this benefit provision, paralysis must be due to "injury". If paralysis would not have occurred but for a separate medical condition, including but not limited to a stroke, coverage under this benefit provision is excluded.

### TABLE OF COVERED LOSSES

| Type of Paralysis: | Benefit Payable: |
| --- | --- |
| Quadriplegia | Principal Sum |
| Paraplegia | 75% of Principal Sum |
| Hemiplegia | 50% of Principal Sum |
| Uniplegia | 25% of Principal Sum |

Quadriplegia: means the complete and irreversible paralysis of both upper and both lower limbs.

Paraplegia: means the complete and irreversible paralysis of both lower limbs.

Hemiplegia: means complete and irreversible paralysis of the upper and lower limbs of the same side of the body.

Uniplegia: means the complete and irreversible paralysis of one limb.

**Benefit Limitations:**

If more than one covered loss shown on the Table of Covered Losses results from the same "accident", only one amount, the largest, will be payable.

The benefits payable under this benefit provision will be reduced by any Temporary Total Disability and Continuous Total Disability benefits paid or payable under this "coverage part".

### TEMPORARY TOTAL DISABILITY BENEFIT PROVISION

"We" will pay the Weekly Benefit described below to the "insured person" when "we" receive due proof that:

1. "he" is "totally disabled"; and

2. such "total disability":

   a. began before the "insured person" attained age 70;

   b. began within 90 days  from the date of "accident" causing "injury";

   c. continued without interruption for at least the "waiting period" (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate"); and

   d. is due to "injury"

The Weekly Benefit which applies to the "insured person" will:

1. become payable at the end of the "waiting period";

2. continue to be payable while the "insured person" is "totally disabled"; and

3. end on the earliest of the following dates:

   a. the date the "insured person's" "total disability" ends;

   b. the date the "insured person" ceases to be under the regular care of a "physician", unless "he" has reached maximum medical improvement;

   c. the date the Maximum Benefit Period (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") is exhausted;

d. the date the "insured person" attains Age 70; or

e. the date the "insured person" dies.

The Weekly Benefit will not be payable during any period of time in which:

a. The "insured person" is knowingly and willfully not following the medical treatment plan prescribed by "his" treating "physician", unless the prescribed treatment is a surgical or invasive procedure;

b. The treatment is delayed while the "insured person" receives treatment for a condition not arising from a covered "injury

c. Treatment is delayed due to a "pre-existing condition"

If an "insured person's" "total disability" ends and the "insured person" has another period of "total disability" solely resulting from the same "injury", "we" will pay the Weekly Benefit for the Related Disability unless the periods of "total disability" are separated by 90 days or more, in which case no Temporary Total Disability benefits will be paid.

For purposes of calculating the Maximum Payment Period, "related disabilities" shall be counted toward one period of "total disability".

**Weekly Benefit Calculation:**

The Weekly Benefit amount payable for the first 52 weeks of "total disability" shall be the percentage of the "insured person's" "average weekly earnings" up to the Maximum Weekly Benefit (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") reduced by 100% of any "Social Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits not received prior to the "injury".

For weeks 53-104 (for Plans with more than a 52-week Maximum Payment Period), the Weekly Benefit shall be the percentage of the "insured person's" "average weekly earnings" up to the Maximum Weekly Benefit (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") reduced by 100% of any "Social Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits not received prior to the "injury".

Any benefits for less than a week of disability will be paid at the rate of $1/7^{th}$ of the Weekly Benefit amount per day of compensable "total disability".

The minimum Weekly Benefit will be $150.00 (reduced by 100% of any "Social Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits not received prior to the "injury"), provided the "insured person" has been continuously providing services to the "contract carrier" for the 60 days immediately prior to a covered "injury".

### CONTINUOUS TOTAL DISABILITY BENEFIT PROVISION

"We" will pay the benefit described to an "insured person" when "we" receive due proof that:

1. "He" is "totally disabled";

2. "He" has received a "Social Security Disability Award" directly and solely as a result of an "injury" and independent of all other causes, and such "total disability":

   a. began within 6 months from the date of "accident" causing "injury";

   b. continued without interruption for at least the "waiting period" (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate");

   c. is reasonably expected to continue without interruption until the "insured person" dies; and

   d. the "Total Disability" is authorized by a "physician"; and

   e. is confirmed via an "Independent Medical Examination"; and

3. The "insured person" has been granted a Social Security Award directly and solely as a result of the "injury" within one year from the end of the "medical accumulation period"

**Weekly Benefit Calculation:**

The Weekly Benefit amount payable shall be the percentage of the "insured person's" "average weekly earnings" up to the Maximum Weekly Benefit (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") reduced by 100% of any "Social

Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits.

Benefits will be paid in monthly installments that will:

1. begin to be payable at the end of the "waiting period";

2. continue to be payable while the "insured person" is "totally disabled"; and

3. end on the earliest of the following dates:

   a. the date the "insured person's" "total disability" ends;

   b. the date the Maximum Benefit Period (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") is exhausted;

   c. the date the "insured person" dies; or

   d. the date the "insured person's" "Social Security Disability Award" ceases.

Any benefits for less than a week of disability will be paid at the rate of 1/7th of the Weekly Benefit amount per day of compensable "total disability".

## ACCIDENT MEDICAL & DENTAL EXPENSE BENEFIT PROVISION

If an "insured person" incurs "covered expenses" resulting from an "accident" which caused an "injury" while insured under this "coverage part", "we" will pay the "reasonable and customary charge" of such "covered expenses" incurred within the "medical accumulation period", but not more than the maximum benefit, while insured, for Accident Medical and Dental Expense shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

A "covered expense" will be deemed to have been incurred when the service or supply is rendered.

"We" will issue payments for a "covered expense" on behalf of the "insured person" directly to the "physician", "hospital" or medical service provider who provided such service or supply. If the "insured person" provides "us" with proof that "he" has already paid for the "covered expense", "we" will issue payment to the "insured person".

"We" will not pay for any medical or dental expense that is not submitted to "us" for payment within 2 years from the date the service or supply is rendered.

**Covered Expense**: means a "covered medical expense" or "covered dental expense" that is incurred by an "insured person" as a direct result of an "injury", within the "medical accumulation period".

A medical or dental expense will be a "covered expense" under this "coverage part" only if:

1. it is incurred on the recommendation or approval of a "physician" or dentist attending the "insured person";

2. it is "medically necessary"; and

3. the provider of the service is acting within the scope of "his" license.

**Covered Medical Expense**: means the "reasonable and customary charges":

1. for a professional ambulance service on the date of "accident" to a "hospital", required as a result of an "injury", subject to a maximum payment of $1,000.00.

2. for a medical air ambulance on the date of "accident" for service to a "hospital" required as a result of an "injury" subject to a maximum payment of $10,000.00.

3. for medical care by a "physician" or dentist.

4. for the initial supply but not replacement of splints, braces, artificial limbs and artificial eyes.

5. for the rental of oxygen equipment, "hospital" beds, wheelchairs and other durable medical equipment not to exceed the purchase price of such equipment.

6. for a "hospital" for "outpatient" and "inpatient services" and for emergency room services, but only when emergency medical treatment is needed on an urgent basis.

7. for a licensed practical nurse (LPN), if under the supervision of a registered nurse (RN), for "home health care" which follows a 7 day period of "hospital" confinement resulting from a covered "injury" due to "accident" and which is prescribed by a "physician".

8. for a "skilled nursing care facility" for "inpatient services" which follow a period of "hospital" confinement resulting from a covered "injury" due to "accident" of at least 5 days, provided the confinement in the "skilled nursing care facility" results from the need for further and indefinite

medical care and the attending "physician" certifies the confinement is "medically necessary".

9. for rehabilitative spinal manipulation therapy or other rehabilitative chiropractic services or treatment, subject to a maximum payment of $1,000.00.

10. for physical therapy on an "outpatient" basis. Treatment shall be treated as a Covered Medical Expense up to a maximum of 36 visits.

11. for occupational therapy on an "outpatient" basis. Treatment shall be treated as a Covered Medical Expense up to a maximum of 10 visits.

12. for prescription drugs which are "medically necessary" for the treatment of a specific covered "injury" and have been prescribed in writing by a "physician". When generic prescription drugs are available, the most "we" will pay is the cost of the generic prescription drugs.

A "covered medical expense" does not include and no benefits will be payable for:

1. prosthetic or orthopedic appliances except as required for the replacement of natural parts of the body;

2. services of a Federal, Veterans, State or Municipal "hospital" or other health care provider for which the "insured person" is not liable for payment;

3. cosmetic plastic or restorative surgery unless "medically necessary" for the treatment of an "injury" resulting from a covered "accident";

4. eye refractions, eye glasses or contact lenses;

5. hearing aids;

6. work hardening programs;

7. medical treatment received outside of the United States, except for treatment on an emergency basis or treatment that has been approved by "us";

8. medical treatment for mental, functional nervous or emotional disorders without demonstrable organic cause;

9. emergency room services at a "hospital", unless emergency medical treatment is needed is needed on an urgent basis

10. Functional Capacity Evaluation

11. Pain Management; or

12. Medication available without a prescription, also referred to as over-the-counter medication.

**Covered Dental Expense**: means the "reasonable and customary charge" for the care, treatment, or replacement due to "accident" of sound natural teeth provided such care is recommended and given by a dentist operating within the scope of "his" license. A "Covered dental expense" payable shall be limited to the Maximum Dental Benefit per "injury" shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

## OTHER INDEMNIFICATION (Contract Liability) BENEFIT PROVISION

"We" will indemnify and defend an "insured person's" "contract carrier", subject to the terms and conditions of this benefit provision, in the event that "insured person" files a claim or lawsuit before any board, agency or court seeking Workers' Compensation benefits as an employee of "his" "contract carrier", in conflict with "member's" representation that such "insured person" is an "independent contractor". "We" have the right and duty to defend at "our" expense any claim, proceeding or suit against the "insured person's" "contract carrier" for claims payable by this insurance.

If the "insured person" is deemed to be entitled to Workers' Compensation benefits from "his" "contract carrier" by final order of any administrative or regulatory agency or court of competent jurisdiction, "we" will pay the "insured person" the benefits awarded on behalf of "his" "contract carrier". The maximum "we" will pay under this benefit provision is five million dollars ($5,000,000) per claim, which shall not be subject to the "combined single limit" shown on the Schedule of Benefits.

**Other Indemnification (Contract Liability) Benefit Exclusions:**

The following are excluded from coverage under this benefit provision:

1. Any "injury" intentionally caused by the "insured person" and/or the "insured person's" "contract carrier".

2. Claims for punitive or exemplary damages however described; except that if a lawsuit shall have been brought against the "insured person's" "contract carrier" with respect to a claim for acts or alleged acts falling within the coverage hereof, seeking both Workers' Compensation benefits and punitive or exemplary damages, then "we" will afford a defense to such action without liability, however, for such punitive or exemplary damages.

3. Claims resulting from serious or willful misconduct by the "insured person" and/or the "insured person's" "contract carrier".

4. Claims resulting from entering into any contractual relationship known by the "insured person" and/or "his" "contract carrier" to be in violation of law on or before the date of "accident".

5. Penalties resulting from the failure to comply with any health or safety laws or regulations by the "insured person" and/or the "insured person's" "contract carrier".

6. Damages in the event the "insured person's" "contract carrier's" Workers' Compensation policy or the "insured person's" self-insurance pays benefits or settles without prior authorization from "us"

7. Any claim that is not directly related to an "occurrence" while an "insured person" is "on duty" and "under dispatch" to or performing services on behalf of that "insured person's" "contract carrier".

8. Any claim for "injury" occurring outside the United States of America, its territories or possession, or Canada, unless the "insured person" is a citizen of the United States of America or Canada temporarily located elsewhere.

9. Any claim not relating to an "occurrence" while the "insured person" is covered under this "coverage part".

10. Damages for which the "insured person's" "contract carrier" is liable to a third party by reason of a claim or suit against the "insured person's" "contract carrier" by that third party to recover damages claimed against such third party as a result of an "injury" to the "insured person".

11. Damages for care and loss of services.

12. Damages for consequential bodily "injury" to the "insured person's" "spouse", child, parent, brother or sister.

13. Damages claimed against the "insured person's" "contract carrier" in a capacity other than as employer.

14. Damages rising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination against the "insured person" or any personnel practices, policies acts or omissions.

15. Claims arising from or relating to the promulgation or enactment of any statute, regulation or rule, or the amendment of any existing statute, regulation

or rule, the effect of which is to make the "insured person" an employee of "his" "contract carrier" for any purpose whatsoever.

16. Claims arising from or relating to any federal, state, local or other governmental entity's income, sales, withholding, unemployment or other taxes, and any interest or penalties related thereto.

17. Claims arising from or relating to any obligation imposed by an unemployment compensation or disability benefits law other than Workers' Compensation.

18. Claims arising from or related to any common law cause of action or labor law cause of action filed against the "insured person's" "contract carrier".

19. Claims arising from or related to war (declared or undeclared), or any act thereof.

20. Claims arising from (an) "act(s) of terrorism" if the "act(s) of terrorism" result(s) in industry-wide insured losses that exceed 25 million dollars for related incidents that occur within a 72 hour period or fifty or more persons sustain death or "serious physical injury" for related incidents that occur within a 72 hour period.

## CONDITIONS

With respect to this Other Indemnification (Contract Liability) Benefit Provision only, the following conditions will apply:

For a "member":

A. The "member" must be "under contract" as of the date of the "occurrence" or the last day of last exposure to the condition causing the "insured person" "injury" and the "member" must provide "us" with a copy of the written contract upon request. The contract:

   1. must represent and warrant that neither the "member" nor any of "his" "scheduled co-drivers", "helpers" or "partners" is an employee of "his" "contract carrier"; and

   2. shall contain a provision whereby the "member" agrees to indemnify "his" "contract carrier" for any liability, damages, costs and expenses, including reasonable attorneys' fees, relating to a breach of "his" representations and warranties in the contract.

B. The "member" must:

1. assume no obligation, make no payment and incur no expense with respect to any claim for benefits under the policy without "our" prior written consent;

2. immediately give "us" written notice of any claim made by an "insured person" against "his" "contract carrier" for Workers' Compensation benefits as soon as "member" learns of such claim and send "us" copies of any demand, notice, summons or other document received concerning such claim, and any related hearing or suit; and

3. cooperate with "us" in the investigation, settlement or defense of such claim, and any related hearing or suit.

C. If the "member" has rights to recover all or part of any payment "we" have made under this policy, those rights are assigned to "us"; the "member" must do nothing after loss to impair them. At "our" request, the "member" will bring suit or transfer those rights to "us" and help "us" enforce them.

For a "member's" "scheduled co-driver, helper or partner":

A. The "member's" "scheduled co-driver, helper or partner" must be physically working as an "independent contractor" on behalf of and at the direction of a "member" who is insured under this "coverage part" as of the date of the "occurrence" or the last day of last exposure to the condition causing the "insured person" "injury"; and

B. "We" must have issued a "certificate" identifying that "member's" "scheduled co-driver, helper or partner" as covered under this "coverage part".

## ADDITIONAL INSURED

The "member's" "contract carrier" shall be an additional insured under this Other Indemnification (Contract Liability) Benefit Provision only. The following conditions shall apply to the "contract carrier" as an additional insured:

A. the "contract carrier" must have a written contract in force with the "member" as of the date of the "occurrence" or the last day of last exposure to the condition causing the "insured person" "injury" and the "contract carrier" must provide "us" with a copy of that contract upon request. That contract:

1. must represent and warrant that neither the "member" nor any of "his" "scheduled co-

drivers", "helpers" or "partners" is an employee of "his" "contract carrier"; and

2. shall contain a provision whereby the "member" agrees to indemnify "his" "contract carrier" for any liability, damages, costs and expenses, including reasonable attorneys' fees, relating to a breach of "his" representations and warranties in the contract.

B. The "contract carrier" must:

1. assume no obligation, make no payment and incur no expense with respect to any claim for benefits under the policy without "our" consent;

2. immediately send "us" copies of any demand or notice, summons or legal paper received concerning a claim, hearing or suit for which the "contract carrier" desires coverage under this policy;

3. cooperate with "us" in the investigation, settlement or defense of such claim, and any related hearing or suit; and

4. provide "us" with a copy of the written contract with an "insured person" upon request.

C. If the "contract carrier" has rights to recover all or part of any payment "we" have made under this benefit provision, those rights are assigned to "us"; The "contract carrier" must do nothing after loss to impair them. At "our" request, the "contract carrier" will bring suit or transfer those rights to "us" and help "us" enforce them.

## SECTION VI - GENERAL EXCLUSIONS AND LIMITATIONS

The following General Exclusions and Limitations apply to all benefits under this "coverage part", except for those provided under the Other Indemnification (Contract Liability) Benefit Provision. The exclusions that specifically relate to that benefit provision are listed in the Other Indemnification (Contract Liability) Benefit Provision.

Except as otherwise provided in the Other Indemnification (Contract Liability) Benefit Provision, this "coverage part" does not cover and no benefits will be paid for any "injury", loss or claim caused or contributed to by or resulting from:

1. sickness, disease or bacterial infection (except pyogenic infection which results from an accidental bodily "injury", or bacterial infection which results

from the accidental ingestion of a contaminated substance);

2. suicide, attempted suicide or intentionally self-inflicted "injury" while sane or insane;

3. "injuries" sustained in an "accident" occurring prior to the "insured person's" 18th birthday or an "accident" occurring after the "insured person's" 70th birthday;

4. any loss that was not the result of an "accident" causing "injury" sustained while "he" is engaged in the usual and customary duties of "his" occupation while on duty, "under dispatch" for and "under contract" to "his" "contract carrier";

5. any loss sustained by the "insured person" which was the result of an "accident" causing "injury" that was sustained while "he" is being transported to or from "his" workplace, unless "he" is being transported in a "vehicle" that is primarily used in the "insured person's" occupation;

6. any "accident" occurring while the "insured person" is "under the influence of alcohol" or is otherwise in violation of Federal Department of Transportation Regulation 49 CFR §392.5;

7. any loss occurring while the "insured person" is in violation of Federal Department of Transportation Regulation 49 CFR §392.4 due to the presence of drugs into their system;

8. the "insured person's" commission of a criminal or felonious act, or any attempt thereat;

9. the "insured person's" riding or driving in any kind of race;

10. any "injury" for which benefits are available to the "insured person" under any Workers' Compensation Act or similar law, or under any policy providing Workers' Compensation or Employer's Liability benefits or coverage;

11. any condition for which medical advice or treatment was received by the "insured person" during the twelve months prior to the effective date of the "insured person's" coverage shown on "his" "certificate". In no event shall this exclusion apply to loss incurred or disability commencing after the earlier of:

  a. the end of a continuous period of twelve months commencing on or after the effective date of the "insured person's" coverage during which "he" has received no medical advice or treatment in connection with such disease or physical condition; or

  b. the end of the two-year period commencing on the effective date of the "insured person's" coverage;

12. any charges for medical care furnished by any of the following persons: the "insured person's" "spouse", parent, child, grandparent, brother, sister, parent-in-law or any other person residing in the "insured person's" home;

13. care that is not "medically necessary";

14. war (declared or undeclared), or any act thereof;

15. (an) "act(s) of terrorism" if the "act(s) of terrorism" result(s) in industry-wide insured losses that exceed 25 million dollars for related incidents that occur within a 72 hour period or fifty or more persons sustain death or "serious physical injury" for related incidents that occur within a 72 hour period;

16. mental, functional nervous or emotional disorders not arising directly and solely as a result of a traumatic head "injury" and independent of all other causes;

17. "cumulative injury";

18. "occupational disease";

19. any "injury" for which benefits are payable under United States Longshoremen's and Harbor Workers' Compensation Act or Federal Merchant Marine Act, including the Jones Act;

20. radioactive contamination whether suffered directly or indirectly;

21. a condition, malady or disorder involving the heart, its arteries and/or vessels, or any portion thereof, including that resulting from stress, strain or overexertion, which is not accompanied by and the result of an "accident" resulting in "injury" of external origin;

  any loss occurring while the "insured person", "insured person", covered "scheduled co-driver, partner or helper" is operating a "vehicle" without a valid license appropriate for the type of "vehicle" being driven;

23. treatment for alcoholism or drug abuse;

24. any "injury" arising out of a "stop work" action;

25. a sickness, disease, medical condition or "aggravation of a medical condition", including but not limited to "degenerative disease or condition" or "pre-existing condition";

26. the "insured person" performing normal maintenance or repairs on "his" "vehicle" while not "under dispatch"; or

27. hernias or hemorrhoids.

### SECTION VII – CONDITIONS

The following general conditions apply to this "coverage part":

**Modification:** This "coverage part" may be modified prospectively by rider, endorsement or amendment. "We" will give the "member" thirty (30) days prior notice of any such modifications; provided however, that consent of the Named Insured to any modification shall not be required.

**Time Periods:** All time periods, including this "coverage part", begin and end at 12:01 A.M., Standard Time at the Insured's Person's mailing address.

**Workers' Compensation:** This "coverage part" does not satisfy any legal requirement for Workers' Compensation.

A "member" is issued a "certificate" under this "coverage part" based on the representation of the "insured person" that "he" is an "independent contractor" and not an employee. This "coverage part" will not provide coverage where Workers' Compensation benefits are payable or claimed.

If Workers' Compensation benefits are claimed, found due, payable, settled with or without a finding of coverage or owed to an "insured person" for the same "injury" for which benefits would be payable under this "coverage part", then no benefits shall be paid under this "coverage part" for the "injury". If benefits have been paid for the "injury" under this "coverage part", they shall be fully reimbursed to "us" by the "insured person" without reduction for costs or collection of attorney's fees.

If the "insured person" is deemed to be an employee by final administrative order or judicial decree, contrary to the "insured person's" representations to "us" that "he" is an "independent contractor", the amount paid by "us" shall act as a lien on any Workers' Compensation benefits due the "insured person" and permission for that lien is granted by the "insured person". "We" shall be entitled to full rights of offset against any other monies owed the "insured person" to satisfy that lien.

If the "insured person" is deemed to be an "independent contractor" by final administrative order or judicial decree no benefits are owed under this "coverage part" as a result of a prior Workers' Compensation filing.

**Right of Recovery:** If another party is responsible for the "injury" for which benefits are paid by "us", "you" may pursue "your" remedies against such parties, and "we" will continue payment of benefits subject to the following terms and conditions:

1. Assignment and Lien Rights

   "You" automatically assign to "us" any right of recovery "you" may have against any third party responsible for "your" "injury", to the extent of benefits paid or payable, by accepting benefits under this "coverage part". "You" must immediately notify "us" of any third party who "you" believe is responsible for "your" "injury" and any action "you" have taken to recover from that third party. "You" must do everything necessary to secure "our" rights and must do nothing after the "accident" to impair them. "We" shall have a lien on the amounts collected by "you" from such third parties and their insurers to the extent of all benefits paid or payable to "you" regardless if the claim for benefits has been submitted to us. The amount collected by "you" to which "our" lien shall attach shall be "your" total recovery, however obtained and whether or not such recovery is described as payment of loss for which benefits were paid under this "coverage part". "We" shall also be entitled to "our" pro-rata share of any interest collected on the "net recovery".

2. Payment to "us"

   The lien created and "your" obligation under that lien to reimburse "us" for benefits paid shall be discharged upon "our" receipt of "your" "net recovery" to the extent of benefits paid under this "coverage part" and "our" pro-rata share of any interest collected. Any remaining balance of the "net recovery" shall be paid to "you" but shall serve as a credit against any future or ongoing benefits otherwise payable arising out of "your" "injury".

3. Compromise

   Any settlement of "your" claim against a third party that would result in a "net recovery" for an amount that is less than the total amount of benefits paid and reasonably expected to be paid in the future shall be made only with "our" prior written approval.

Failure to obtain "our" prior approval will immediately terminate "our" obligation under this "coverage part" for the payment of benefits resulting "your" "injury". "our" lien rights shall survive and do not terminate.

4.  Subrogation

    "We" shall be subrogated to any right of recovery "you" may have against others to the extent of "our" benefits paid and payable together with "our" expenses of recovery and "we" may commence "our" own action under this right of subrogation. In such event, the recovery will be distributed in the same manner as a recovery by "you".

"We" are entitled to a first priority right of reimbursement and subrogation regardless of whether "you" recover all of "your" damages or whether "you" are made whole.

**Conformity with State Statutes**: Any provision of this "coverage part" which, on the date it takes effect, is in conflict with the laws of the state where it is issued is amended to conform to the minimum requirements of said law.

**Statements Not Warranties**: Statements made by the "insured person" will be deemed representations and not warranties. No such statement will be used to void or reduce the insurance unless it is contained in a written, signed statement. If the statement was made by an "insured person", "we" must furnish a copy to the "insured person" or "his" beneficiary.

## SECTION VIII - CLAIMS

The following conditions apply to any claim made by or on behalf of an "insured person" under this "coverage part":

**Notice of Claim**: means notification to "us" or the "administrator". A claim must be given to "us" within 30 days of the date of "injury". If notice cannot be given within that time frame, it must be given as soon as reasonably possible, but in no event beyond the "medical accumulation period".

**Proof of Loss**: After "we" receive a "notice of claim", "we" may require that the following information be provided to "us" to satisfy the Proof of Loss requirements before "we" can pay any benefits that may be due:

1.  A copy of the "insured person's" driver logs for a period of time to include the date of "injury". If the

"insured person" is not required by the U.S. Department of Transportation to maintain driver logs, a copy of the "insured person's" bill of lading, manifest, or other documentation of their load assignment must be provided.

2.  Verification from the "insured person's" "contract carrier" that the "insured person" was "under dispatch" at the time of the "accident".

3.  "Medical documentation" that indicates "you" suffered an "injury" due to an "accident", including but not limited to the documentation from "your" first treatment related to the "injury".

4.  If the "insured person" is making a claim for Temporary Total Disability benefits, any and all "medical documentation" must be provided to "us" within 30 days of the date of "injury" to avoid a delay in benefits.

5.  A copy of the police report, if applicable.

6.  The results of any post accident drug and/or alcohol test.

7.  A recorded statement and/or examination under oath as often "we" feel necessary.  Utilizing one method does not exclude the use of the other.

Proof of Loss must be sent to "us" within 90 days after "we" receive a "notice of claim". If the claimant is not able to send Proof of Loss within that time, it may be sent as soon as reasonably possibly without affecting the claim. The additional time allowed cannot exceed one year unless the "insured person" is legally incapacitated.

**Time of Claim Payment**:  Benefits will be paid on a monthly basis after "we" receive the Proof of Loss.

**Physical Examination and Autopsy**: "We" have the right at "our" expense:

1.  to have a person whose "injury" is the basis of a claim examined by an "Independent Medical Examination" as often as "we" feel necessary. Failure to submit to an examination will result in an immediate termination of benefits; and

2.  to require an autopsy in the event of a claim for loss of life, except where forbidden by law.

**Legal Actions**: No one may bring a legal action against "us" under this "coverage part":

1.  until 60 days following the date Proof of Loss is sent to "us" and "we" have made a coverage determination; or

2. after 3 years following the date Proof of Loss is due.

The period allowed for bringing legal action shall be tolled from the date Proof of Loss is sent to "us" until the date a claim is denied in whole or in part.

**Assignment:**  Benefits payable under this "coverage part" may not be assigned.

The following condition applies to any claim made by or on behalf of a "contract carrier" as an additional insured or by an "insured person" under this "coverage part":

**Claim Administration Nonwaiver:** None of the following acts by "us", our claim representatives, or claim administrators shall be deemed to constitute a waiver of any coverage provision, limitation, exclusion or condition of this "coverage part" and/or "certificate" or of any right or defense that "we" may have thereunder:

1. Acknowledgement of receipt of notice of loss or claim under this "coverage part";

2. Furnishing forms for reporting a loss or claim, for providing information relative thereto, or for making Proof of Loss, or receiving or acknowledging receipt of any such forms or proofs, whether completed or uncompleted;

3. Investigating any loss or claim under this "coverage part" or engaging in negotiations regarding any such loss or claim;

4. Making any benefit or expense payment described in SECTION V – BENEFIT PROVISIONS, or making a commitment to any person or organization to make a payment of any such benefit or expense; or

5. Extending particular coverages or making payments to or on behalf of a "contract carrier" as an additional insured or "an insured person" which exceeds the coverages or benefits provided by this "coverage part".   Such "contract carrier" or "insured person" agrees to promptly reimburse "us" for any amounts we pay to or on behalf of that "contract carrier" or "insured person" which exceeds the coverage or benefits provided by this "coverage part".



015019 11/08

## TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

### GROUP VEHICLE MASTER POLICY
### MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT
### EXTENDED COVERAGE PART

### SCHEDULE OF BENEFITS

|  | **Plan YC7** |
|---|---|
| Combined Single Limit: | $1,000,000 |
| **Accidental Death and Dismemberment Benefit** | |
| Principal Sum: | $250,000 |
| **Temporary Total Disability Benefit** | |
| Waiting Period: | 7 days |
| Maximum Benefit Period: | 104 weeks |
| Maximum Weekly Benefit: | 70% of "average weekly earnings" up to $700 per week |
| Net Earnings Percentage | 33 ⅓ % |
| **Continuous Total Disability Benefit** | |
| Waiting Period: | 105 weeks |
| Maximum Benefit Period: | To age 65 |
| Maximum Weekly Benefit: | 70% of "average weekly earnings" up to $700 per week |
| **Accident Medical & Dental Expense Benefit** | |
| Medical Accumulation Period: | 104 weeks |
| Maximum Medical Benefit: | $1,000,000 |
| Maximum Dental Benefit: | $1,000 |
| **Paralysis Benefit** | |
| Principal Sum: | $250,000 |

**TG TRANSGUARD.**
INSURANCE COMPANY OF AMERICA, INC.

013012 04/15

# TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

IMPORTANT NOTICE –
THIS DOES NOT PROVIDE COVERAGE FOR SICKNESS.
THIS DOES NOT PROVIDE STATUTORY WORKERS' COMPENSATION COVERAGE

**GROUP VEHICLE MASTER POLICY**
**MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT COVERAGE PART**

### SECTION I – DEFINITIONS

As used in this "coverage part":

**Accident**: means an unforeseeable, unexpected and unintended event; something that could not be foreseen as a consequence of an undertaking and is definite to time and place.

**Act of Terrorism**: means a violent act or an act that is dangerous to human life, property, or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion.

**Administrator**: means any entity which adjusts or settles claims for an insurer or trust, in connection with insurance coverage or annuities.

**Aggravation of a Medical Condition**: means that a "pre-existing condition" or "degenerative disease or condition" is worsened, either temporarily or permanently, by an "injury".

**Association**: means the National Association of Independent Truckers, LLC.

**Average Weekly Earnings**: means:

1. for an "independent contractor", the "member's" "line haul revenue" multiplied by the net earnings percentage shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate", divided by 52; or

2. for an "independent contractor's" "scheduled co-driver, partner or helper", the gross earnings as reported by the "member" for the 52 weeks prior to

the date of "injury" for which a claim is made under this "coverage part", divided by 52.

**Beneficiary**: means any party other than the "insured person" who is eligible to receive benefits under this "coverage part".

**Certificate**: means a certificate of insurance or evidence of coverage issued by "us" setting forth a statement as to the insurance protection to which the "insured person" is entitled.

**Combined Single Limit**: means, with respect to any one "insured person", the total amount of benefits that are payable under this "coverage part" for or in connection with "injury" sustained as the result of any one "accident". When the "combined single limit" has been reached, no further benefits shall be payable under this "coverage part", with respect to that "insured person", for or in connection with "injury" sustained as the result of that one "accident".

**Contract Carrier**: means the motor carrier identified on the "member's" "certificate".

**Coverage Part**: means this MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT EXTENDED COVERAGE PART.

**Cumulative Injury**: means an injury not caused by a single event but arising from repeated or recurring events and/or trauma which comes on gradually and occurs only by reason of the effect of successive events or trauma.

**Degenerative Disease or Condition**: means a disease or condition in which the function or structure of the affected body part(s) increasingly deteriorates

over time, whether due to normal bodily wear or lifestyle choices.

**Dependent Child or Dependent Children**: means "your" unmarried children, including natural children from the moment of birth, step or foster children, or adopted children, under age 19 (age 19-23 if attending an accredited institution of higher learning on a full-time basis) and who relies on "you" for more than 50% of "his" support and is taken as a dependent on "your" Federal Income Tax Return.

It also includes any unmarried "dependent children", regardless of age, who are incapable of self-sustaining employment by reason of mental or physical incapacity, and who are primarily dependent on "your" support and maintenance as defined herein.

**Dispatch or Under Dispatch**: means the period of time during which an "insured person" performs services on behalf of "his" "contract carrier" while:

1. being en route to pick up a load or a trailer needed to pick up a load by the most direct route without deviation;

2. picking up a load;

3. en route to deliver a load by the most direct route without deviation;

4. unloading a load, or

5. en route returning from delivering a load by the most direct route, without deviation, to the place where the "vehicle" is normally garaged.

**He, His or Him**: means she, hers or her respectively when referring to a female.

**Home Health Care**: means nursing care and treatment of an "insured person" in "his" home as part of an overall extended treatment plan. To qualify, the plan must:

1. be established and approved in writing by the attending "physician";

2. be provided by a "hospital" certified to provide home health services or by a certified "home health care" agency;

3. commence within 7 days of discharge from a "hospital";

4. be preceded by a "hospital" confinement of 7 days or more; and

5. be "medically necessary" as determined by "us".

No benefits are payable for home care services by a person who is a member of the "insured person's" immediate family, or resides in the "insured person's" home.

**Hospital**: means an institution which meets these requirements:

1. it is licensed as a hospital;

2. it provides facilities for medical and surgical treatment either
   a. on its premises; or
   b. through formal written arrangements with other "hospitals";

3. it provides said treatment primarily to patients confined for more than 24 hours;

4. it provides 24-hour nursing services supervised by registered graduate nurses;

5. all treatments and services are supervised by "physicians"; and

6. it charges patients for its services.

In no event shall the term include an institution which is primarily a rest home, or home for the aged or which is primarily engaged in the care and treatment of drug addicts or alcoholics.

**Hospital Intensive Care**: means confinement in that section or portion of a "hospital" established for critically injured persons, which has full-time nurses or other skilled "hospital" employees in close attendance and equipment for treating the critically injured person.

**Independent Contractor**: means a person who:

1. owns or leases "his" own "vehicle";

2. is not an employee of "his" "contract carrier";

3. is not otherwise eligible for payments under Workers' Compensation or any similar law; and

4. is "under contract" with "his" "contract carrier".

**Independent Medical Examination**: means an examination by a "physician" who has not previously been involved in the "insured person"'s care. There is no ongoing doctor-patient relationship.

**Injury**: means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly, solely and independent of all other causes which:

1. occurs while the "insured person" is covered under this "coverage part"; and

2. arises solely out of and in the course of "his" regular occupation while "under dispatch" and "on duty" and "under contract" with the "contract carrier" named on "his" "certificate".

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

**Inpatient Services**: means services which will include:

1. "Hospital" room and board, but not more than the average semi-private room rate charged by the "hospital" for each day of "hospital" confinement, except that for "hospital intensive care", not more than twice the average semi-private rate charged by the "hospital" for each day of such confinement and for not more than a maximum of 15 days for any "accident"; and

2. "Hospital" services and supplies "medically necessary" for the care and treatment of patients (not to include personal comfort services such as radio, television, telephone, barber and beauty services).

**Insured Person**: means an "independent contractor" who is a "member" of the "association" to whom this Group Vehicle Master Policy is issued, who is at least age 18 and less than age 70, and who is a "certificate" holder under this "coverage part". An "insured person" may also include an "independent contractor's" "scheduled co-driver, partner or helper" who is at least age 18 and less than age 70, as evidenced by a "certificate".

**Line Haul Revenue**: means the gross revenue as reported by the "contract carrier" paid to the "insured person" for the 12 months prior to the date of "injury" for which a claim is made under this "coverage part".

**Medical Accumulation Period**: means the maximum period of time in which benefits will be paid by this "coverage part" as shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate". The "medical accumulation period" incepts on the date of the "accident" which caused the "injury".

**Medical Documentation**: means any and all records, including forms provided by "us" for completion, whether in written, electronic or other format, generated by a "physician", "hospital" or other health care provider.

**Medically Necessary**: means that a service or supply is necessary and appropriate for the diagnosis or treatment of an "injury" resulting from "accident" based on generally accepted current medical practice, as determined by "us". A service or supply will not be considered "medically necessary" if:

1. it is provided only as a convenience to the "insured person" or provider;

2. it exceeds (in scope, duration or intensity) that level of care which is needed to provide safe, adequate and appropriate diagnosis or treatment, or

3. it is part of a plan of treatment that is experimental, unproven or related to research protocol.

The fact that any particular "physician" may prescribe, order, recommend, or approve a service or supply does not, of itself, make the service or supply "medically necessary".

**Member**: means a person who is a member in good standing of the "association".

**Net Recovery**: means the "insured person's" total recovery, less the reasonable and necessary expenses, including attorney fees, actually expended in securing the recovery.

**Occurrence**: means an "accident" occurring while an "insured person" is covered under this "coverage part", including continuous or repeated exposure to the same general harmful conditions, that results in "injury" to that "insured person".

**Occupational Disease**: means a condition, illness or injury, resulting over time, associated with a particular occupation or industry.

**On Duty**: means on-duty time as defined in the Department of Transportation regulations 49 C.F.R. § 395.2 as it relates to the completion of drivers' logs.

**Outpatient**: means a person who receives treatment at a "hospital", clinic or doctor's office without being hospitalized.

**Physician**: means a practitioner of the medical arts who is acting within the lawful scope of "his" license either as a doctor of medicine or a doctor of osteopathy or as such other practitioner as "we" by law must recognize as a physician legally qualified to render such treatment.

The "physician" cannot be the "insured person" or related to the "insured person" by blood, marriage or civil union or reside in the "insured person's" home.

**Pre-existing Condition:** means any illness, disease, or medical condition that existed prior to the "injury", including but not limited to "degenerative disease" or any prior injury, whether known or unknown to "us" or the "insured person".

**Reasonable and Customary Charge:** means a charge which is not more than is charged when there is no insurance; and is not more than the prevailing charge in the locality for a like service or supply and not more than the allowable charge under the Workers' Compensation fee schedule, if a Workers' Compensation fee schedule exists in the state where the service or supply is received.

**Related Disabilities:** means successive periods of "total disability", unless:

1. the latter "total disability" results from a separate "accident", or

2. the periods of "total disability" are separated by at least 90 days.

**Scheduled Co-Driver, Partner or Helper:** means a person on file with "us" who has been contracted by an "independent contractor" and coverage afforded to said person is evidenced by a "certificate".

**Serious Physical Injury:** means for purposes of excluding loss resulting from an "act of terrorism":

1. physical injury that involves a substantial risk of death;
2. protracted and obvious physical disfigurement; or
3. protracted loss of or impairment of the function of a bodily member or organ.

**Skilled Nursing Care Facility:** means an institution operating pursuant to law which is engaged in providing, for compensation, skilled nursing care and related services, including physical therapy services, to persons convalescing from illness or "injury" and who are confined for this purpose.

**Social Security Disability Award:** means Social Security disability benefits for which the "insured person" has submitted a claim and which have been approved for payment by the Social Security Administration directly and solely as a result of an "injury" and independent of all other causes and documentation of such award has been provided to "us".

**Spouse:** means the "insured person's" legal spouse as determined by the laws of the "insured person"'s state of domicile.

**Stop Work:** means strike, lockout or walkout.

**Totally Disabled or Total Disability means:**

1. for purposes of the TEMPORARY TOTAL DISABILITY BENEFIT Provision only:

   a. for the "insured person's" first 52 weeks of "total disability", that the "insured person" is deemed by a "physician", to be unable to perform, due to "injury", the material and substantial duties of "his" regular occupation, and is not engaged in any occupation for wage or profit.

   b. for the "insured person's" period of "total disability" beyond 52 weeks, that the "insured person" is deemed by a "physician" to be unable to perform, due to "injury", the material and substantial duties of any occupation for which "he" is reasonably fitted by education, training or experience, and is not engaged in any occupation for wage or profit.

2. for purposes of the CONTINUOUS TOTAL DISABILITY BENEFIT Provision only, that the "insured person" is deemed by a "physician" to be permanently unable to perform, due to "injury", the material and substantial duties pertaining to any occupation for which "he" is or becomes qualified by education, training or experience, is not engaged in any occupation for wage or profit, and has been granted a total "Social Security Disability Award" directly and solely as a result of an "injury" and independent of all other causes.

**Under Contract:** means providing services in performing the substantial and material duties of "his" regular occupation as specified in "his" written "independent contractor" or owner/operator contract with the "contract carrier".

For a "member's" "scheduled co-driver, partner or helper" means physically working on behalf of and at the direction of that "member".

**Under the Influence of Alcohol:** means a person's level of alcohol in "his" blood equals or exceeds the amount where a person is presumed, under the law of the locale in which the "injury" is sustained (or in the absence of such law, the level indicated by the State of Illinois), to be under the influence of alcohol or intoxicating liquor if operating a motor vehicle,

regardless of whether "he" is in fact operating a motor vehicle when the "injury" occurs.

**Vehicle**: means a truck, tractor, tractor-trailer, trailer, semi-trailer, or van used primarily in "your" business, but does not include mobile equipment or a vehicle that is a private passenger or recreational vehicle.

**Waiting Period**: means for an "insured person" who becomes "totally disabled" while insured under this "coverage part", the period of time the "insured person" must be "totally disabled" before "total disability" benefits become payable. The "waiting period" is shown on the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

**We, Us, or Our**: means TRANSGUARD INSURANCE COMPANY OF AMERICA, INC. or its authorized representatives.

**Written Request**: means the "association" application in its entirety, or any form required by "us", which is requesting coverage under this "coverage part".

**You or Your**: means the "insured person" or the legal estate and/or "beneficiary" of an "insured person" who is deceased.

### SECTION II - ELIGIBILITY AND PARTICIPATION

**ELIGIBLE PERSONS:** Persons eligible for insurance under this "coverage part" are the following:

a. "Members" in good standing of the "association" who:

    a. are "under contract";

    b. are not "totally disabled"; and

    c. are age 18 or over, but have not attained age 70.

b. A "member's" "scheduled co-driver, partner or helper"; provided:

    a. they work for a "member" covered by this "coverage part";

    b. they are not "totally disabled"; and

    c. they are age 18 or over, but have not attained age 70.

**Age Limit**: No individual shall be eligible for insurance beyond age 70.

### PARTICIPATION

**PARTICIPATION:** A "member" may choose to participate in this insurance plan by completing a "written request" for insurance. A "member" may also make a "written request" to cover "his" "scheduled co-driver, partner or helper". All "written requests" must be approved by "us" and in no event will coverage be effective until a "certificate" has been issued.

### SECTION III - INSURED PERSONS – COVERAGE PERIOD

### EFFECTIVE DATE OF COVERAGE

**Effective Date**: "We" will issue a "certificate" to the "member" indicating "his" effective date under the "coverage part" and in no event will coverage be effective until a "certificate" has been issued.

**Scheduled Co-Driver, Partner or Helper Coverage Period**: The period of coverage for a "scheduled co-driver, partner or helper" will be only for that period of time in which the "scheduled co-driver, partner or helper" is contracted by the "member" (provided the "member's" insurance is effective) for a specified job(s) and is physically working on behalf of and at the direction of the "member".

### SECTION IV - CHANGE IN COVERAGE

Request for change in coverage: A "member" may request a change in "his" coverage if "he" is eligible for such change in coverage. The change will become effective on the date evidenced by a "certificate".

An "insured person" may name a beneficiary for loss of life benefits payable under the Accidental Death and Dismemberment Benefits Provision in the event "he" dies without a surviving "spouse" or "dependent children" Changes to the beneficiary designation for loss of life benefits under the Accidental Death and Dismemberment benefit provision must be requested by providing "us" with a completed Change of Beneficiary form.

### SECTION V - BENEFIT PROVISIONS

The benefits for the coverage provided under this "coverage part" are described in the following benefit provisions. "We" will pay the benefits set forth below when "we" receive due proof that:

1. the "insured person" sustained an "injury" in an "accident"; and

2. the "injury" occurred while performing the usual and customary duties of "his" occupation while

"on duty", "under dispatch" for and "under contract" to "his" "contract carrier".

All benefits payable under this "coverage part" will be subject to the "combined single limit" shown on the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

Any overpayment of any benefits paid by "us" pursuant to this "coverage part" may be recouped by "us" by: (a) suspension of any benefits pursuant to this "coverage part", including but not limited to medical benefit claims received but not yet paid; and/or (b) a demand by "us" for reimbursement by the "insured person" to "us" for any such overpayment.

### ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS PROVISION

"We" will pay the Benefit Payable opposite the Covered Loss as shown on the Table of Covered Losses listed below when "we" receive due proof that the "insured person's" dismemberment or loss of life occurred prior to the expiration of the "medical accumulation period" shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate". The amount of the Principal Sum applicable to each "insured person" is shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

For benefits to become payable under this benefit provision, death or dismemberment must be directly and solely as a result of an "injury" and independent of all other causes, including but not limited to any "pre-existing condition" to include but not be limited to diabetes or any heart-related condition.

### TABLE OF COVERED LOSSES

**For covered loss of:**
**Benefit Payable:**

| | |
|---|---|
| Life | Principal Sum |
| Both hands or both feet or sight of both eyes | Principal Sum |
| One hand and one foot | Principal Sum |
| Either hand or foot and sight of one eye | Principal Sum |
| Either hand or foot | One-Half Principal Sum |
| Sight of one eye | One-Half Principal Sum |
| Loss of one thumb | $2,000 |
| Loss of three fingers or three toes | $2,000 |
| Loss of two fingers or two toes | $1,500 |
| Loss of one finger or one toe | $1,250 |

Loss, with regard to:

1. hands and feet means actual, permanent and complete physical separation of a hand at or above the wrist, or of a foot at or above the ankle.

2. sight means entire and irrecoverable loss thereof, or diminution of vision corrected to 20/200 or less after corrective lenses and/or corrective surgery.

3. thumb, finger or toe means actual, permanent and physical separation resulting in actual bone loss.

Benefits for loss of life under this benefit provision shall be paid in a lump sum of $25,000 followed by payments of $1,000 per month until the Principal Sum has been paid, subject to the terms and conditions of this provision.

All dismemberment benefits will be paid in one lump sum.

**Benefit Limitations:**

If more than one covered loss shown on the Table of Covered Losses results from the same "accident", only one amount, the largest, will be payable.

The benefits payable under this benefit provision will be reduced by any Temporary Total Disability and Continuous Total Disability benefits paid or payable under this "coverage part" for the same "injury".

**Death benefit payments:**

If "you" have a surviving "spouse", "we" will pay the benefits for loss of life to "your" surviving "spouse".

If "you" are not survived by a "spouse", or if "your" "spouse" dies or remarries, "we" will pay or continue to pay the benefits for loss of life to "your" surviving "dependent children", if any. If there is more than one surviving "dependent child", the benefits for loss of life will be distributed equally among "your" surviving "dependent children".

If "you" do not have a surviving "spouse" or "dependent children", benefits for loss of life will be limited to $25,000 and will be paid to the "insured person's" named beneficiary on file with "us". In the event a beneficiary has not been named or the named beneficiary does not survive the "insured person", "we" will pay the $25,000 to the "insured person's" estate.

Any claim for death benefit must be submitted within the "medical accumulation period".

Benefits for loss of life will end on the earliest of the following dates:

1. the date "your" "spouse" dies or remarries, if there are no "dependent children";

2. the date the last "dependent child" dies or no longer meets the definition of "dependent child" under this "coverage part";

3. the date the Principal Sum has been paid; or

4. the date $25,000 has been paid, if "you" do not have a surviving "spouse" or "dependent children".

"We" may require satisfactory proof be submitted to "us" as often as "we" deem necessary that the "spouse" and/or "dependent children" continue to be eligible for benefits as defined by this "coverage part".

If a benefit is payable to a "dependent child" who is a minor, "we" will pay the benefit to the child's legal guardian.

### PARALYSIS BENEFIT PROVISION

"We" will pay the Benefit Payable opposite the Type of Paralysis as shown on the Table of Covered Losses listed below when "we" receive due proof that the "insured person's" Paralysis occurred prior to the expiration of the "medical accumulation period" shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate". The amount of the Principal Sum applicable to each "insured person" is shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

For benefits to become payable under this benefit provision, paralysis must be due to "injury". If paralysis would not have occurred but for a separate medical condition, including but not limited to a stroke, coverage under this benefit provision is excluded.

### TABLE OF COVERED LOSSES

| Type of Paralysis: | Benefit Payable: |
|---|---|
| Quadriplegia | Principal Sum |
| Paraplegia | 75% of Principal Sum |
| Hemiplegia | 50% of Principal Sum |
| Uniplegia | 25% of Principal Sum |

Quadriplegia: means the complete and irreversible paralysis of both upper and both lower limbs.

Paraplegia: means the complete and irreversible paralysis of both lower limbs.

Hemiplegia: means complete and irreversible paralysis of the upper and lower limbs of the same side of the body.

Uniplegia: means the complete and irreversible paralysis of one limb.

### Benefit Limitations:

If more than one covered loss shown on the Table of Covered Losses results from the same "accident", only one amount, the largest, will be payable.

The benefits payable under this benefit provision will be reduced by any Temporary Total Disability and Continuous Total Disability benefits paid or payable under this "coverage part".

### TEMPORARY TOTAL DISABILITY BENEFIT PROVISION

"We" will pay the Weekly Benefit described below to the "insured person" when "we" receive due proof that:

1. "he" is "totally disabled"; and

2. such "total disability":

   a. began before the "insured person" attained age 70;

   b. began within 90 days   from the date of "accident" causing "injury";

   c. continued without interruption for at least the "waiting period" (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate"); and

   d. is due to "injury"

The Weekly Benefit which applies to the "insured person" will:

1. become payable at the end of the "waiting period";

2. continue to be payable while the "insured person" is "totally disabled"; and

3. end on the earliest of the following dates:

   a. the date the "insured person's" "total disability" ends;

   b. the date the "insured person" ceases to be under the regular care of a "physician", unless "he" has reached maximum medical improvement;

   c. the date the Maximum Benefit Period (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") is exhausted;

d. the date the "insured person" attains Age 70; or

e. the date the "insured person" dies.

The Weekly Benefit will not be payable during any period of time in which:

a. The "insured person" is knowingly and willfully not following the medical treatment plan prescribed by "his" treating "physician", unless the prescribed treatment is a surgical or invasive procedure;

b. The treatment is delayed while the "insured person" receives treatment for a condition not arising from a covered "injury

c. Treatment is delayed due to a "pre-existing condition"

If an "insured person's" "total disability" ends and the "insured person" has another period of "total disability" solely resulting from the same "injury", "we" will pay the Weekly Benefit for the Related Disability unless the periods of "total disability" are separated by 90 days or more, in which case no Temporary Total Disability benefits will be paid.

For purposes of calculating the Maximum Payment Period, "related disabilities" shall be counted toward one period of "total disability".

**Weekly Benefit Calculation:**

The Weekly Benefit amount payable for the first 52 weeks of "total disability" shall be the percentage of the "insured person's" "average weekly earnings" up to the Maximum Weekly Benefit (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") reduced by 100% of any "Social Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits not received prior to the "injury".

For weeks 53-104 (for Plans with more than a 52-week Maximum Payment Period), the Weekly Benefit shall be the percentage of the "insured person's" "average weekly earnings" up to the Maximum Weekly Benefit (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") reduced by 100% of any "Social Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits not received prior to the "injury".

Any benefits for less than a week of disability will be paid at the rate of 1/7th of the Weekly Benefit amount per day of compensable "total disability".

The minimum Weekly Benefit will be $150.00 (reduced by 100% of any "Social Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits not received prior to the "injury"), provided the "insured person" has been continuously providing services to the "contract carrier" for the 60 days immediately prior to a covered "injury".

## CONTINUOUS TOTAL DISABILITY BENEFIT PROVISION

"We" will pay the benefit described to an "insured person" when "we" receive due proof that:

1. "He" is "totally disabled";

2. "He" has received a "Social Security Disability Award" directly and solely as a result of an "injury" and independent of all other causes, and such "total disability":

   a. began within 6 months from the date of "accident" causing "injury";

   b. continued without interruption for at least the "waiting period" (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate");

   c. is reasonably expected to continue without interruption until the "insured person" dies; and

   d. the "Total Disability" is authorized by a "physician"; and

   e. is confirmed via an "Independent Medical Examination"; and

3. The "insured person" has been granted a Social Security Award directly and solely as a result of the "injury" within one year from the end of the "medical accumulation period"

**Weekly Benefit Calculation:**

The Weekly Benefit amount payable shall be the percentage of the "insured person's" "average weekly earnings" up to the Maximum Weekly Benefit (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") reduced by 100% of any "Social

Security Disability Award", Workers' Compensation benefits, no-fault benefits, and any other income and/or disability benefits.

Benefits will be paid in monthly installments that will:

1.  begin to be payable at the end of the "waiting period";

2.  continue to be payable while the "insured person" is "totally disabled"; and

3.  end on the earliest of the following dates:

    a.  the date the "insured person's" "total disability" ends;

    b.  the date the Maximum Benefit Period (shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate") is exhausted;

    c.  the date the "insured person" dies; or

    d.  the date the "insured person's" "Social Security Disability Award" ceases.

Any benefits for less than a week of disability will be paid at the rate of 1/7th of the Weekly Benefit amount per day of compensable "total disability".

### ACCIDENT MEDICAL & DENTAL EXPENSE BENEFIT PROVISION

If an "insured person" incurs "covered expenses" resulting from an "accident" which caused an "injury" while insured under this "coverage part", "we" will pay the "reasonable and customary charge" of such "covered expenses" incurred within the "medical accumulation period", but not more than the maximum benefit, while insured, for Accident Medical and Dental Expense shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".

A "covered expense" will be deemed to have been incurred when the service or supply is rendered.

"We" will issue payments for a "covered expense" on behalf of the "insured person" directly to the "physician", "hospital" or medical service provider who provided such service or supply. If the "insured person" provides "us" with proof that "he" has already paid for the "covered expense", "we" will issue payment to the "insured person".

"We" will not pay for any medical or dental expense that is not submitted to "us" for payment within 2 years from the date the service or supply is rendered.

**Covered Expense**: means a "covered medical expense" or "covered dental expense" that is incurred by an "insured person" as a direct result of an "injury", within the "medical accumulation period".

A medical or dental expense will be a "covered expense" under this "coverage part" only if:

1.  it is incurred on the recommendation or approval of a "physician" or dentist attending the "insured person";

2.  it is "medically necessary"; and

3.  the provider of the service is acting within the scope of "his" license.

**Covered Medical Expense**: means the "reasonable and customary charges":

1.  for a professional ambulance service on the date of "accident" to a "hospital", required as a result of an "injury", subject to a maximum payment of $1,000.00.

2.  for a medical air ambulance on the date of "accident" for service to a "hospital" required as a result of an "injury" subject to a maximum payment of $10,000.00.

3.  for medical care by a "physician" or dentist.

4.  for the initial supply but not replacement of splints, braces, artificial limbs and artificial eyes.

5.  for the rental of oxygen equipment, "hospital" beds, wheelchairs and other durable medical equipment not to exceed the purchase price of such equipment.

6.  for a "hospital" for "outpatient" and "inpatient" services" and for emergency room services, but only when emergency medical treatment is needed on an urgent basis.

7.  for a licensed practical nurse (LPN), if under the supervision of a registered nurse (RN), for "home health care" which follows a 7 day period of "hospital" confinement resulting from a covered "injury" due to "accident" and which is prescribed by a "physician".

8.  for a "skilled nursing care facility" for "inpatient" services" which follow a period of "hospital" confinement resulting from a covered "injury" due to "accident" of at least 5 days, provided the confinement in the "skilled nursing care facility" results from the need for further and indefinite

medical care and the attending "physician" certifies the confinement is "medically necessary".

9. for rehabilitative spinal manipulation therapy or other rehabilitative chiropractic services or treatment, subject to a maximum payment of $1,000.00.

10. for physical therapy on an "outpatient" basis. Treatment shall be treated as a Covered Medical Expense up to a maximum of 36 visits.

11. for occupational therapy on an "outpatient" basis. Treatment shall be treated as a Covered Medical Expense up to a maximum of 10 visits.

12. for prescription drugs which are "medically necessary" for the treatment of a specific covered "injury" and have been prescribed in writing by a "physician". When generic prescription drugs are available, the most "we" will pay is the cost of the generic prescription drugs.

A "covered medical expense" does not include and no benefits will be payable for:

1. prosthetic or orthopedic appliances except as required for the replacement of natural parts of the body;

2. services of a Federal, Veterans, State or Municipal "hospital" or other health care provider for which the "insured person" is not liable for payment;

3. cosmetic plastic or restorative surgery unless "medically necessary" for the treatment of an "injury" resulting from a covered "accident";

4. eye refractions, eye glasses or contact lenses;

5. hearing aids;

6. work hardening programs;

7. medical treatment received outside of the United States, except for treatment on an emergency basis or treatment that has been approved by "us";

8. medical treatment for mental, functional nervous or emotional disorders without demonstrable organic cause;

9. emergency room services at a "hospital", unless emergency medical treatment is needed is needed on an urgent basis

10. Functional Capacity Evaluation

11. Pain Management; or

12. Medication available without a prescription, also referred to as over-the-counter medication.

**Covered Dental Expense**: means the "reasonable and customary charge" for the care, treatment, or replacement due to "accident" of sound natural teeth provided such care is recommended and given by a dentist operating within the scope of "his" license. A "Covered dental expense" payable shall be limited to the Maximum Dental Benefit per "injury" shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".


## SECTION VI - GENERAL EXCLUSIONS AND LIMITATIONS

The following General Exclusions and Limitations apply to all benefits under this "coverage part".

This "coverage part" does not cover and no benefits will be paid for any "injury", loss or claim caused or contributed to by or resulting from:

1. sickness, disease or bacterial infection (except pyogenic infection which results from an accidental bodily "injury", or bacterial infection which results from the accidental ingestion of a contaminated substance);

2. suicide, attempted suicide or intentionally self-inflicted "injury" while sane or insane;

3. "injuries" sustained in an "accident" occurring prior to the "insured person's" 18th birthday or an "accident" occurring after the "insured person's" 70th birthday;

4. any loss that was not the result of an "accident" causing "injury" sustained while "he" is engaged in the usual and customary duties of "his" occupation while on duty, "under dispatch" for and "under contract" to "his" "contract carrier";

5. any loss sustained by the "insured person" which was the result of an "accident" causing "injury" that was sustained while "he" is being transported to or from "his" workplace, unless "he" is being transported in a "vehicle" that is primarily used in the "insured person's" occupation;

6. any "accident" occurring while the "insured person" is "under the influence of alcohol" or is otherwise in violation of Federal Department of Transportation Regulation 49 CFR §392.5;

7. any loss occurring while the "insured person" is in violation of Federal Department of Transportation Regulation 49 CFR §392.4 due to the presence of drugs into their system;

8. the "insured person's" commission of a criminal or felonious act, or any attempt thereat;

9. the "insured person's" riding or driving in any kind of race;

10. any "injury" for which benefits are available to the "insured person" under any Workers' Compensation Act or similar law, or under any policy providing Workers' Compensation or Employer's Liability benefits or coverage;

11. any condition for which medical advice or treatment was received by the "insured person" during the twelve months prior to the effective date of the "insured person's" coverage shown on "his" "certificate". In no event shall this exclusion apply to loss incurred or disability commencing after the earlier of:

    a. the end of a continuous period of twelve months commencing on or after the effective date of the "insured person's" coverage during which "he" has received no medical advice or treatment in connection with such disease or physical condition; or

    b. the end of the two-year period commencing on the effective date of the "insured person's" coverage;

12. any charges for medical care furnished by any of the following persons: the "insured person's" "spouse", parent, child, grandparent, brother, sister, parent-in-law or any other person residing in the "insured person's" home;

13. care that is not "medically necessary";

14. war (declared or undeclared), or any act thereof;

15. (an) "act(s) of terrorism" if the "act(s) of terrorism" result(s) in industry-wide insured losses that exceed 25 million dollars for related incidents that occur within a 72 hour period or fifty or more persons sustain death or "serious physical injury" for related incidents that occur within a 72 hour period;

16. mental, functional nervous or emotional disorders not arising directly and solely as a result of a traumatic head "injury" and independent of all other causes;

17. "cumulative injury";

18. "occupational disease";

19. any "injury" for which benefits are payable under United States Longshoremen's and Harbor Workers' Compensation Act or Federal Merchant Marine Act, including the Jones Act;

20. radioactive contamination whether suffered directly or indirectly;

21. a condition, malady or disorder involving the heart, its arteries and/or vessels, or any portion thereof, including that resulting from stress, strain or overexertion, which is not accompanied by and the result of an "accident" resulting in "injury" of external origin;

22. any loss occurring while the "insured person", covered "scheduled co-driver, partner or helper" is operating a "vehicle" without a valid license appropriate for the type of "vehicle" being driven;

23. treatment for alcoholism or drug abuse;

24. any "injury" arising out of a "stop work" action;

25. a sickness, disease, medical condition or "aggravation of a medical condition", including but not limited to "degenerative disease or condition" or "pre-existing condition";

26. the "insured person" performing normal maintenance or repairs on "his" "vehicle" while not "under dispatch"; or

27. hernias or hemorrhoids.

## SECTION VII – CONDITIONS

The following general conditions apply to this "coverage part":

**Modification**: This "coverage part" may be modified prospectively by rider, endorsement or amendment. "We" will give the "member" thirty (30) days prior notice of any such modifications; provided however, that consent of the Named Insured to any modification shall not be required.

**Time Periods**: All time periods, including this "coverage part", begin and end at 12:01 A.M., Standard Time at the Insured's Person's mailing address.

**Workers' Compensation**: This "coverage part" does not satisfy any legal requirement for Workers' Compensation.

A "member" is issued a "certificate" under this "coverage part" based on the representation of the "insured person" that "he" is an "independent contractor" and not an employee. This "coverage part" will not provide coverage where Workers' Compensation benefits are payable or claimed.

If Workers' Compensation benefits are claimed, found due, payable, settled with or without a finding of coverage or owed to an "insured person" for the same "injury" for which benefits would be payable under this "coverage part", then no benefits shall be paid under this "coverage part" for the "injury". If benefits have been paid for the "injury" under this "coverage part", they shall be fully reimbursed to "us" by the "insured person" without reduction for costs or collection of attorney's fees.

If the "insured person" is deemed to be an employee by final administrative order or judicial decree, contrary to the "insured person's" representations to "us" that "he" is an "independent contractor", the amount paid by "us" shall act as a lien on any Workers' Compensation benefits due the "insured person" and permission for that lien is granted by the "insured person". "We" shall be entitled to full rights of offset against any other monies owed the "insured person" to satisfy that lien.

If the "insured person" is deemed to be an "independent contractor" by final administrative order or judicial decree no benefits are owed under this "coverage part" as a result of a prior Workers' Compensation filing.

**Right of Recovery:** If another party is responsible for the "injury" for which benefits are paid by "us", "you" may pursue "your" remedies against such parties, and "we" will continue payment of benefits subject to the following terms and conditions:

1.  Assignment and Lien Rights

    "You" automatically assign to "us" any right of recovery "you" may have against any third party responsible for "your" "injury", to the extent of benefits paid or payable, by accepting benefits under this "coverage part". "You" must immediately notify "us" of any third party who "you" believe is responsible for "your" "injury" and any action "you" have taken to recover from that third party. "You" must do everything necessary to secure "our" rights and must do nothing after the "accident" to impair them. "We" shall have a lien on the amounts collected by "you" from such third parties and their insurers to the extent of all benefits paid or payable to "you" regardless if the claim for benefits has been submitted to us. The amount collected by "you" to which "our" lien shall attach shall be "your" total recovery, however obtained and whether or not such recovery is described as payment of loss for which benefits were paid under this "coverage part". "We" shall also be entitled to "our" pro-rata

share of any interest collected on the "net recovery".

2.  Payment to "us"

    The lien created and "your" obligation under that lien to reimburse "us" for benefits paid shall be discharged upon "our" receipt of "your" "net recovery" to the extent of benefits paid under this "coverage part" and "our" pro-rata share of any interest collected. Any remaining balance of the "net recovery" shall be paid to "you" but shall serve as a credit against any future or ongoing benefits otherwise payable arising out of "your" "injury".

3.  Compromise

    Any settlement of "your" claim against a third party that would result in a "net recovery" for an amount that is less than the total amount of benefits paid and reasonably expected to be paid in the future shall be made only with "our" prior written approval. Failure to obtain "our" prior approval will immediately terminate "our" obligation under this "coverage part" for the payment of benefits resulting "your" "injury". "our" lien rights shall survive and do not terminate.

4.  Subrogation

    "We" shall be subrogated to any right of recovery "you" may have against others to the extent of "our" benefits paid and payable together with "our" expenses of recovery and "we" may commence "our" own action under this right of subrogation. In such event, the recovery will be distributed in the same manner as a recovery by "you".

"We" are entitled to a first priority right of reimbursement and subrogation regardless of whether "you" recover all of "your" damages or whether "you" are made whole.

**Conformity with State Statutes:** Any provision of this "coverage part" which, on the date it takes effect, is in conflict with the laws of the state where it is issued is amended to conform to the minimum requirements of said law.

**Statements Not Warranties:** Statements made by the "insured person" will be deemed representations and not warranties. No such statement will be used to void or reduce the insurance unless it is contained in a written, signed statement. If the statement was made by an "insured person", "we" must furnish a copy to the "insured person" or "his" beneficiary.

**SECTION VIII - CLAIMS**

The following conditions apply to any claim made by or on behalf of an "insured person" under this "coverage part":

**Notice of Claim**: means notification to "us" or the "administrator". A claim must be given to "us" within 30 days of the date of "injury". If notice cannot be given within that time frame, it must be given as soon as reasonably possible, but in no event beyond the "medical accumulation period".

**Proof of Loss:** After "we" receive a "notice of claim", "we" may require that the following information be provided to "us" to satisfy the Proof of Loss requirements before "we" can pay any benefits that may be due:

1.  A copy of the "insured person's" driver logs for a period of time to include the date of "injury". If the "insured person" is not required by the U.S. Department of Transportation to maintain driver logs, a copy of the "insured person's" bill of lading, manifest, or other documentation of their load assignment must be provided.

2.  Verification from the "insured person's" "contract carrier" that the "insured person" was "under dispatch" at the time of the "accident".

3.  "Medical documentation" that indicates "you" suffered an "injury" due to an "accident", including but not limited to the documentation from "your" first treatment related to the "injury".

4.  If the "insured person" is making a claim for Temporary Total Disability benefits, any and all "medical documentation" must be provided to "us" within 30 days of the date of "injury" to avoid a delay in benefits.

5.  A copy of the police report, if applicable.

6.  The results of any post accident drug and/or alcohol test.

7.  A recorded statement and/or examination under oath as often "we" feel necessary.  Utilizing one method does not exclude the use of the other.

Proof of Loss must be sent to "us" within 90 days after "we" receive a "notice of claim". If the claimant is not able to send Proof of Loss within that time, it may be sent as soon as reasonably possibly without affecting the claim. The additional time allowed cannot exceed one year unless the "insured person" is legally incapacitated.

**Time of Claim Payment**:  Benefits will be paid on a monthly basis after "we" receive the Proof of Loss.

**Physical Examination and Autopsy**: "We" have the right at "our" expense:

1.  to have a person whose "injury" is the basis of a claim examined by an "Independent Medical Examination" as often as "we" feel necessary. Failure to submit to an examination will result in an immediate termination of benefits; and

2.  to require an autopsy in the event of a claim for loss of life, except where forbidden by law.

**Legal Actions**: No one may bring a legal action against "us" under this "coverage part":

1.  until 60 days following the date Proof of Loss is sent to "us" and "we" have made a coverage determination; or

2.  after 3 years following the date Proof of Loss is due.

The period allowed for bringing legal action shall be tolled from the date Proof of Loss is sent to "us" until the date a claim is denied in whole or in part.

**Assignment**:  Benefits payable under this "coverage part" may not be assigned.

The following condition applies to any claim made by or on behalf of a "contract carrier" as an additional insured or by an "insured person" under this "coverage part":

**Claim Administration Nonwaiver**: None of the following acts by "us", our claim representatives, or claim administrators shall be deemed to constitute a waiver of any coverage provision, limitation, exclusion or condition of this "coverage part" and/or "certificate" or of any right or defense that "we" may have thereunder:

1.  Acknowledgement of receipt of notice of loss or claim under this "coverage part";

2.  Furnishing forms for reporting a loss or claim, for providing information relative thereto, or for making Proof of Loss, or receiving or acknowledging receipt of any such forms or proofs, whether completed or uncompleted;

3. Investigating any loss or claim under this "coverage part" or engaging in negotiations regarding any such loss or claim;

4. Making any benefit or expense payment described in SECTION V – BENEFIT PROVISIONS, or making a commitment to any person or organization to make a payment of any such benefit or expense; or,

5. Extending particular coverages or making payments to or on behalf of a "contract carrier" as an additional insured or "an "insured person" which exceeds the coverages or benefits provided by this "coverage part".   Such "contract carrier" or "insured person" agrees to promptly reimburse "us" for any amounts we pay to or on behalf of that "contract carrier" or "insured person" which exceeds the coverage or benefits provided by this "coverage part".



015020 11/08

## TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

### GROUP VEHICLE MASTER POLICY
### MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT
### COVERAGE PART

### SCHEDULE OF BENEFITS

|  | Plan YC7 |
|---|---|
| Combined Single Limit: | $1,000,000 |
| **Accidental Death and Dismemberment Benefit** | |
| Principal Sum: | $250,000 |
| **Temporary Total Disability Benefit** | |
| Waiting Period: | 7 days |
| Maximum Benefit Period: | 104 weeks |
| Maximum Weekly Benefit: | 70% of "average weekly earnings" up to $700 per week |
| Net Earnings Percentage | 33 ⅓ % |
| **Continuous Total Disability Benefit** | |
| Waiting Period: | 105 weeks |
| Maximum Benefit Period: | To age 65 |
| Maximum Weekly Benefit: | 70% of "average weekly earnings" up to $700 per week |
| **Accident Medical & Dental Expense Benefit** | |
| Medical Accumulation Period: | 104 weeks |
| Maximum Medical Benefit: | $1,000,000 |
| Maximum Dental Benefit: | $1,000 |
| **Paralysis Benefit** | |
| Principal Sum: | $250,000 |



POLICY NUMBER:

COMMERCIAL AUTO
014080 06/09

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONTRACT DRIVER ENDORSEMENT

This endorsement modifies insurance provided under the following:

MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT COVERAGE PART

The provisions of the Coverage Part apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

Attachment of this endorsement to the policy revises **SECTION I – DEFINITIONS** of the referenced Coverage Part as follows:

The following definitions are added:

**Contract Driver:** means a person on file with "us" who:

1.  has been contracted by a "fleet owner" to drive a "vehicle" owned or leased by the "fleet owner";

2.  is paid on a 1099 and not a W2;

3.  is not an employee of the "fleet owner" or "his" "contract carrier"; and

4.  coverage afforded to said person is evidenced by a "certificate".

**Fleet Owner**: means an "independent contractor" on file with "us" whose vehicle is driven by a "contract driver" who is a "certificate" holder under this "coverage part".

The following definitions replace definitions previously included for these terms:

**Average Weekly Earnings**: means:

1.  for an "independent contractor", the "member's" "line haul revenue" multiplied by the net earnings percentage shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate", divided by 52; or

2.  for an "independent contractor's" "scheduled co-driver, partner or helper", or "contract driver", the gross earnings as reported by the "independent contractor" for the 52 weeks prior to the date of "injury" for which a claim is made under this "coverage part", divided by 52.

**Injury:** means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly and independently of all other causes which:

1. occurs while the "insured person" is covered under this "coverage part"; and

2. arises solely out of and in the course of "his" regular occupation while "under dispatch" and on duty for the "contract carrier" named on "his" "certificate".

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

**Insured Person:** means an "independent contractor" who is a "member" of the "association" to whom this Group Vehicle Master Policy is issued, who is at least age 18 and less than age 70, and who is a "certificate" holder under this "coverage part". An "insured person" may also include an "independent contractor's" "scheduled co-driver, partner or helper" or "contract driver" who is at least age 18 and less than age 70, as evidenced by a "certificate".

**Under Contract:**

For a "member" who is not a "contract driver" means actively working at least 30 hours each week performing the substantial and material duties of "his" regular occupation as specified in his written "independent contractor" or owner/operator contract with "his" "contract carrier".

For a "member" who is a "contract driver" means actively working at least 30 hours each week performing the substantial and material duties of "his" regular occupation working on behalf of and at the direction of a "fleet owner".

For a "member's" "scheduled co-driver, helper or partner" means physically working on behalf of and at the direction of that "member".

Attachment of this endorsement revises **SECTION V – Benefit Provisions** of the referenced Coverage Part to read as follows:

**SECTION V – Benefit Provisions**

The benefits for the coverage provided under this "coverage part" are described in the following benefit provisions. "We" will pay the benefits set forth below when "we' receive due proof that:

1. the "insured person" sustained an "injury" in an "accident"; and

2. the "injury" occurred while performing the usual and customary duties of "his" occupation while on duty and "under dispatch" for "his" "contract carrier".

All benefits payable under this "coverage part" will be subject to the "combined single limit" shown on the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate".



POLICY NUMBER:

COMMERCIAL AUTO
014082 02/15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONTRACT DRIVER ENDORSEMENT

This endorsement modifies insurance provided under the following:

MEDICAL PAYMENTS - OCCUPATIONAL ACCIDENT EXTENDED COVERAGE PART

The provisions of the Coverage Part apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** | |
| **Endorsement Effective Date:** | |
| **Countersignature Of Authorized Representative** | |
| **Name:** | |
| **Title:** | |
| **Signature:** | |
| **Date:** | |

**SECTION I – DEFINITIONS** is revised as follows:

The following definitions are added:

**Contract Driver:** means a person on file with "us" who:

1.  has been contracted by a "fleet owner" to drive a "vehicle" owned or leased by the "fleet owner";

2.  is paid on a 1099 and not a W2;

3.  is not an employee of the "fleet owner" or "his" "contract carrier"; and

4.  coverage afforded to said person is evidenced by a "certificate".

**Fleet Owner**: means an "independent contractor" on file with "us" whose vehicle is driven by a "contract driver" who is a "certificate" holder under this "coverage part".

The following definitions replace definitions previously included for these terms:

**Average Weekly Earnings**: means:

1.  for an "independent contractor", the "member's" "line haul revenue" multiplied by the net earnings percentage shown in the SCHEDULE OF BENEFITS for the Plan indicated on "your" "certificate", divided by 52; or

2.  for an "independent contractor's" "scheduled co-driver, partner or helper", or "contract driver", the gross earnings as reported by the "independent contractor" for the 52 weeks prior to the date of "injury" for which a claim is made under this "coverage part", divided by 52.

**Injury**: means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly and independent of all other causes which:

1. occurs while the "insured person" is covered under this "coverage part"; and

2. arises solely out of and in the course of "his" regular occupation while "under dispatch" and "on duty" for the "contract carrier" named on "his" "certificate".

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

**Insured Person**: means an "independent contractor" who is a "member" of the "association" to whom this Group Vehicle Master Policy is issued, who is at least age 18 and less than age 70, and who is a "certificate" holder under this "coverage part". An "insured person" may also include an "independent contractor's" "scheduled co-driver, partner or helper" or "contract driver" who is at least age 18 and less than age 70, as evidenced by a "certificate".

**Under Contract**:

For a "member" who is not a "contract driver" means providing services in performing the substantial and material duties of "his" regular occupation as specified in "his" written "independent contractor" or owner/operator contract  with the "contract carrier".

For a "member" who is a "contract driver" means providing services in performing the substantial and material duties of "his" regular occupation working on behalf of and at the direction of the "fleet owner" listed on "his" application.

For a "member's" "scheduled co-driver, partner or helper" means physically working on behalf of and at the direction of that "member".

The **OTHER INDEMNIFICATION (Contract Liability) BENEFIT PROVISION** of **SECTION V – BENEFIT PROVISIONS** is hereby amended as follows:

The following is added as the third paragraph of this provision:

When the "insured person" is a "contract driver", all references to "contract carrier" shall include the "contract carrier" and/or "fleet owner". However, **Conditions** A.1. and 2., under ***For a Member:***, shall not apply to a "member" who is a "contract driver".

The following is added as condition D. of the **ADDITIONAL INSURED** section of this provision:

D.   However, condition A. shall not apply to a "fleet owner".



POLICY NUMBER:

COMMERCIAL AUTO
014103 07/15

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NON-OCCUPATIONAL ACCIDENT EXTENDED ENDORSEMENT

This endorsement modifies insurance provided under the following:

MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT EXTENDED COVERAGE PART

The provisions of the Coverage Part apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

Attachment of this endorsement to the policy revises SECTION V – BENEFIT PROVISIONS to add the following benefit:

**NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION**

For any loss that is otherwise excluded solely due to the "insured person" being not "on duty" at the time of the "accident", benefits will be payable under the NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION subject to the following limits:

| Combined Single Limit: | $25,000 |
|---|---|
| **Accidental Death and Dismemberment Benefit** | |
| Principal Sum: | $25,000 |
| **Temporary Total Disability Benefit** | |
| Waiting Period: | 7 days |
| Maximum Benefit Period: | 52 weeks |
| **Accident Medical & Dental Expense Benefit** | |
| Medical Accumulation Period: | 52 weeks |
| Maximum Medical Benefit: | $25,000 |
| Maximum Dental Benefit: | $1,000 |

No benefits are available under the CONTINUOUS TOTAL DISABILITY BENEFIT PROVISION or the PARALYSIS BENEFIT PROVISION for a non-occupational accident.

The following definition of "Injury" applies to a loss payable under the NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION:

**Injury:** means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly, solely and independent of all other causes which:

1. occurs while the "insured person" is covered under this "coverage part"; and

2. arises when the "insured" is not "on duty" to the "contract carrier" named on "his" "certificate" and is not performing the duties of any occupation for wage or profit.

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

The following exclusions from **SECTION VI – GENERAL EXCLUSIONS AND LIMITATIONS** do not apply to a loss payable under the NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION:

4. any loss that was not the result of an "accident" causing "injury" sustained while "he" is engaged in the usual and customary duties of "his" occupation while on duty, "under dispatch" for and "under contract" to "his" "contract carrier";

27. hernias or hemorrhoids.



POLICY NUMBER:

COMMERCIAL AUTO
014104 07/15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NON-OCCUPATIONAL ACCIDENT ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT COVERAGE PART**

The provisions of the Coverage Part apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

Attachment of this endorsement to the policy revises SECTION V – BENEFIT PROVISIONS to add the following benefit:

**NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION**

For any loss that is otherwise excluded solely due to the "insured person" being not "on duty" at the time of the "accident", benefits will be payable under the NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION subject to the following limits:

| | |
|---|---|
| Combined Single Limit: | $25,000 |
| **Accidental Death and Dismemberment Benefit** | |
| Principal Sum: | $25,000 |
| **Temporary Total Disability Benefit** | |
| Waiting Period: | 7 days |
| Maximum Benefit Period: | 52 weeks |
| **Accident Medical & Dental Expense Benefit** | |
| Medical Accumulation Period: | 52 weeks |
| Maximum Medical Benefit: | $25,000 |
| Maximum Dental Benefit: | $1,000 |

No benefits are available under the CONTINUOUS TOTAL DISABILITY BENEFIT PROVISION or the PARALYSIS BENEFIT PROVISION for a non-occupational accident.

The following definition of "Injury" applies to a loss payable under the NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION:

**Injury:** means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly, solely and independent of all other causes which:

1. occurs while the "insured person" is covered under this "coverage part"; and

2. arises when the "insured" is not "on duty" to the "contract carrier" named on "his" "certificate" and is not performing the duties of any occupation for wage or profit.

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

The following exclusions from **SECTION VI – GENERAL EXCLUSIONS AND LIMITATIONS** do not apply to a loss payable under the NON-OCCUPATIONAL ACCIDENT BENEFIT PROVISION:

4. any loss that was not the result of an "accident" causing "injury" sustained while "he" is engaged in the usual and customary duties of "his" occupation while on duty, "under dispatch" for and "under contract" to "his" "contract carrier";

27. hernias or hemorrhoids.



POLICY NUMBER:

**COMMERCIAL AUTO**
014075  05/08

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SENIOR PLAN ENDORSEMENT

This endorsement modifies insurance provided under the following while insuring "members" eligible for Senior Plan coverage :

MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT COVERAGE PART

MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT EXTENDED COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Part apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** <br><br> **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** <br><br> **Title:** <br><br> **Signature:** <br><br> **Date:** |

Attachment of this endorsement to the policy creates the Senior Plan with the following Senior Plan revisions to the Coverage Part:

A.  All references to "70" or "70th" are hereby replaced by "75" or "75th", respectively. And, all references to "18" or "18th" are hereby replaced by "69" or "69th", respectively.

B.  The Accidental Death And Dismemberment Benefits Provision, the Paralysis Benefit Provision and the Continuous Total Disability Benefit Provision of **SECTION V – BENEFIT PROVISIONS** do not apply when coverage is provided under the Senior Plan and no benefits will be payable under those benefit provisions.

C.  **SECTION I - DEFINITIONS** is hereby amended to:

1. Include the following definition:

**Age**: means the "insured person's" age as of "his" last birthday.

2. Revise the definition of "Insured Person" to read as follows:

**Insured Person**: means an "independent contractor" who is a "member" of the "association" to whom this Group Vehicle Master Policy is issued, who is at least age 69 and less than age "75", and who is a "certificate" holder under this "coverage part".

D.  Part II of **SECTION II – ELIGIBILITY AND PARTICIPATION** does not apply to the Senior Plan and participation in the Senior Plan is limited to "members".


No other revisions are intended or implied. None of the Coverage Part revisions described above apply to "members" insured under that Coverage Part who are not eligible for Senior Plan coverage.



015021 05/08

**TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.**

**GROUP VEHICLE MASTER POLICY**
**MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT**
**EXTENDED COVERAGE PART**

**SENIOR PLAN**

**SCHEDULE OF BENEFITS**

|  | **Plan SR** |
| --- | --- |
| Combined Single Limit: | $300,000 |
| **Temporary Total Disability Benefit** | |
| Waiting Period: | 7 days |
| Maximum Benefit Period: | 52 weeks |
| Maximum Weekly Benefit: | $250 |
| Net Earnings Percentage | 25% |
| **Accident Medical & Dental Expense Benefit** | |
| Medical Accumulation Period: | 52 weeks |
| Maximum Medical Benefit: | $300,000 |
| Maximum Dental Benefit: | $1,000 |



015022 05/08

## TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

### GROUP VEHICLE MASTER POLICY
### MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT
### COVERAGE PART

### SENIOR PLAN

### SCHEDULE OF BENEFITS

|  | Plan SR |
|---|---|
| Combined Single Limit: | $300,000 |
| **Temporary Total Disability Benefit** | |
| Waiting Period: | 7 days |
| Maximum Benefit Period: | 52 weeks |
| Maximum Weekly Benefit: | $250 |
| Net Earnings Percentage | 25% |
| **Accident Medical & Dental Expense Benefit** | |
| Medical Accumulation Period: | 52 weeks |
| Maximum Medical Benefit: | $300,000 |
| Maximum Dental Benefit: | $1,000 |


**TransGuard**
INSURANCE COMPANY OF AMERICA, INC.

POLICY NUMBER:

**COMMERCIAL AUTO**
014077  02/15

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BROADENED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT COVERAGE PART
MEDICAL PAYMENTS – OCCUPATIONAL ACCIDENT EXTENDED COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

Attachment of this endorsement to the policy revises the definition of "Injury" included in **SECTION I – DEFINITIONS** to read as follows:

**Injury:** means with respect to benefits payable under this "coverage part", trauma or damage to some part of the body caused by an "accident" directly, solely and independent of all other causes which:

1.  occurs while the "insured person" is covered under this "coverage part"; and

2.  arises solely out of and in the course of "his" regular occupation while "under dispatch" and "on duty" and "under contract" with the "contract carrier" named on "his" "certificate", or when the "insured person" is off duty but is in a "vehicle" that is "under dispatch" and being driven by another "insured person" who is "on duty" at the time of the "accident".

All injuries sustained by an "insured person" in any one "accident" shall be considered a single "injury".

No other revision is intended or implied.

Filed: 11/23/2022 5:10 PM
Clerk
Clay County, Indiana

# SUMMONS

## IN THE CLAY COUNTY CIRCUIT COURT
## STATE OF INDIANA

TRANSGUARD INSURANCE COMPANY                    CAUSE NO.:
OF AMERICA, INC., as subrogee of
C.W. Baker Logistics, Inc., Carey Wayne Baker,
Ian Windom and CRST Specialized Transportation, Inc.

        Plaintiff,

  -vs-

LUX HOLDINGS, LLC

and

EMMANUEL RAMOS

        Defendants.

TO THE DEFENDANT:        **AGENT: INDIANA SECRETARY OF STATE**
LUX HOLDINGS, LLC
55 Buck Road, Suite 300
Huntington Valley, PA 19006 (last known address)

You are hereby notified that you have been sued by the person(s) named as plaintiff and in the Court indicated above.

The nature of the suit against you is stated in the complaint which is attached to this Summons.  It also states the relief sought or the demand made against you by the plaintiff.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiff.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

DATE: _____11/28/2022_____, 2022        _____ (Seal)

                            Clerk, Circuit Court of Clay County

**The following manner of service is hereby designated:** INDIANA SECRETARY OF STATE per Trial Rule 4.10

ATTORNEY FOR PLAINTIFF:        Linda H. Clare, Esq. | KOLB CLARE & ARNOLD, PSC
9400 Williamsburg Plaza, Ste. 200, Louisville, KY 40222
(502) 614-4086

Clay Circuit Court

Filed: 11/23/2022 5:10 PM
Clerk
Clay County, Indiana

# SUMMONS

## IN THE CLAY COUNTY CIRCUIT COURT
## STATE OF INDIANA

TRANSGUARD INSURANCE COMPANY
OF AMERICA, INC., as subrogee of
C.W. Baker Logistics, Inc., Carey Wayne Baker,
Ian Windom and CRST Specialized Transportation, Inc.

CAUSE NO.:  11C01-2211-CT-000879

      Plaintiff,

  -vs-

LUX HOLDINGS, LLC

and

EMMANUEL RAMOS

      Defendants.

TO THE DEFENDANT:    **AGENT: INDIANA SECRETARY OF STATE**
                        EMMANUEL RAMOS
                        3542 N. Marshall Street
                        Philadelphia, PA 19140 (last known address)

      You are hereby notified that you have been sued by the person(s) named as plaintiff and in the Court indicated above.

      The nature of the suit against you is stated in the complaint which is attached to this Summons.  It also states the relief sought or the demand made against you by the plaintiff.

      An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiff.

      If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

DATE: 11/28/2022
_____, 2022

_____
Clerk, Circuit Court of Clay County

(Seal)

**The following manner of service is hereby designated:** <u>INDIANA SECRETARY OF STATE per Trial Rule 4.10</u>

ATTORNEY FOR PLAINTIFF:    Linda H. Clare, Esq. | KOLB CLARE & ARNOLD, PSC
                            9400 Williamsburg Plaza, Ste. 200, Louisville, KY 40222
                            (502) 614-4086

**IN THE MATTER OF:**

**PLAINTIFF** TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

|  |  |
|---|---|
| | **COURT:** CIRCUIT |
| **VS:** | **COUNTY:** CLAY |
| | **CAUSE #:** 11C012211CT000879 |

**DEFENDANT:** LUX HOLDINGS, LLC
    55 BUCK ROAD, SUITE 300
    HUNTINGTON VALLEY, PA 19006

---

STATE OF INDIANA    )
                    )    SS:
COUNTY OF MARION    )

## <u>AFFIDAVIT OF SERVICE BY SECRETARY OF STATE</u>

I, Nathanial Odle, being first duly sworn now state:

1. ☒ THAT I am the service of process clerk of the secretary of state's office and am authorized to affirm the facts set herein:

2. ☐ THAT the secretary of state received a summons and a copy of the complaint from the clerk of the above named court to be served on the stated defendant by certified or registered mail with a return receipt requested.

3. ☒ THAT the summons and a copy of the complaint were mailed by certified mail to the stated defendant on **12/2/2022**  and the return receipt and/or envelope containing the summons and a copy of the complaint served is attached hereto **OR:**

3b. ☐ THAT the summons and a copy of the complaint were not mailed because no address was available for mailing.

I AFFIRM UNDER THE PENALTIES FOR PERJURY that the foregoing matters are true.

Holli Sullivan
Secretary of State

*Holli Sullivan*

Nathanial Odle
Service of Process Clerk

---

| | |
|---|---|
| Certified No. 60530 | Date Mailed: 12/2/2022 |
| Date Returned/Received 12-12-22 | Result of Mailing: SIGNED FOR |

**11C01-2211-CT-000879**
Clay Circuit Court

Filed: 11/23/2022 5:10 PM
Clerk
Clay County, Indiana

# SUMMONS

IN THE CLAY COUNTY CIRCUIT COURT
STATE OF INDIANA

TRANSGUARD INSURANCE COMPANY
OF AMERICA, INC., as subrogee of
C.W. Baker Logistics, Inc., Carey Wayne Baker,
Ian Windom and CRST Specialized Transportation, Inc.

CAUSE NO.:

       Plaintiff,

  -vs-

LUX HOLDINGS, LLC

and

EMMANUEL RAMOS

       Defendants.

TO THE DEFENDANT:   **AGENT: INDIANA SECRETARY OF STATE**
                        LUX HOLDINGS, LLC
                        55 Buck Road, Suite 300
                        Huntington Valley, PA 19006 (last known address)

    You are hereby notified that you have been sued by the person(s) named as plaintiff and in the Court indicated above.

    The nature of the suit against you is stated in the complaint which is attached to this Summons. It also states the relief sought or the demand made against you by the plaintiff.

    An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiff.

    If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

DATE: _____11/28/2022_____, 2022

                                 *Amy E Jordan*       (Seal)
                               Clerk, Circuit Court of Clay County

**The following manner of service is hereby designated:** INDIANA SECRETARY OF STATE per Trial Rule 4.10

ATTORNEY FOR PLAINTIFF:    Linda H. Clare, Esq. | KOLB CLARE & ARNOLD, PSC
                               9400 Williamsburg Plaza, Ste. 200, Louisville, KY 40222
                               (502) 614-4086

**UNITED STATES**
**POSTAL SERVICE**

December 8, 2022

Dear MAIL MAIL:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 0661 5400 0181 3270 77**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | December 8, 2022, 10:51 am |
| **Location:** | HUNTINGDON VALLEY, PA 19006 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | LUX HOLDINGS  LLC |

## Recipient Signature

Signature of Recipient:

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

The customer reference information shown below is not validated or endorsed by the United States Postal Service.  It is solely for customer use.

Reference ID: 9214890106615400181327077
11C012211CT000879- 60530
LUX HOLDINGS, LLC
55 BUCK ROAD, SUITE 300
HUNTINGTON VALLEY, PA  19006-0000

**IN THE MATTER OF:**

**PLAINTIFF** TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

**COURT:** CIRCUIT

**VS:**                                                   **COUNTY:** CLAY

**CAUSE #:** 11C012211CT000879

**DEFENDANT:** EMMANUEL RAMOS
3542 N. MARSHALL STREET
PHILADELPHIA, PA 19140

---

STATE OF INDIANA    )
                                  )   SS:
COUNTY OF MARION  )

## AFFIDAVIT OF SERVICE BY SECRETARY OF STATE

I, Nathanial Odle, being first duly sworn now state:

1.  ▮ THAT I am the service of process clerk of the secretary of state's office and am authorized to affirm the facts set herein:

2.  ☐ THAT the secretary of state received a summons and a copy of the complaint from the clerk of the above named court to be served on the stated defendant by certified or registered mail with a return receipt requested.

3.  ☒ THAT the summons and a copy of the complaint were mailed by certified mail to the stated defendant on **12/2/2022**  and the return receipt and/or envelope containing the summons and a copy of the complaint served is attached hereto **OR:**

3b.  ☐ THAT the summons and a copy of the complaint were not mailed because no address was available for mailing.

I AFFIRM UNDER THE PENALTIES FOR PERJURY that the foregoing matters are true.

Holli Sullivan
Secretary of State

*Holli Sullivan*

Nathanial Odle
Service of Process Clerk

---

Certified No. 60531                          Date Mailed: 12/2/2022

Date Returned/Received 12-12-22          Result of Mailing: _____

SIGNED FOR

Clay Circuit Court

Filed: 11/23/2022 5:10 PM
Clerk
Clay County, Indiana

# SUMMONS

## IN THE CLAY COUNTY CIRCUIT COURT
### STATE OF INDIANA

TRANSGUARD INSURANCE COMPANY
OF AMERICA, INC., as subrogee of
C.W. Baker Logistics, Inc., Carey Wayne Baker,
Ian Windom and CRST Specialized Transportation, Inc.

CAUSE NO.:   **11C01-2211-CT-000879**

       Plaintiff,

  -vs-

LUX HOLDINGS, LLC

and

EMMANUEL RAMOS

       Defendants.

TO THE DEFENDANT:   **AGENT: INDIANA SECRETARY OF STATE**
EMMANUEL RAMOS
3542 N. Marshall Street
Philadelphia, PA 19140 (last known address)

You are hereby notified that you have been sued by the person(s) named as plaintiff and in the Court indicated above.

The nature of the suit against you is stated in the complaint which is attached to this Summons. It also states the relief sought or the demand made against you by the plaintiff.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiff.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

DATE: _11/28/2022_____, 2022

*Amy E Jordan*

Clerk, Circuit Court of Clay County

(Seal)

**The following manner of service is hereby designated:** <u>INDIANA SECRETARY OF STATE per Trial Rule 4.10</u>

ATTORNEY FOR PLAINTIFF:   Linda H. Clare, Esq. | KOLB CLARE & ARNOLD, PSC
9400 Williamsburg Plaza, Ste. 200, Louisville, KY 40222
(502) 614-4086

**UNITED STATES**
**POSTAL SERVICE**

December 10, 2022

Dear MAIL MAIL:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 0661 5400 0181 3273 12**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | December 9, 2022, 11:47 am |
| **Location:** | PHILADELPHIA, PA 19140 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | EMMANUEL RAMOS |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: | |
| Address of Recipient: | |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

The customer reference information shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Reference ID: 921489010661540001813273712
11C012211CT000879- 60531
EMMANUEL RAMOS
3542 N. MARSHALL STREET
PHILADELPHIA, PA  19140-0000

**IN THE MATTER OF:**

**PLAINTIFF** TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

|  |  |
|---|---|
| | **COURT:** CIRCUIT |
| **VS:** | **COUNTY:** CLAY |
| | **CAUSE #:** 11C012211CT000879 |

**DEFENDANT:** LUX HOLDINGS, LLC
55 BUCK ROAD, SUITE 300
HUNTINGTON VALLEY, PA 19006

STATE OF INDIANA )
)   SS:
COUNTY OF MARION )

## AFFIDAVIT OF SERVICE BY SECRETARY OF STATE

I, Nathanial Odle, being first duly sworn now state:

1. ☒ THAT I am the service of process clerk of the secretary of state's office and am authorized to affirm the facts set herein:

2. ☐ THAT the secretary of state received a summons and a copy of the complaint from the clerk of the above named court to be served on the stated defendant by certified or registered mail with a return receipt requested.

3. ☒ THAT the summons and a copy of the complaint were mailed by certified mail to the stated defendant on **12/2/2022**   and the return receipt and/or envelope containing the summons and a copy of the complaint served is attached hereto **OR:**

3b. ☐ THAT the summons and a copy of the complaint were not mailed because no address was available for mailing.

I AFFIRM UNDER THE PENALTIES FOR PERJURY that the foregoing matters are true.

Holli Sullivan
Secretary of State

*Holli Sullivan*

Nathanial Odle
Service of Process Clerk

| | |
|---|---|
| Certified No. 60530 | Date Mailed: 12/2/2022 |
| Date Returned/Received 12-12-22 | Result of Mailing: SIGNED FOR |

11C01-2211-CT-000879

Clay Circuit Court

Filed: 11/23/2022 5:10 PM
Clerk
Clay County, Indiana

# SUMMONS

## IN THE CLAY COUNTY CIRCUIT COURT
## STATE OF INDIANA

TRANSGUARD INSURANCE COMPANY                    CAUSE NO.:
OF AMERICA, INC., as subrogee of
C.W. Baker Logistics, Inc., Carey Wayne Baker,
Ian Windom and CRST Specialized Transportation, Inc.

        Plaintiff,

   -vs-

LUX HOLDINGS, LLC

and

EMMANUEL RAMOS

        Defendants.

TO THE DEFENDANT:    **AGENT: INDIANA SECRETARY OF STATE**
                     LUX HOLDINGS, LLC
                     55 Buck Road, Suite 300
                     Huntington Valley, PA 19006 (last known address)

     You are hereby notified that you have been sued by the person(s) named as plaintiff and in the Court indicated above.

     The nature of the suit against you is stated in the complaint which is attached to this Summons. It also states the relief sought or the demand made against you by the plaintiff.

     An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiff.

     If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

DATE: ___11/28/2022___, 2022        _Amy E Jordan_    (Seal)
                              Clerk, Circuit Court of Clay County

**The following manner of service is hereby designated:** INDIANA SECRETARY OF STATE per Trial Rule 4.10

ATTORNEY FOR PLAINTIFF:    Linda H. Clare, Esq. | KOLB CLARE & ARNOLD, PSC
                          9400 Williamsburg Plaza, Ste. 200, Louisville, KY 40222
                          (502) 614-4086

**UNITED STATES**
**POSTAL SERVICE**

December 8, 2022

Dear MAIL MAIL:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 0661 5400 0181 3270 77**.

### Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | December 8, 2022, 10:51 am |
| **Location:** | HUNTINGDON VALLEY, PA 19006 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | LUX HOLDINGS  LLC |

### Recipient Signature

Signature of Recipient:

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

The customer reference information shown below is not validated or endorsed by the United States Postal Service.  It is solely for customer use.

Reference ID: 921489010661540001813270 77
11C012211CT000879- 60530
LUX HOLDINGS, LLC
55 BUCK ROAD, SUITE 300
HUNTINGTON VALLEY, PA  19006-0000

Filed: 12/15/2022 3:02 PM
Clay County Circuit Court
Clay County, Indiana

**IN THE MATTER OF:**

**PLAINTIFF** TRANSGUARD INSURANCE COMPANY OF AMERICA, INC.

| | |
|---|---|
| | **COURT:** CIRCUIT |
| **VS:** | **COUNTY:** CLAY |
| | **CAUSE #:** 11C012211CT000879 |

**DEFENDANT:** EMMANUEL RAMOS
3542 N. MARSHALL STREET
PHILADELPHIA, PA 19140

STATE OF INDIANA )
)  SS:
COUNTY OF MARION )

## AFFIDAVIT OF SERVICE BY SECRETARY OF STATE

I, Nathanial Odle, being first duly sworn now state:

1. ■ THAT I am the service of process clerk of the secretary of state's office and am authorized to affirm the facts set herein:

2. ☐ THAT the secretary of state received a summons and a copy of the complaint from the clerk of the above named court to be served on the stated defendant by certified or registered mail with a return receipt requested.

3. ☒ THAT the summons and a copy of the complaint were mailed by certified mail to the stated defendant on **12/2/2022**   and the return receipt and/or envelope containing the summons and a copy of the complaint served is attached hereto **OR:**

3b. ☐ THAT the summons and a copy of the complaint were not mailed because no address was available for mailing.

I AFFIRM UNDER THE PENALTIES FOR PERJURY that the foregoing matters are true.

Holli Sullivan
Secretary of State

Nathanial Odle
Service of Process Clerk

| | |
|---|---|
| Certified No.  60531 | Date Mailed:  12/2/2022 |
| Date Returned/Received 12-12-22 | Result of Mailing: _____ SIGNED FOR |

Clay Circuit Court

Filed: 11/23/2022 5:10 PM
Clerk
Clay County, Indiana

# SUMMONS

## IN THE CLAY COUNTY CIRCUIT COURT
## STATE OF INDIANA

TRANSGUARD INSURANCE COMPANY
OF AMERICA, INC., as subrogee of
C.W. Baker Logistics, Inc., Carey Wayne Baker,
Ian Windom and CRST Specialized Transportation, Inc.

CAUSE NO.:   11C01-2211-CT-000879

       Plaintiff,

   -vs-

LUX HOLDINGS, LLC

and

EMMANUEL RAMOS

       Defendants.

TO THE DEFENDANT:    **AGENT: INDIANA SECRETARY OF STATE**
                      EMMANUEL RAMOS
                      3542 N. Marshall Street
                      Philadelphia, PA 19140 (last known address)

      You are hereby notified that you have been sued by the person(s) named as plaintiff and in the Court indicated above.

      The nature of the suit against you is stated in the complaint which is attached to this Summons.  It also states the relief sought or the demand made against you by the plaintiff.

      An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiff.

      If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

DATE: 11/28/2022 , 2022             *Amy E Jordan*   (Seal)
                                Clerk, Circuit Court of Clay County

  **The following manner of service is hereby designated:** <u>INDIANA SECRETARY OF STATE per Trial Rule 4.10</u>

ATTORNEY FOR PLAINTIFF:    Linda H. Clare, Esq. | KOLB CLARE & ARNOLD, PSC
                              9400 Williamsburg Plaza, Ste. 200, Louisville, KY 40222
                              (502) 614-4086

**UNITED STATES**
**POSTAL SERVICE**

December 10, 2022

Dear MAIL MAIL:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 0661 5400 0181 3273 12**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | December 9, 2022, 11:47 am |
| **Location:** | PHILADELPHIA, PA 19140 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | EMMANUEL RAMOS |

## Recipient Signature

|  |  |
|---|---|
| Signature of Recipient: | |
| Address of Recipient: | |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

The customer reference information shown below is not validated or endorsed by the
United States Postal Service.  It is solely for customer use.

Reference ID: 921489010661540018327312
11C012211CT000879- 60531
EMMANUEL RAMOS
3542 N. MARSHALL STREET
PHILADELPHIA, PA  19140-0000

STATE OF INDIANA      )        IN THE CLAY CIRCUIT COURT
                        ) SS:
COUNTY OF CLAY      )        CAUSE NO.  11C01-2211-CT-000879


TRANSGUARD INSURANCE      )
COMPANY OF AMERICA, INC., as      )
Subrogee of C.W. Baker Logistics, Inc., )
Carey Wayne Baker, Ian Windom, and )
CRST Specialized Transportation, Inc., )
                                 )
            Plaintiff,          )
                                 )
          v.                    )
                                 )
LUX HOLDINGS, LLC and      )
EMMANUEL RAMOS,      )
                                 )
            Defendants.      )

## E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE

1. The party on whose behalf this form is being filed is:
   Initiating _____     Responding __X__     Intervening _____; and the
   undersigned attorney and all attorneys listed on this form now appear in
   this case for the following parties:

   Name of party: **Lux Holdings, LLC**

   Name of party: **Emmanuel Ramos**


2. Attorney information for service as required by Trial Rule 5(B)(2)

   Name: **Francis A. Veltri, TRAVELERS STAFF COUNSEL INDIANA**

   Atty Number: **27495-64**

   Address: **P. O. Box 64093, St. Paul, MN 55164-0093**

   Phone: **(219) 736-2185**

   FAX: **(844) 833-0499**

   Email Address: **fveltri@travelers.com**

1

**IMPORTANT**: Each attorney specified on this appearance:

(a)     certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

(b)     **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(B) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney**; and

(c)     understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

3.  This is a <u>civil</u> case type as defined in administrative Rule 8(B)(3).

4.  This case involves child support issues. Yes _____ No <u>X</u>

5.  This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order.  Yes _____ No <u>X</u>

The party shall use the following address for purposes of legal service:

_____     Attorney's address

_____     The Attorney General Confidentiality program address (contact the Attorney General at 1-800-321-1907 or e-mail address is **confidential@atg.in.gov)**.

_____     Another address (provide)

This case involves a petition for involuntary commitment.  Yes _____ No <u>X</u>

6.  If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:

a.  Name of the individual subject to the petition for involuntary commitment if it is not already provided in #1 above:

_____

b.  State of Residence of person subject to petition: _____

c.  At least one of the following pieces of identifying information:

2

(i)   Date of Birth _____

(ii)  Driver's License Number _____

State where issued _____ Expiration date _____

(iii) State ID number _____

State where issued _____ Expiration date _____

(iv) FBI number _____

(v)  Indiana Department of Corrections Number
_____

(vi) Social Security Number is available and is being provided in an
attached confidential document Yes _____ No ____

7.  There are related cases: Yes _____ No  X

8.  Additional information required by local rule:
_____

9.  There are other party members: Yes _____ No _____

10. This form has been served on all other parties and Certificate of Service
is attached:  Yes  X  No ____

Respectfully submitted,

**Travelers Staff Counsel Indiana**

By:     */s/ Francis A. Veltri* _____
Francis A. Veltri, 27495-64

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically using the Indiana E-Filing System (IEFS) and served upon the following persons via IEFS on **December 21, 2023**:

Linda H. Clare
KOLB CLARE & ARNOLD, PSC


By:     */s/ Francis A. Veltri*
Francis A. Veltri, 27495-64

TRAVELERS STAFF COUNSEL INDIANA
P. O. Box 64093
St. Paul, MN 55164-0093
T:  (219) 736-2185
F:  (844) 833-0499
fveltri@travelers.com

FAV:gb

4

STATE OF INDIANA      )         IN THE CLAY CIRCUIT COURT
                               ) SS:
COUNTY OF CLAY      )         CAUSE NO.  11C01-2211-CT-000879

TRANSGUARD INSURANCE         )
COMPANY OF AMERICA, INC., as   )
Subrogee of C.W. Baker Logistics, Inc., )
Carey Wayne Baker, Ian Windom, and )
CRST Specialized Transportation, Inc., )
                                    )
            Plaintiff,        )
                                    )
        v.                )
                                    )
LUX HOLDINGS, LLC and       )
EMMANUEL RAMOS,         )
                                    )
            Defendants.      )

## MOTION FOR ENLARGEMENT OF TIME TO ANSWER

Defendants, by counsel, respectfully move the Court for an enlargement of time pursuant to Ind. Trial Rule 6(B)(1), and show the Court:

1. A response to Plaintiff's *Complaint* is due on <u>December 31, 2022</u>, and said time has not expired.

2. No prior enlargements have been requested.

3. Said enlargement of time would expire on <u>January 30, 2023</u>.

4. Such enlargement of time is necessary to allow undersigned counsel sufficient time to investigate the allegations, consult with Defendants, and prepare an appropriate responsive pleading.

1

WHEREFORE, Defendants respectfully pray for an enlargement of time to respond to Plaintiff's Complaint and further request entry of all other just and proper relief.

Respectfully submitted,

**TRAVELERS STAFF COUNSEL INDIANA**

By:   */s/ Francis A. Veltri*
Francis A. Veltri, 27495-64

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically using the Indiana E-Filing System (IEFS) and served upon the following persons via IEFS on **December 21, 2023**:

Linda H. Clare
KOLB CLARE & ARNOLD, PSC

By:   */s/ Francis A. Veltri*
Francis A. Veltri, 27495-64

TRAVELERS STAFF COUNSEL INDIANA
P. O. Box 64093
St. Paul, MN 55164-0093
T:  (219) 736-2185
F:  (844) 833-0499
fveltri@travelers.com

FAV:gb

2

STATE OF INDIANA　　　　)　　　　　IN THE CLAY CIRCUIT COURT
　　　　　　　　　　　　　　) SS:
COUNTY OF CLAY　　　　　)　　　　　CAUSE NO.  11C01-2211-CT-000879


TRANSGUARD INSURANCE　　　　)
COMPANY OF AMERICA, INC., as　)
Subrogee of C.W. Baker Logistics, Inc., )
Carey Wayne Baker, Ian Windom, and )
CRST Specialized Transportation, Inc., )
　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
LUX HOLDINGS, LLC and　　　　　)
EMMANUEL RAMOS,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　)


## ORDER ENLARGING TIME TO ANSWER

The Court, having reviewed the Defendants' *Motion for Enlargement of Time to Answer,* and being duly advised, now GRANTS the same.

**IT IS THEREFORE ORDERED** that the time within which Defendants are required to answer or respond to the Plaintiff's *Complaint* is enlarged to and including **January 30, 2023**.


Date: _____　　　　_____
　　　　　　　　　　　　　　　　　　Judge, Clay Circuit Court 1

**DISTRIBUTION:**
Linda H. Clare, KOLB CLARE & ARNOLD, PSC
Francis A. Veltri, TRAVELERS STAFF COUNSEL INDIANA

STATE OF INDIANA　　　)　　　　　IN THE CLAY CIRCUIT COURT
　　　　　　　　　　　　) SS:
COUNTY OF CLAY　　　　)　　　　　CAUSE NO.  11C01-2211-CT-000879


TRANSGUARD INSURANCE　　　　　　)
COMPANY OF AMERICA, INC., as　　　)
Subrogee of C.W. Baker Logistics, Inc., )
Carey Wayne Baker, Ian Windom, and )
CRST Specialized Transportation, Inc., )
　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　v.　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
LUX HOLDINGS, LLC and　　　　　　)
EMMANUEL RAMOS,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　)

## ORDER ENLARGING TIME TO ANSWER

The Court, having reviewed the Defendants' *Motion for Enlargement of Time to Answer,* and being duly advised, now GRANTS the same.

**IT IS THEREFORE ORDERED** that the time within which Defendants are required to answer or respond to the Plaintiff's *Complaint* is enlarged to and including **January 30, 2023**.


Date: _____12/21/2022_____　　　　　_____
　　　　　　　　　　　　　　　　　Judge, Clay Circuit Court 1

**DISTRIBUTION:**
Linda H. Clare, KOLB CLARE & ARNOLD, PSC
Francis A. Veltri, TRAVELERS STAFF COUNSEL INDIANA

STATE OF INDIANA      )          IN THE CLAY CIRCUIT COURT
                       ) SS:
COUNTY OF CLAY      )          CAUSE NO.  11C01-2211-CT-000879

TRANSGUARD INSURANCE     )
COMPANY OF AMERICA, INC., as    )
Subrogee of C.W. Baker Logistics, Inc., )
Carey Wayne Baker, Ian Windom, and )
CRST Specialized Transportation, Inc., )
                            )
         Plaintiff,       )
                            )
        v.             )
                            )
LUX HOLDINGS, LLC and      )
EMMANUEL RAMOS,        )
                            )
        Defendants.     )

## NOTICE OF DEFENDANTS' REMOVAL OF CAUSE
## TO FEDERAL COURT

Defendants, Lux Holdings, LLC and Emmanuel Ramos, by counsel, hereby provide notice of the removal of this cause from the Clay Circuit Court to the United States District Court for the Southern District of Indiana, Terre Haute Division, pursuant to 28 U.S.C. §§ 1441 and 1446.  Pursuant to 28 U.S.C. § 1446(d), the Clay Circuit Court is deprived of jurisdiction and shall undertake no further proceedings with respect to this cause.

                     Respectfully submitted,

                     **TRAVELERS STAFF COUNSEL INDIANA**

By:     */s/ Francis A. Veltri*
          Francis A. Veltri, 27495-64

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically using the Indiana E-Filing System (IEFS) and served upon the following persons via IEFS on **January 6, 2023**:

Linda H. Clare
KOLB CLARE & ARNOLD, PSC

By:    */s/ Francis A. Veltri*
Francis A. Veltri, 27495-64

TRAVELERS STAFF COUNSEL INDIANA
P. O. Box 64093
St. Paul, MN 55164-0093
T:  (219) 736-2185
F:  (844) 833-0499
fveltri@travelers.com

FAV:gb

2